Stuart M. Eppsteiner, Esq. SBN 098973
sme@eppsteiner.com
Andrew J. Kubik, Esq. SBN 246902
ajk@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Suite 155
San Diego, CA 92130
T: 858-350-1500
F: 858-350-1501

Counsel for Plaintiffs and the Class

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

BEVERLY BECK-ELLMAN, JOHN AND
DENISE BIELIS, and JOHN AND SANDY
MAHOY, individually and on behalf of all
others similarly situated,

          PLAINTIFFS,

    vs.

KAZ USA INCORPORATED, and KAZ
INCORPORATED,

          DEFENDANTS.

CASE NO.: **'10 CV 2134 H    POR**

**CLASS ACTION COMPLAINT**

[Demand For Jury Trial]

      Consumer Representatives Beverly Beck-Ellman ("Ms. Beck-Ellman"), John and Denise Bielis ("Bielises"), and John and Sandy Mahoy ("Mahoys"), by and through their undersigned counsel, individually and on behalf of all others similarly situated ("Class") (Consumer Representatives and the Class and jointly hereinafter referred to as "Plaintiffs") allege the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

151968

### INTRODUCTION

1. Consumer Representatives bring this class action on behalf of themselves and all others similarly situated against Defendants, Kaz USA, Incorporated and Kaz, Incorporated ("Defendants" or "Kaz"), seeking damages, restitution, a constructive trust, and injunctive relief for the proposed Classes as defined herein.

2. The subject matter of this action is Kaz's SmartHeat and SoftHeat brand Heating Pads, including, but not limited to Deluxe, Plus, Standard and Ultra models, as well as model numbers HP110C, HP215, HP218C, HP750C, HP710, HP751, HP910C, HP950C, HPM-970, and HP980C; and Kaz and its Dunlap brand Heating Pads, including, but not limited to, R312WM, R318WM, R950WM, and R975WM and the equivalent Heating Pads that Kaz identified by different brands, models and model numbers (hereinafter collectively referred to as "Heating Pad(s)").

3. This lawsuit is brought to remedy Kaz's violations of law in connection with the Heating Pads' design, manufacture, marketing, advertising, sales, performance, servicing, and warranty performance.

4. The SmartHeat, SoftHeat, Kaz and Dunlap brands' models share the same relevant design, parts, pieces, operation and materials. The only differences in the Heating Pads do not relate to or arise from the defects that are relevant to or at issue in this lawsuit.

5. The Heating Pad is a device which converts electricity into heat. It plugs into an ordinary electrical outlet and contains a wire coil inside of it. A control switch with different temperature range settings is attached to it by an electrical cord. When the Heating Pad is plugged-in and turned on, electricity is delivered to the internal electric coil that generates heat, growing increasingly hotter until automatically shut off by a thermostat located inside the heating pad and in close proximity to the internal coil (the "Thermostat").

6. The delivery of electricity to the internal heating coil is interrupted when the Thermostat reaches a temperature predetermined by Kaz and which temperature, different at each setting, corresponds to the heat setting selected by the User ("User" or "Users" means anyone in the United States who bought or used a Heating Pad); either low, medium or high. Once the

Thermostat stops the delivery of electricity to the heating coil, the Heating Pad begins to cool down until the Thermostat once again causes electricity to be delivered to the heating coil. This cycling back and forth from heating to cooling continues until the unit is manually turned off by the User, or automatically after 30 to 120 minutes, depending on model type.

7. The Heating Pads have defects in materials, workmanship, parts, and design that cause them to burn Heating Pad Users and their property or malfunction with substantial certainty within their useful life. These defects include:

A. The ability to use the Heating Pad between a person and a bed, sofa, couch or chair while the Heating Pad delivers a continuous cycle of heat for 30-120 minutes;

B. The failure of the Heating Pad to monitor or control temperature at the surface of the Heating Pad which areas come in contact or near contact with Plaintiffs' bodies;

C. Delivering heat to Plaintiffs' bodies for extended periods of time of 30 to 120 minutes;

D. The failure of the Heating Pad to stop delivering heat when placed between a Plaintiff and other objects that retain or trap heat, or prevent its rapid dissipation;

E. The failure of the Heating Pad to stop delivering heat when a Plaintiff becomes unconscious and the Heating Pad becomes positioned between a Plaintiff and other heat retaining or trapping objects; and

F. The failure of the Heating Pad to rapidly dissipate heat from itself when used between a person and an object.

(The foregoing listed defects in ¶ 7 (A-F) are hereinafter referred to as the "Defects")

8. Kaz knowingly and/or recklessly concealed from Plaintiffs, prior to purchase, material information regarding the safety, use, and operation of the Heating Pads, thereby depriving Plaintiffs of the right and opportunity to make informed decisions about whether to purchase the Heating Pads. Kaz's omissions of Material Facts include:

A. That Users cannot use the Heating Pad while sleeping;

B. That the Heating Pads can only be used in limited positions;

**CLASS ACTION COMPLAINT**

151968

C. Users' skin would be burned regardless of the temperature control setting they selected;

D. That Users are required to inspect their skin under the Heating Pad "frequently;" (although if applied to Users in positions and locations on their bodies depicted in Kaz's advertisements, Users could not see their skin);

E. That Users needed to inspect their skin under the Heating Pad "frequently"; although Kaz never communicated to Users what skin conditions they should be frequently inspecting for, what the skin conditions looked like, or what they should do if they observed any particular condition on their skin;

F. That the "Automatic Shut-Off" only stopped the flow of electricity to the Heating Pad, and absorption of heat by the Users' bodies after 30-120 minutes;

G. That the "Automatic Shut-Off" did not automatically shut-off the Heating Pad so as to prevent skin damage, skin burns or property damage;

H. That the Heating Pad could cause severe burns when used between the User and another object, such as a bed, sofa, couch or chair, and while sleeping or in a reduced state of alertness, such as when taking cold, flu or cough medications.

(The foregoing listed facts in ¶ 8 (A-H) are hereinafter referred to as the "Material Facts").

9. The effects of using Defendants' defective Heating Pads and Defendants' failure to disclose the Material Facts causes the Heating Pads to:

A. Overheat and become too hot to be safely used as Heating Pads;

B. Burn Users' skin, cause fires and damage property, or melt and damage themselves;

C. Deliver excessive, harsh, painful, surging, non-therapeutic, and/or unpredictable heat;

D. Create a high risk and probability of burning their Users;

E. Malfunction and become inoperable;

F. Shock Users;

G. Be unfit for their intended purpose;

3
**CLASS ACTION COMPLAINT**

151968

H.  Become worthless, or diminished in value.

(The foregoing listed effects ¶ 9 (A-H) of using Defendants' defective Heating Pads are hereafter referred to as the "Effects")

10.  As currently designed and manufactured, there is no way to eliminate the risk of the Effects caused by the Heating Pads.  Kaz warns in its operating instructions, provided with the Heating Pads ("Operating Instructions"), that "[t]o **reduce** the risk of burns, electric shock, and fire, the product must be used in accordance with the following instructions…" (Emphasis added). Defendant's Operating Instructions admit that a User can only reduce the risk of being harmed from the use of the Heating Pad, but that the risk of harm cannot be eliminated.  Therefore, it was and presently is known by Defendants and was and is reasonably foreseeable to them that the Plaintiffs would suffer the Effects from using the Heating Pads.  Kaz's failure to disclose the Defects, Material Facts, and Effects to Plaintiffs, before they purchased the Heating Pads, were and are unfair, deceptive, unlawful, and fraudulent acts.

11.  Kaz warranted every Heating Pad against defective material, workmanship and parts. Kaz also warranted that every Heating Pad would provide "soothing therapy for pain relief," and also warranted that every Heating Pad would provide "soothing heat therapy."

12.  As a result of the Defects, the Heating Pads do not conform to the express warranties made by Kaz and, in addition are not fit or mechantable for their ordinary and intended use; i.e. to provide "soothing therapy for pain relief," and "soothing heat therapy" without causing injury to Users or their property.

13.  Kaz also violates state consumer protection statutes by omitting Material Facts and misrepresenting facts.  Kaz does not disclose the omitted Material Facts to the Plaintiffs on its packaging and advertising.   Kaz  also misrepresents  that the  Heating  Pads  are  capable  of delivering "soothing therapy" and "soothing heat therapy:" however, Kaz admits in its written Warnings (defined below) concealed within its packaging material, only available to be read after a consumer purchasers a Heating Pad, that its Heating Pads will burn Users at "any setting."

14.  Kaz also misrepresents the uses and benefits of the Heating Pads in advertising, labels, and photographs on its packaging by depicting the Heating Pads' characteristics and the nature, benefits, and quality of the experience Users will have if they purchase and use the Heating Pad.  In its Warnings (defined below) and Operating Instructions, which are only potentially readable after a consumer purchases the product, Kaz states that the quality and effect of using the Heating Pad is not as represented on the packaging in which every Heating Pad is enclosed and which is a universally prominent marketing device for the Heating Pad.

15.  Nowhere on the Heating Pad packaging, which is the only visible communication to potential purchasers before they purchase the product, is a purchaser advised that they must read the Warnings and Operating Instructions before using the Heating Pad.  Kaz also fails to state on the packaging that the Warnings (defined below) severely restrict and limited the Heating Pads' uses and benefits, nor does Kaz state that its Operating Instructions and Warnings (defined below) must be read and adhered to for the purchaser to safely use the Heating Pad.

16.  Plaintiffs assert claims on behalf of themselves and all Heating Pad owners from California, Michigan and Pennsylvania (State Subclasses) for violations of the States' consumer protection, warranty, and unjust enrichment laws, and federal warranty laws and regulations.

**THE PARTIES**

**Plaintiffs**

17.  Consumer Representative Beverly Beck-Ellman has been a citizen of California and has resided in San Diego, California since before 2007.   Sometime in late 2007, Ms. Beck-Ellman purchased a Kaz SoftHeat HP215 Heating Pad from a retailer located in San Diego, California.  On or about January 25, 2008, Ms. Beck-Ellman's Heating Pad burned her left hip and permanently scarred her.  Ms. Beck-Ellman received medical treatment for her burns.  Areas of the Heating Pad itself were also burned and the plastic that covers the heating components is melted and discolored.

18.  Consumer Representatives John and Denise Bielis have been citizens of Michigan and have resided in Rochester Hills, Michigan since before 2006.  On or about January 12, 2006, the

151968

Bielises purchased a Kaz SmartHeat HP 710 from a CVS Pharmacy in Rochester, Michigan. On or about January 11, 2010, while using the Heating Pad to treat lower back pain, Denise Bielis was burned by the Heating Pad through her clothing. The Heating Pad burned Ms. Bielis; which in turn caused blistering and permanent scarring to the skin on her lower back.

19. Consumer Representatives John and Sandy Mahoy have been citizens of Pennsylvania and have resided in Export, Pennsylvania since before January 2010. On or about January 30, 2010 the Mahoys purchased a Kaz SoftHeat HP215 Heating Pad from Walmart in Delmont, Pennsylvania. Several weeks later, while using the Heating Pad to help relieve pain in his lower back, the Heating Pad burned the skin on Mr. Mahoy's lower back. The Heating Pad itself melted and is no longer operable. The Mahoys retuned the Heating Pad to Walmart for a refund of its purchase price. Later, the Mahoys complained to Kaz about the defective Heating Pad, but Kaz insisted that the Mahoys buy back the Heating Pad they had returned to Walmart before Kaz would replace the subject Heating Pad. As a result the Mahoys were forced to buy back their defective Heating Pad from Walmart. Given the Mahoys' belief that the Heating Pads are inherently defective, they opted not to have their Heating Pad replaced with another defective Heating Pad, and have retained the Heating Pad that burned Mr. Mahoy; which Plaintiffs will use as evidence in this litigation.

**Defendants**

20. Kaz USA Incorporated is a Massachusetts corporation with its principal place of business located at 250 Turnpike Road, Southborough, Massachusetts 01772.

21. Kaz Incorporated is a New York Corporation with its principal place of business located at One Vapor Trail, Hudson, New York 12534.

22. Kaz manufactures distributes, markets, and sells Heating Pads under the brand names Kaz, Dunlap, SoftHeat and SmartHeat. Kaz sells Heating Pads directly to consumers and Class members, located anywhere in the United States of America, through its own internet website "e-store" http://www.kaz.com/kaz/e-store/, as well as through national and regional retailers such as CVS Pharmacy, Rite Aid, Walmart, and others.

151968

1

2

**JURISDICTION AND VENUE**

3      23. This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the

4   amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action

5   in which the members of the proposed Classes and Defendants are citizens of different states, and

6   each of the proposed Classes consists of over 100 members.

7      24. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

8   Defendants do substantial business in this district, maintain a research facility in this district, and a

9   substantial part of the events or omissions giving rise to Ms. Beck-Ellman's claims, her purchase,

10  use, injury and treatment, took place within this district.

11

12

**FACTUAL BACKGROUND**

13

14     25. Defendants are in the business of manufacturing, producing, distributing, marketing,

15  advertising, and selling Heating Pads throughout the United States under the brand names

16  SmartHeat, SoftHeat, Kaz and Dunlap. The Heating Pads sold under these brands are substantially

17  identical, and Plaintiffs are informed and believe the brands of the Heating Pads are and were

18  manufactured in the same facilities, using the same designs, components, parts and means and

19  methods of assembly.

20

21  **Breach of Express and Implied Warranties**

22     26. During the applicable time period, Kaz warranted the Heating Pads, all brands referred

23  to herein, against defective materials, workmanship and parts as follows: a) Deluxe models –

24  lifetime; b) Plus models – 5 years from date of purchase; c) Standard models - 3 years from date of

25  purchase. [See Ex. 1, p. 7].

26     27. During the applicable time period, Kaz warranted that the Heating Pads would

27  automatically "shut-off ," operate so as to deliver " soothing heat therapy" and "soothing therapy

28

**CLASS ACTION COMPLAINT**

151968

for pain relief," would deliver "SoftHeat" or "SmartHeat" and not burn Users' skin (the express written warranties and representative warranties are hereinafter referred to as "Warranties").

28. Plaintiffs relied on Kaz's express Warranties and the express Warranties became the basis of the bargains between Plaintiffs and Kaz.

29. The Heating Pads failed to conform to the express Warranties and Kaz breached the express Warranties by not repairing or replacing the Heating Pads or the Defects and defective parts therein.

30. To the extent there is any notice requirement imposed by law, Plaintiffs either gave notice before filing this lawsuit or notice is excused because Defendants have (and had) actual knowledge of the Defects in the Heating Pads that cause them to burn, or create a high risk of burning, their Users. In response to warranty claims by class members, Kaz routinely sends a replacement Heating Pad that is identical to the defective Heating Pad that malfunctioned, without modification to eliminate the Defects in the Heating Pad that create the risks of burning, shocking, or causing fires that were the bases of the warranty claims. Therefore notice to Kaz has been, is, and will be futile, in that Kaz has refused to modify the Heating Pads to eliminate the Defects, the Effects of the Defects.

31. As part of the sale of each Heating Pad, Kaz warranted, marketed, and advertised that the defective Heating Pads were of merchantable quality and fit for the ordinary purpose for which Heating Pads are used, i.e. providing "soothing heat therapy" and "soothing therapy for pain relief."

32. As to those Heating Pad owners to whom Kaz offered to repair or replace their defective Heating Pads in response to their complaints of burns, or other complaints related to the Defects and the Effects, the repair or replacement fell short of Kaz's warranty obligations because Kaz's "repair" or replacement of the originally-purchased and defective Heating Pad was to give a Class member yet another defective Heating Pad that had the same Defects as the originally-purchased Heating Pad. Kaz fell short its warranty obligations because it failed to remedy and

eliminate the Defects in the Heating Pads that cause them to burn Users, or create a substantial risk of burning or shocking Users, and causing fires.

33.     Despite Kaz's knowledge that its Heating Pads are defective, and Ms. Beck-Ellman's pre-litigation request that a) Kaz stop selling the Heating Pads with the Defects, or b) modify the Heating Pads so they are not defective and offer to replace all of the Heating Pads with non-defective heating pads, Kaz i) continues to sell the Heating Pads with the Defects present in them; ii) has not modified the heating pads to eliminate the Defects; iii) has not offered to replace all of the Heating Pads with non-defective heating pads and; iv) has not replaced or repaired the workmanship, parts, and/or materials that cause the Defects, or v) refunded all or part of the monies the Representative Consumers and Class members paid for their Heating Pads.

**Misrepresentations and Omissions**

34.     Kaz fails to disclose Material Facts on any labels, advertising, or marketing material available to potential purchasers, at the time of, or in advance of their purchase. The omissions are material because reasonable consumers would want to know whether a device they are about to purchase for therapeutic purposes actually has a high propensity to burn or injure them, or cause pain and discomfort.

35.     Kaz also omits the material fact that the Heating Pads cannot be used while sleeping. These omissions are misleading and likely to deceive because consumers are lured into buying the Heating Pads when they are in pain, discomfort, feeling ill, drowsy, or sleepy. Had Kaz disclosed the true facts regarding the limited uses of the Heating Pads and the high risk of being burned if used, Representative Consumers and members of the Class would not have purchased the Heating Pads.

36.     Furthermore, Kaz's packaging of the Heating Pads misrepresents, by omission, the Heating Pad's uses and benefits.  Kaz fails to alert consumers at the point of purchase that the Heating Pads cannot be used when placed between a person and a supportive object, such as a bed, sofa, couch or chair.  Kaz does not communicate to consumers, in advance of their purchase, that

they could only use the Heating Pad in such a manner that one side of the Heating pad is always exposed to nothing other than air. In other words, Kaz never communicates at or prior to the point of purchase that its Heating Pads cannot be used to provide "soothing heat therapy" or the "soothing therapy for pain" while sitting in a chair or lying on a sofa, in bed, or against a pillow. This is material information because it severely restricts the possible uses and benefits of the Heating Pad and is something that a reasonable consumer would want to know before purchasing one.

37. Kaz misrepresents the benefits, uses, characteristics, and quality of the SoftHeat models by using the term "SoftHeat" and "SmartHeat" on the packaging material and in advertising, both prior to or at the time of purchase. Use of the terms "SoftHeat" and "SmartHeat" are misleading and deceptive because the Heating Pads do not deliver soft, gentle, soothing, or smart heat therapy to the Users' bodies as the terms used by Kaz necessarily imply. Instead, the Heating Pads cause the Effects.

38. Kaz misrepresents the Heating Pads as providing "soothing therapy for pain relief" and "soothing heat therapy" on the packaging material at the time of purchase. This phrase is misleading and deceptive because the Heating Pads do not deliver soothing therapy and are not therapeutic, because instead of providing therapy, they injure their Users and cause them to seek medical treatment for their injuries and cause the Effects.

39. Kaz also misrepresents the uses, benefits, characteristics, and qualities of the Heating Pads through misleading and deceptive images on the SoftHeat Standard model's packaging which is observed by all retail purchasers, prior to the time the purchase. On the front of the packaging is a picture of a woman dressed in sleep attire, lying on her stomach in a sleeping position, the Heating Pad is positioned across her upper back with one side open to the air. [See Ex. 2]. Kaz warns, in the warnings located in the Operating Instructions ("Warnings") that are located only within the sealed Heating Pad packaging accessible only after purchase, not to use the Heating Pad while sleeping, and to check skin under the Heating Pad "frequently." Thus, according to Kaz's own Operating Instructions and Warnings, the picture on the packaging depicts an improper use of

the Heating Pad, since the woman is in a sleeping position, and it is, absent extraordinary effort and rare circumstances, impossible for a consumer to check the skin on her back (and under her clothing) when the skin on her back and shoulders is not visible to her.

40.   Heating Pads are used to relieve pain and discomfort. Owners often use them in conjunction with using pain relief medications and when they are in compromised physical and mental states that mean they are likely drowsy or want to become drowsy or sleep as part of relieving their pain.   As a result, Plaintiffs are highly likely to fall asleep while using their Heating Pads.  In fact, Plaintiffs are led to believe that they can safely use their Heating Pad while falling asleep as Kaz represents on the Heating Pads' packaging that the Heating Pads will automatically shut-off.

41.   Defendants were obliged to disclose, prior to Plaintiffs and Class members concluding their purchases, the omitted Material Facts because: 1) Defendants had exclusive knowledge of the Material Facts, since only Defendants had access to the data from their retailers, their own design, engineering, operation, observation and testing of the Heating Pads, and complaints about burns and melting Heating Pads their customers experienced; and 2) Defendants actively concealed and suppressed the omitted Material Facts from Plaintiffs by not warning, at the time Heating Pads were purchased, of the Defects and the Effects.

42.   The omissions of Material Facts and material misrepresentations constitute unfair, fraudulent, and deceptive business acts and practices.

43.   Plaintiffs and Class members relied on Defendants omissions and misrepresentations of material facts to their detriment.

44.   As a direct and proximate result of the aforementioned misrepresentations and omissions, Representative Consumers and Class members lost money through the diminution in value of their Heating Pads, and by being lured into purchasing the defective Heating Pads, when, had the true facts been disclosed, they would not have purchased the defective Heating Pads.

///

11
**CLASS ACTION COMPLAINT**

151968

**Defendants' Knowledge/Reckless Disregard of the Defects and Falsity of Their Representations**

45.   Kaz has constructive and actual knowledge of the Defects and the Effects and the falsity of their representations described above.  Kaz has been named a defendant in numerous federal and state personal injury cases arising out of burns alleged to have been caused by the Heating Pads, including, but not limited to *Snyder v. Kaz Inc*, Case No. 4:04-cv-00569-RAW (Iowa 2004); *Conway v. Kaz Incorporated*, Case No. 2:09-cv-10065-MOB-MKM (E.D. Mich. 2009); and *Moore v. Kaz, Inc.*, Case No. 4:05-cv-54-M (W.D. KY 2005).

46.   Kaz has also had constructive and actual knowledge of the Defects and the Effects, and the falsity of its representations through numerous consumer complaints made directly to Kaz or through communications with the Consumer Product Safety Commission, and Food and Drug Administration.

47.   Plaintiffs are informed and believe that Kaz acknowledged internally that the Defects caused the Effects, including burns to Plaintiffs.

48.   Despite having repeated notice of the Defects and their Effects and the reasonable expectations of consumers created by Kaz's marketing of the Heating Pads, Kaz has engaged and continues to engage in the following routine and wrongful course of conduct, where it:

    A. Designs, manufactures, markets, advertises, and sells the Heating Pads with Defects that cause the Effects;

    B. Fails to disclose at the time of purchase that the Heating Pads have Defects that cause the Effects;

    C. Continues to label some models as "SoftHeat" and "SmartHeat" and represents all Heating Pads as providing "soothing therapy for pain relief" and "soothing heat therapy;"

    D. Continues to represent on "SoftHeat" model packaging a use of the Heating Pad that is directly contrary to Kaz's own Operating Instructions and Warnings;

12
**CLASS ACTION COMPLAINT**

151968

E. Continues to represent expressly or by necessary implication that the Heating Pads are dependable and safe to use for the relief of pain and discomfort when it knows these statements are false;

F. Continues to manufacture, market, advertise, distribute, and sell the Heating Pads when it knows that the Heating Pads are defective and unsafe;

G. Fails to disclose the risk that to a substantial certainty the Heating Pad will cause the Effects;

H. Fails to disclose to consumers the Heating Pad Defects;

I. Fails to disclose the many complaints Heating Pad Users have made regarding failure of the Heating Pad, the Defects and the Effects; and

J. Fails to implement a recall or repair program to adequately announce to Plaintiffs and Class members the existence of the Defects and Effects, and provide, without charge, a solution to remedy and correct the Defects, or replace the Heating Pads with non-defective heating pads.

49. As a result of Kaz's unfair, fraudulent, and deceptive conduct Kaz has caused Plaintiffs to suffer injury in fact, including, but not limited to diminution in value of Plaintiffs' Heating Pads, and by Plaintiffs overpaying for a defective product.

50. Had Plaintiffs known of the Defect in the Heating Pads and the substantial risk of burns resulting from use of the Heating Pads, Plaintiffs would not have bought the Heating Pads or would have only purchased them if sold at a lower price than the price they paid.

## CLASS ACTION ALLEGATIONS

51. Representative Consumers bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

13
**CLASS ACTION COMPLAINT**

151968

52.   The Classes which the Representative Consumers seek to represent are defined as follows:

**California Class:**  All persons who purchased a Heating Pad in California primarily for personal, family or household purposes, and who did not purchase their Heating Pad to resell it.

**Michigan Class:**  All persons who purchased a Heating Pad in the State of Michigan primarily for personal, family or household purposes, and who did not purchase their Heating Pad to resell it.

**Pennsylvania Class:**  All persons who purchased a Heating Pad in the State of Pennsylvania primarily for personal, family or household purposes, and who did not purchase their Heating Pad to resell it.

53.   Excluded from the Classes are (i) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal the Classes should be expanded or otherwise modified.

54.   This action has been brought and may properly be maintained as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable:

55.   <u>Numerosity</u>.   The Heating Pads were sold and distributed by Kaz throughout the United States.  Plaintiffs are informed and believe that the proposed putative Classes are made-up of tens of thousands, and likely hundreds of thousands of consumers throughout the United States.

56.   <u>Common Issues Predominate</u>.   Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class.  The Heating Pads are all the same and do not differ in any manner that is relevant to Plaintiffs' allegations of Defects, the Effects and other damage and harm caused thereby.  Plaintiffs

14
**CLASS ACTION COMPLAINT**

151968

allege herein in greater detail, that the Heating Pads all have the same inherent Defects (and that they were defective when made, when they left Kaz's possession and control, and as they now are being used). There is a well-defined community of interest in the questions of law and fact involved and that affect Plaintiffs who purchased the Heating Pads, and they all suffer from inherent and common defects. These questions of law and fact predominate over questions that affect only individual class members.

57. The common questions of law and fact include, without limitation:

A. Whether the Heating Pads have the Defects;

B. Whether Kaz knew and/or recklessly disregarded the fact that the Heating Pads were and are defective;

C. Whether Kaz concealed and failed to disclose to Plaintiffs, Material Facts from its advertising, communications, and/or disclosures to Plaintiffs regarding the Defects, which are inherent in the Heating Pads;

D. Whether Kaz concealed, and failed to disclose to Plaintiffs, Material Facts from its advertising, communications, and/or disclosures to Plaintiffs regarding the Effects of Defects;

E. Whether Kaz has engaged in unfair methods of competition, and unfair, fraudulent and deceptive acts or practices in connection with the sale of the Heating Pads;

F. Whether Kaz violated the consumer protection statutes of Representative Consumers' States of residence;

G. Whether Kaz breached express written and/or representative warranties and/or extended warranties;

H. Whether Kaz breached its implied warranties;

I. Whether Kaz has been unjustly enriched;

J. Whether, as a result of Kaz's conduct, Plaintiffs have suffered damages; and if so the appropriate amount thereof; and

15
**CLASS ACTION COMPLAINT**

151968

K.    Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

58.  These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

59.  Typicality.  The Representative Consumers' claims are typical of the claims of the Class members in that the Representative Consumers and the Class members have the same Heating Pads, which share the same design, parts, materials, workmanship, were manufactured the same way and have the same warranties and about which Defendants repeatedly made the same uniform representations and omissions.  Therefore the claims of the Representative Consumers are and will be typical of Class members.

60.  The Classes are Ascertainable.  The Representative Consumers have adequately defined the Classes, as detailed above, so the Court will be able to use the definitions to determine class membership.

61.  Adequacy.  The Representative Consumers will fairly and adequately represent the interests of all Class members.  The Representative Consumers have each purchased a Heating Pad and are adequate representatives of the Class as they have no interests which are adverse to the interests of absent Class members.  The Representative Consumers have retained counsel with substantial experience and success in the prosecution of complex defective product and consumer protection class action litigation.

62.  Superiority.  A class action is superior to other available means to achieve a fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds

1   of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the

2   discovery and presentation of evidence about the same inherent defects in the Heating Pads, the

3   burden of individual litigation would make it extremely difficult, if not impossible for individual

4   members of the Class to redress the wrongs asserted herein, while an important public interest will

5   be served by addressing the matter as a class action. The Heating Pads are modestly priced

6   products. It would not make sense for a Class member to sue for only their individual claims

7   arising from Defendants' defective Heating Pads; the attorney fees would be too great for any one

8   Class member to pursue the claims asserted herein. Moreover, separate prosecution by thousands

9   of individual members of the Class would likely establish inconsistent standards of conduct for the

10  Defendants and result in the impairment of and potential harm to, Class members' rights and the

11  disposition of their interests through actions to which they were not parties. Plaintiffs are informed

12  and believe that a great amount of time and expense will be saved by conducting the discovery and

13  presentation of evidence about the inherent Defects in the Heating Pads in a single class action

14  lawsuit, in contrast to repeatedly conducting the same discovery and presenting the same evidence

15  in hundreds or thousands of separate lawsuits brought on the common questions presented by the

16  allegations of this complaint. The Consumer Representatives know of no difficulty that will be

17  encountered in the management of this litigation that would preclude its maintenance as a class

18  action.

19

20                          **FIRST CAUSE OF ACTION**
                    **Asserted On Behalf Of the California Class**
21            **(Violations of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

22      63. Consumer Representative Beck-Ellman repeats and re-alleges all prior paragraphs and

23  incorporates them as if fully set forth herein.

24      64. Defendants have engaged in unfair, unlawful, and fraudulent business acts or practices

25  as set forth herein.

26      65. Consumer Representative Beck-Ellman brings this cause of action on behalf of herself

27  and the California Class, pursuant to California Business and Professions Code, §17200, *et seq.*

28                                       17
                          **CLASS ACTION COMPLAINT**

151968

66. Defendants' conduct constitutes **unfair** business acts and/or practices because Defendants' practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not and was not reasonably avoidable by Plaintiffs in light of Defendants' exclusive knowledge of the Defects in the Heating Pads and is not outweighed by the practices' benefits, if any, to Plaintiffs. Such conduct is ongoing and continues to this date.

67. Defendants' acts and practices of selling Heating Pads while omitting the Material Facts offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Furthermore, these acts and practices threaten an incipient violation of antitrust laws and/or consumer protection statutes, or violate the policy and spirit of one of those laws because the effect of the acts and practices are comparable to or the same as a violation of the law or otherwise significantly threaten or harm competition.

68. Kaz's acts of omitting from the packaging the Material Facts, the Effects and mislabeling the SoftHeat models' packaging to include a proscribed use are anticompetitive because consumers are lured into choosing Kaz's Heating Pads over those that are not advertised in a misleading manner, or other related and equally effective products that do not pose the same risks, such as hot water bottles or compresses.

69. Defendants' acts and practices are **unlawful** because they violate California Civil Code §§ 1668, 1709, 1710 and 1711. Defendants' acts and practices are also unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 et seq., the Consumer Legal Remedies Act, Civil Code 1750 *et seq*., Cal. Commercial Code §§ 2313 and 2314, Bus. & Prof. Code § 17500, the common law, the Magnusson Moss Warranty Act ("MMWA"), 16 C.F.R. § 700.6(a), and Cal. Health & Safety Code § 110390.

    A.    Defendants violate Civ. Code § 1668 by attempting to exempt themselves from liability for selling defective Heating Pads and by unlawfully limiting the warranty period of the Heating Pads they know to be defective.

    B.    Defendants violate Civ. Code §§ 1709, 1710, and 1711 by not disclosing to the public the Material Facts, Effects, and Defects. Defendants knowingly or

151968

recklessly concealed or suppressed that the Heating Pads burn Heating Pad Users' skin or create a substantial certainty that they will burn Heating Pad Users' skin, thereby defrauding Plaintiffs. Plaintiffs were unaware of the Defects and substantial certainty they would be burned by the Heating Pads and would have not have purchased the Heating Pads had they known of the Defects and the Effects of using the Heating Pads. As a result of Defendants' concealment of the Defects, the Effects and the actual and substantial certainty that Heating Pads would burn Users, Plaintiffs lost money through diminished value of their Heating Pads, and/or by, paying more for the Heating Pads than they are worth.

C. Defendants violate Cal. Bus. & Prof. Code § 17500 as alleged throughout this Complaint and in the Second Cause of Action, incorporated hereto by reference.

D. Defendants violate Cal. Civil Code § 1750 *et seq.* as alleged in the Third Cause of Action incorporated by reference hereto.

E. Defendants violate Cal. Civ. Code 1790 *et seq.* and Cal. Comm. Code §§ 2313 and 2314, the common law, 16 C.F.R. § 700.6(a) and the MMWA as alleged throughout this Complaint, and in the Fourth, Fifth, Sixth, and Eighth Causes of Action, incorporated hereto by reference.

F. Defendants violate Cal. Health & Safety Code § 110390 by disseminating false advertising regarding the Heating Pads that communicate false and misleading information about the Heating Pads. Specifically, as more fully alleged herein, Defendants depict a use of the Heating Pad on the packaging in which they advertise the SoftHeat Pads at the point of sale that Kaz only later proscribes in Warnings that potential purchasers do not see until after they purchase the Heating Pads. Defendants also omitted Material Facts from the

exterior of the box in which they are packaged, and thereby falsely advertise the Heating Pads.

70. Defendants' acts and practices are **fraudulent** in that they have deceived and/or are likely to deceive Plaintiffs. Defendants knowingly sold Plaintiffs Heating Pads with Defects that cause the Effects and have rendered the Heating Pads unreasonably dangerous and therefore unusable for the purposes for which they were purchased.

71. Plaintiffs relied upon Defendants' unfair, unlawful, and fraudulent business acts and practices - the material misrepresentations, omissions, and non-disclosures to their detriment.

72. Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' unfair competition in that they have overpaid for the Heating Pads, their Heating Pads have lost value given the existence of the Defects, and/or Plaintiffs would not have purchased the Heating Pads had Defendants not misrepresented and failed to disclose the Material Facts, Defects and Effects.

73. Plaintiffs seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Section 17200, *et seq.,* plus interest, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**
**Asserted On Behalf of the California Class**
**(Violations of Cal. Bus. & Prof. Code § 17500 *et seq*.))**

74. Representative Consumer Beck-Ellman repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

75. Representative Consumer Beck-Ellman brings this cause of action on behalf of herself and the California Class, pursuant to California Bus. & Prof. Code § 17500, *et seq.*

76. Defendants are "person(s)" as defined by Cal. Bus. & Prof. Code § 17506.

77. Defendants falsely advertised the performance, uses, benefits, characteristics, and the quality, grade and standard of the Heating Pads through omissions and misrepresentations as alleged above.

151968

78. These and other representations and omissions, as more fully described above, and include the Material Facts, the Effects and Defects, and did deceive, and are likely to deceive Plaintiffs.

79. Consumer Representative Beck-Ellman and members of the California Class relied upon these material misrepresentations and omissions to their detriment.

80. Defendants' above-described false and misleading advertising continues to this day and presents a threat to the general public in that Defendants have not: acknowledged their wrongdoing to consumers; publicly issued an appropriate conspicuous notice to existing or prospective purchasers of its Heating Pads; or disclosed the presence of the Defects, the Effects, the omitted Material Facts all of which resulted in Plaintiffs being deceived and misled.

81. As a result of the above-described conduct, Defendants have been, and will continue to be unjustly enriched at the expense of Plaintiffs.

82. Had Plaintiffs known of the Defects, the Effects or the Material Facts they would not have purchased the Heating Pads, would have paid less for them, or would have purchased alternative products. As such, Plaintiffs did not receive the benefit of the bargain.

83. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiffs seek an order 1) requiring Defendants to immediately cease the unlawful, unfair, and or fraudulent business acts and/or practices and false and misleading advertising complained of herein; 2) enjoining Defendants from continuing to misrepresent the Heating Pads' uses, benefits, characteristics, standard, quality and grade by omitting from their advertising that the Heating Pads have the Defects, cause the Effects, can burn the skin or Heating Pad Users when operated at any control setting; and 3) requiring Defendants to repair or replace the Heating Pads with non-defective heating pads or provide full restitution to Plaintiffs and Class members of all monies wrongfully acquired by means of such acts of unfair competition and false advertising, plus interest and attorneys' fees.

///

///

21
**CLASS ACTION COMPLAINT**

151968

### THIRD CAUSE OF ACTION
**Asserted on Behalf of the California Class**
**(Violations of the California Consumer Legal Remedies Act)**

84. Consumer Representative Beck-Ellman repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

85. Consumer Representative Beck-Ellman seeks to recover for Defendants' violation of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*

86. At all times relevant hereto, Plaintiffs were "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

87. At all times relevant hereto, the Heating Pads constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

88. At all times relevant hereto, Defendants constituted "person(s)" as that term is defined in Cal. Civ. Code § 1761(c).

89. At all times relevant hereto, Plaintiffs' purchases of Defendants' Heating Pads constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

90. At all times relevant hereto, Defendants provided "services" to Plaintiffs within the meaning of Cal. Civ. Code § 1761(b).

91. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they are of another; ... and (9) Advertising goods ... with intent not to sell them as advertised; Civil Code §§ 1770(a)(5),(7), and (9).

92. Defendants made uniform written representations that the Heating Pads are high quality products that will perform as represented and, as set forth above, made specific representations regarding the characteristics, uses, benefits, standards, and quality of the Heating Pads that were false, deceptive and/or misleading, and in violation of the CLRA.

151968

93. Defendants intentionally concealed and/or failed to disclose the Material Facts that the Heating Pads have the Defects, and that the Defects cause the Effects. This concealment was done for the purpose of inducing Consumer Representative Beck-Ellman and members of the Class into purchasing Defendants' Heating Pads.

94. The Material Facts that Defendants concealed from Plaintiffs are material in that a reasonable consumer would have considered them important in deciding whether to purchase, or whether to pay the stated price for, the Heating Pads, and because Plaintiffs would have been aware of the Material Facts and behaved differently by not buying the Heating Pads, and/or by paying less for them.

95. The Material Facts, as alleged above, are contrary to representations Defendants actually made, including but not limited to, that the Heating Pads provide "soothing therapy for pain relief", "soothing heat therapy" the terms "SoftHeat" and "SmartHeat", as well as the depiction of a use on the packing of SoftHeat and SmartHeat models, that is contradicted by Kaz's Operations Instructions and Warnings found only inside the Heating Pads' packaging after Plaintiffs purchased their Heating Pads.

96. In addition, Defendants were obliged to disclose the Omitted Material Facts because: 1) Defendants had exclusive knowledge of the material facts, and they were not known to Plaintiffs and the Class, since only Defendants had access to the aggregate data from their retailers, their own tests of the Heating Pads, and complaints about burns and melted Heating Pads; and 2) Defendants actively concealed and suppressed the Material Facts from Plaintiffs by: not warning of the Defects, the Effects and/or the risk of burns at the time of purchase; and providing warranty replacements that they knew had the same Defects about which Class members complained.

97. Consumer Representative Beck-Ellman justifiably acted or relied to her detriment upon the concealment and/or non-disclosure of material facts as evidenced by her purchase of the defective Heating Pads.

98. Had Consumer Representative Beck-Ellman and members of the California class known of the Defects, they would not have purchased the Heating Pads, would have paid less for

151968

them, or would have purchased alternative, safer products suitable for relieving pain and providing heat therapy. As such, Plaintiffs did not receive the benefit of the bargain.

99. Cal. Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770. Plaintiffs and Class members are entitled to recover damages as provided by statute, as well as costs, attorney's fees, rescission, and other relief as is deemed appropriate.

100. The statue of limitations is tolled by the discovery rule, fraudulent concealment, and other equitable tolling doctrines as Consumer Representative Beck-Ellman did not discover, and could not have discovered, Defendants' conduct until she was burned in 2008.

101. Pursuant to Cal. Civil Code § 1782, Plaintiff Beck-Ellman notified Defendants in writing of their particular violations of Cal. Civil Code § 1770 and made a demand for corrective action. Plaintiff Beck-Ellman sent this notice by certified mail, return receipt requested, to Defendants' principal places of business and/or registered agents. [See Ex. 3]. Defendants have not satisfied the requirements of Cal. Civil Code § 1782, subsections (b) and (c).

## FOURTH CAUSE OF ACTION
### Asserted On Behalf of the California Class
### (Breach of Express Warranty under the Song Beverly Act, Cal. Civ. Code 1790 *et seq.*, Cal. Comm. Code § 2313, and California Common Law)

102. Consumer Representative Beck-Ellman repeats and re-alleges all prior paragraphs and incorporates them as if fully set forth herein.

103. Consumer Representative Beck-Ellman seeks to recover for Defendants' breach of express warranty under the laws of the State of California.

104. Defendants warranted all of the Heating Pads against defects in materials, parts and workmanship at a time when they knew that these Heating Pads suffered from the Defects causing the Effects, yet continued to market and sell the Heating Pads with the express Warranties referenced above. Defendants also warranted that the Heating Pads were safe and dependable and conformed to their intended purposes and Defendants' affirmations of fact. For example, Kaz

warranted that the Heating Pads would deliver "soothing therapy for pain relief" and "soothing heat therapy" as more fully described above. These affirmations and promises created express Warranties that the Heating Pads would operate properly and without defects and would conform to Kaz's affirmations and promises. Defendants' affirmations and promises became part of the bases of the bargains between Plaintiffs and Kaz.

105. Defendants are obligated under the terms of their express Warranties to repair and/or replace the parts or materials that are the Defects in the Heating Pads sold to Plaintiffs, and/or to make the Heating Pads conform to the Warranties under the Song-Beverly Act, Cal. Civil Code § 1793.2(b) and (d), Cal. Comm. Code § 2313, and the Common Law.

106. Defendants failed to make the Heating Pads conform to the express warranties they made and have breached their express Warranties by selling and supplying the Heating Pads in a condition which does not meet the warranty obligations undertaken by Defendants and by failing to repair or replace the Defects, which are inherent in the Heating Pads and that are substantially certain to burn Users' skin.

107. Defendants have received sufficient and timely notice of the breaches of Warranties alleged herein. In addition, Defendants have received thousands of complaints and other notices about the Defects, the Effects and the omitted Material Facts from their customers nationwide. Despite receiving notice, and Defendants' knowledge, Defendants refuse to honor their Warranties.

108. Consumer Representative Beck-Ellman has complied with her obligations under the Warranty and the law and has given Defendants a reasonable opportunity to cure the Defects in the Heating Pads and Defendants failed to do so.

109. Defendants knew of their obligations under the Warranties to replace defective Heating Pads with non-defective Heating Pads. However, Defendants have willfully refused to replace the Heating Pads. Therefore, Defendants are liable for damages, as well as civil penalties pursuant to Civil Code § 1794.

110. Kaz's time limits on its express Warranties are unconscionable, since it knowingly and/or recklessly sold a defective product that was defective at the time of sale, without

conspicuously informing consumers about the Defects, Effects and the resulting substantial certainty of failure and burns. The time limits on all but the lifetime express Warranties are grossly inadequate to protect Plaintiffs. Plaintiffs had no meaningful choice in determining those time limitations; the Warranties were written by Defendant, without input of Plaintiffs; the terms of the express Warranties overwhelmingly favor Defendants by unreasonably limiting the Warranty on some models to 3-5 years on a product that could reasonably be expected to last up 20 or more years; a gross disparity in bargaining power existed as between Defendants and Plaintiffs; and Defendants knew or should have known that the Heating Pads were defective at the time of sale, thereby rendering the time limitations in Defendants' express warranties insufficient, inadequate, and unconscionable.

111. As a direct and proximate result of Defendants' breach of express Warranty, Plaintiffs have sustained damages and other losses in an amount to be determined at trial. Plaintiffs are entitled to recover damages and penalties as provided by statute, as well as costs, attorneys' fees, rescission, and other relief as is deemed appropriate.

### FIFTH CAUSE OF ACTION
**Asserted On Behalf of the California Class**
**(Breach of Implied Warranty under the Song Beverly Act,**
**Cal. Civ. Code 1790 *et seq*. Cal. Comm. Code § 2314, and California Common Law)**

112. Consumer Representative Beck-Ellman alleges and incorporates the above allegations by reference as if fully set forth herein.

113. Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 *et seq*., every sale of consumer goods is accompanied by both a manufacturer's and retailer's implied warranty that the goods are merchantable.

114. The Heating Pads are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

**CLASS ACTION COMPLAINT**

151968

115. Defendants are "manufacturer(s)" within the meaning of Cal. Civ. Code §§ 1791(j). Defendants also sold Heating Pads directly to Class members through their website http://www.kaz.com/kaz/e-store/.

116. Consumer Representative Beck-Ellman bought a Kaz Heating Pad sold at retail in the State of California.

117. At the time of sale, and currently, Defendants are in the business of manufacturing and selling Heating Pads.

118. By operation of law, Defendants impliedly warranted to Plaintiffs that their Heating Pads were of merchantable quality and fit for the ordinary purposes for which they are used.

119. Defendants knowingly and/or recklessly sold a defective product without conspicuously informing consumers the Defects were present in the Heating Pads. Defendants possessed actual superior knowledge about the Defects, that the Heating Pads were substantially certain to fail, and that using the Heating Pads exposed Users to the substantial risk that they would be burned.

120. Consumer Representative Beck-Ellman's Heating Pad became unfit for its ordinary purpose within the implied warranty period.

121. Defendants' Heating Pads are not adequately contained, packaged, and/or labeled.

122. Plaintiffs were the intended third-party beneficiaries of the implied warranty made by Defendants. Defendants, who are the manufacturers of the Heating Pads knew that the retailers to whom they sold the Heating Pads were not going to own the Heating Pads any longer than it took to sell them to Plaintiffs. Further, Defendants intended that any Warranties, whether express or implied, that applied to the Heating Pads were for the benefit of the Plaintiffs, those who would own and use and those guests that use the Heating Pads.

123. Defendants knew and intended that Plaintiffs were the ultimate beneficiaries of Defendants' implied warranties as they are the owners of the Heating Pads.

124. Defendants, who manufacture and market the Heating Pads, and/or sell the Heating Pads, knew that Plaintiffs were the end Users of the Heating Pads when Defendants entered into

any and all sales contracts and subcontracts for the Heating Pads and Defendants' intent to benefit Plaintiffs arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Heating Pads entered into by Defendant.

125. As a proximate result of Defendants' breach of implied warranty, Plaintiffs have sustained damages and other losses in an amount to be determined at trial.  Plaintiffs are entitled to recover damages and attorneys' fees as provided by statute, as well as costs, rescission, and other relief as is deemed appropriate.

**SIXTH CAUSE OF ACTION**
**Asserted on Behalf of the California, Michigan, and Pennsylvania Classes**
**(Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) –**
**Breach of Written Warranty)**

126. The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

127. The Heating Pads are "consumer products" as that term is defined under 15 U.S.C. § 2301(1).

128. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Heating Pads for personal and household use and not for resale or commercial purposes.

129. Kaz is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

130. Kaz provided Plaintiffs with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

131. In its capacity as a warrantor, and by the conduct described herein, any attempt by Kaz to limit the express warranties in a manner that would exclude coverage for the Defects in the Heating Pads is unconscionable and any such effort to disclaim, or otherwise limit, liability for its defective Heating Pads is null and void as alleged above.

132. This Court has jurisdiction over this cause of action under 28 U.S.C. § 1332.

28
**CLASS ACTION COMPLAINT**

151968

133. By Kaz's conduct as described herein, including Kaz's knowledge of the Defects in the Heating Pads and its action, and inaction, in the face of that knowledge, Kaz has failed to comply with its obligations under its written and implied promises, Warranties, and representations.

134. Plaintiffs fulfilled their obligations under the Warranties.

135. As a result of Defendants' breach of express Warranties, Plaintiffs are entitled to revoke their acceptance of the Heating Pads, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SEVENTH CAUSE OF ACTION**
**Asserted on Behalf of the California, Michigan, and Pennsylvania Classes**
**(Unjust Enrichment)**

136. The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

137. At all times relevant hereto, Defendants manufactured and sold Heating Pads with the Defects as alleged herein.

138. Defendants have been unjustly enriched by Plaintiffs' purchases of the Heating Pads.

139. Plaintiffs unknowingly conferred a benefit, directly and indirectly, on Defendants to their detriment through the purchase of the Heating Pads of which Defendants had knowledge, since Defendants were aware of the presence of the Defects in the Heating Pads and that the Heating Pad Defects would cause the Effects, but Defendants failed to disclose the Material Facts and misled and deceived Plaintiffs regarding the nature, benefits characteristics and quality of the Heating Pads while profiting from this deception.

140. The circumstances are such that it would be inequitable, unconscionable and unjust to permit Defendants to retain the benefit of the funds they have unfairly obtained from Plaintiffs. Defendants would be unjustly enriched if they were allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by Defendants from the sale of the Heating Pads and the monies held in trust should be ordered returned to Plaintiffs.

**CLASS ACTION COMPLAINT**

151968

**EIGHTH CAUSE OF ACTION**
**Alleged on Behalf of the California, Michigan, and Pennsylvania Classes**
**(Violation of the Magnuson-Moss Warranty Act 15 U.S.C.A. 3201 *et seq.*)**

141. The Consumer Representatives repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

142. Consumer Representatives bring this cause of action individually and on behalf of the Classes as defined herein.

143. At all relevant times herein mentioned, Defendants were, and now are "warrantors" and "suppliers" of "consumer products" and Plaintiffs are "consumers" within the meaning of 15 U.S.C.A. § 2301.

144. The Heating Pads purchased by Plaintiffs and Class members were manufactured by Defendants. Defendants made an express written Warranty that, from the date of purchase, the Heating Pads are "warranted against defective material and workmanship" for 3 years, 5 years, or for life, depending on model of Heating Pad. These Warranties constitutes an express warranty within the meaning of 15 U.S.C.A. § 2301. A copy of the Warranties is contained in Ex. 1 and incorporated by reference hereto.

145. Defendants violate 15 U.S.C.A § 2303 and 16 C.F.R. § 700.6(a) by not designating the warranty as "Limited" or "Full." Defendants' Warranty is merely designated as "WARRANTY." [See Ex. 1, p. 7.]

146. To the extent the Court finds the Warranty is a "Full" warranty under 15 U.S.C.A § 2303, then Defendants have also failed to meet the federal minimum standards for warranty set forth in 15 U.S.C.A § 2304(a)(1) by not remedying the defect and or malfunction within a reasonable time and 15 U.S.C.A § 2304(a)(3) by not conspicuously stating the limitation on consequential damages on the face of the warranty.

147. The Heating Pads of Representative Consumers and Class members fail to perform as warranted and are unfit for their intended use as more fully described above.

148. Defendants had notice of the Defects and have refused to recall or repair the Heating Pads of Plaintiffs.

151968

149. As a result, Representative Consumers and members of the Class have been deprived use of the Heating Pads for their intended purpose.

150. Plaintiffs have suffered damages in the lost use of their Heating Pads and diminished value of their Heating Pads.

**NINTH CAUSE OF ACTION**
**Alleged on Behalf of the Michigan and Pennsylvania Classes**
**(Breach of Implied Warranty)**

151. Consumer Representatives John and Denise Bielis, and John and Sandy Mahoy repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

152. This cause of action is brought against Defendants for breach of the implied warranty of merchantability pursuant to M.C.L.A. § 440.2314 and 13 Pa. Cons. Stat. § 2314.

153. The Heating Pads are "goods" within the meaning of the Michigan and Pennsylvania statutes that were in effect at all relevant times herein governing the implied warranty of merchantability.

154. Defendants are "merchants" within the meaning of the Michigan and Pennsylvania statutes that were in effect at all relevant times herein governing the implied warranty of merchantability because Defendants are sellers and manufactures of the Heating Pads.

155. The implied warranty of merchantability requires, among other things, that: the Heating Pads pass without objection in the trade; are fit for the ordinary purpose for which the Heating Pads are used; be adequately contained, packaged, and labeled; and conform to the promises or affirmations of fact made on the container or label.

156. The Heating Pads are not merchantable nor function as intended at the time of sale because, as alleged herein, they contain Defects that cause burns and create a substantial risk of burns, use misleading labeling, and do not conform to the promises or affirmations made on the container and labels as alleged herein.

151968

157. Defendants were put on notice of the Defects because they had actual knowledge, as alleged herein, of the Defects and non-conformity that rendered the Heating Pads unmerchantable at the time of sale, as well as by the written and oral notice they received from Plaintiffs.

158. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Michigan and Pennsylvania Representatives and Class members suffered damages in an amount to be determined at trial.

159. The Michigan and Pennsylvania Representatives and Class members request damages, as well as attorneys' fees, costs and other appropriate relief.

## TENTH CAUSE OF ACTION
### Alleged on Behalf of the Pennsylvania and Michigan Classes
### (Breach of Express Warranty)

160. Consumer Representatives John and Denise Bielis, and John and Sandy Mahoy repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

161. This cause of action is brought against Defendants for breach of express warranty pursuant to M.C.L.A. § 440.2313 and 13 Pa. Cons. Stat. § 2313.

162. Defendants warranted all of the Heating Pads against defects in materials or workmanship at a time when they knew that these Heating Pads were defective, but continued to market and sell the Heating Pads with the express Warranties referenced above. Defendants also warranted that the Heating Pads were safe and dependable and conformed to their intended purposes and by affirmation of fact. For example, as to Kaz Models, Defendants warranted that the Heating Pads would deliver "soothing therapy for pain relief" as more fully described above. These affirmations and promises created express warranties that the Heating Pads would operate properly and without defects and would conform to Kaz's affirmations and promises. Defendants' affirmations and promises became part of the bases of the bargains between Plaintiffs and Kaz.

163. Plaintiffs gave written and oral notice to Kaz that the Heating Pads were and are defective and described the Defects.

**CLASS ACTION COMPLAINT**

151968

164. Defendants are obligated under the terms of their express Warranties to repair and/or replace the parts, materials, or workmanship that are the Defects in the Heating Pads sold to Plaintiffs, and/or make the Heating Pads conform to the Warranties and descriptions of the goods.

165. Kaz has failed to make the Heating Pads conform to the Warranties and has therefore breached the Warranties.

166. As a direct and proximate result of Kaz's failure to conform the Heating Pads and breach of express Warranties, the Bielises and Mahoys, and members of the Michigan and Pennsylvania Classes have suffered damages.

167. Plaintiffs request damages, as well as attorneys' fees, costs and other appropriate relief.

## ELEVENTH CAUSE OF ACTION
### Asserted on Behalf of the Michigan Class
### (Violation of the Michigan Consumer Protection Act, M.C.L.A § 445.901 *et seq*.)

168. Consumer Representatives John and Denise Bielis repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

169. This cause of action is brought against Defendants for unfair, deceptive and unlawful trade practices pursuant to the Michigan Consumer Protection Act ("MCPA"), § 445.901 *et seq.*

170. Defendants' sale, marketing, and warranting of the Heating Pads were acts that occurred in or affect "trade or commerce" as those terms are defined by M.C.L.A § 445.902(g).

171. Defendants developed, marketed and sold the defective Heating Pads. The Heating Pads had Defects within them at the time they were sold by Defendants.

172. The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including "(a) causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services…; (c) representing that good have sponsorship, approval, characteristics, … uses, benefits… that they do not…; (e) representing that goods or services are of a particular standard, quality, or grade …, if they are of another…; (g) advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented…; (p) disclaiming or limiting the implied

33
**CLASS ACTION COMPLAINT**

warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed…(s) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer…; (cc) failing to reveal facts that are material to a transaction in light of other representations of fact made in a positive manner."

173. Defendants violated these subsections of the MCPA by concealing from the Bielises and members of the Michigan Class the existence of the Defects, omitting the Material Facts, and misrepresenting the Heating Pads through terms such as "SmartHeat" and "SoftHeat," the phrases "soothing therapy for pain relief" and "soothing heat therapy," and depictions of an improper use on their packaging at the time of sale. Defendants also violated the MCPA by selling a defective product and failing to comply with the terms of their express and implied Warranties as alleged herein.

174. The omissions of Material Facts and misrepresentations of fact were important to the transactions and would have affected Plaintiffs' decisions to enter into the transactions in that Plaintiffs either would not have purchased the Heating Pads or would have paid less for them and thus have suffered an ascertainable loss. The omissions of Material Fact and misrepresentations of fact were not reasonably discoverable by Plaintiffs prior to the time of purchase.

175. Defendants had knowledge of or recklessly disregarded the Defects and falsity of their representations at all relevant times as alleged herein.

176. Defendants' misrepresentations and omissions did deceive and are likely to deceive the Bielises and reasonable consumers, and reasonable consumers would have relied and did rely on the misrepresentations and omissions of Material Fact to their detriment.

177. Defendants' acts and practices are the actual and proximate cause of Plaintiffs' damages. As such, Plaintiffs request relief under the MCPA, including actual damages, interest, attorneys' fees, and costs.

///

151968

**TWELFTH CAUSE OF ACTION**
**Asserted on Behalf of the Pennsylvania Class**
**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection**
**Law, 73 Pa. Const. St. § 201-1 *et seq.*)**

178. Consumer Representatives John and Sandy Mahoy repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

179. This cause of action is brought against Defendants for unfair, deceptive and unlawful trade practices pursuant to 73 Pa. Const. St. § 201-1 *et seq.*

180. Defendants are "person(s)" as defined by 73 Pa. Const. St § 201-2(2).

181. Defendants marketed and sold the Heating Pads within "trade" and "commerce" as defined by 73 Pa. Const. St § 201-2(3).

182. The Mahoys and members of the Pennsylvania Class purchased the Heating Pads primarily for personal, family, or household purposes.

183. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") makes unlawful specific unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, including: (v) representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have;  (vii) representing that goods ... are of a particular standard, quality or grade . . . if they are of another; (ix) advertising goods ... with intent not to sell them as advertised; (xiv) failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after contract for the purchase of goods or services is made; and (xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

184. Defendants violated these sections of the UTPCPL, as alleged herein, by omitting the Material Facts, and misrepresenting the Heating Pads through terms such as "SoftHeat" and "SmartHeat," the phrases "soothing therapy for pain relief" and "soothing heat therapy," and depictions of a proscribed use on their packaging.  Defendants also violated the UTPCPL by selling a defective product and failing to comply with the terms of their written Warranties as alleged herein.

151968

185. The Mahoys and members of the Pennsylvania Class relied on Defendants' material omissions and misrepresentations to their detriment in that they would not have purchased the Heating Pads or would have paid less for them had Defendants not misrepresented them and omitted Material Facts as alleged herein.

186. Defendants' deceptive conduct created a likelihood of confusion and misunderstanding and is likely to deceive, and did deceive, the Mahoys and members of the Pennsylvania Class as alleged herein.

187. As a result of Defendants' use and employment of acts and practices declared unlawful by the UTPCPL, the Mahoys and members of the Pennsylvania Class lost money through the diminution in value of their Heating Pads, and/or by overpaying for a defective product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants for the following:

1. An order certifying California, Michigan, and Pennsylvania Classes and appointing Beverly Beck-Ellman, John and Denise Bielis, and John and Sandy Mahoy as representative plaintiffs and their counsel, Stuart M. Eppsteiner of Eppsteiner & Fiorica Attorneys, LLP to be class counsel for the Classes;

2. A constructive trust on and restitution of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3. All recoverable compensatory, punitive, and other damages sustained by Plaintiffs;

4. Actual and/or statutory damages for injuries suffered by Plaintiffs in the maximum amount permitted by applicable law;

5. An order (1) enjoining Defendants' wrongful, unlawful, fraudulent, and deceptive, and unfair conduct as set forth above; (2) ordering Defendants to engage in a corrective notice campaign; and (3) ordering Defendants to repair the Heating Pads or refund to Plaintiffs the funds paid to Defendants for the defective Heating Pads;

151968

6. Rescission or revocation of the Heating Pad transactions;

7. Statutory pre-judgment and post-judgment interest on any amounts;

8. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

9. Such other relief as the Court may deem just and proper.

The Representative Consumers, individually and on behalf of all similarly situated persons, hereby demand a trial by jury on all issues so triable.

DATED: October 13, 2010                    EPPSTEINER & FIORICA ATTORNEYS, LLP


                                 By:      /s/  Stuart M. Eppsteiner
                                        Stuart M. Eppsteiner, Esq.
                                        Andrew J. Kubik, Esq.

                                        Counsel for Plaintiffs and the Class

**CLASS ACTION COMPLAINT**

151968

# EXHIBIT 1

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 1



# SoftHeat



### Heating Pad
### Almohadilla Eléctrica
### Coussin Chauffant

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 2

# IMPORTANT SAFETY INSTRUCTIONS

## DO NOT DESTROY

**DANGER:** TO REDUCE THE RISK OF SEVERE BURNS, ELECTRIC SHOCK AND FIRE, THIS PRODUCT MUST BE USED IN ACCORDANCE WITH THE FOLLOWING INSTRUCTIONS.

1. READ ALL INSTRUCTIONS.
2. DO NOT USE WHILE SLEEPING.
3. DO NOT USE ON AN INFANT.
4. THIS PAD IS NOT TO BE USED ON OR BY AN INVALID, SLEEPING OR UNCONSCIOUS PERSON, OR A PERSON WITH POOR BLOOD CIRCULATION OR DIABETES UNLESS CAREFULLY ATTENDED.
5. DO NOT USE A HEATING PAD WHEN SYMPTOMS OF APPENDICITIS ARE PRESENT. CONSULT YOUR PHYSICIAN.
6. DO NOT USE ON AREAS OF INSENSITIVE SKIN.
7. BURNS CAN OCCUR REGARDLESS OF CONTROL SETTING. CHECK SKIN UNDER PAD FREQUENTLY.
8. DO NOT USE IN AN OXYGEN RICH ENVIRONMENT.
9. NEVER USE PAD WITHOUT COVER IN PLACE.
10. **DO NOT USE PINS OR OTHER METALLIC MEANS TO FASTEN THIS PAD IN PLACE.**
11. **DO NOT SIT ON OR CRUSH PAD – AVOID SHARP FOLDS. ALWAYS PLACE PAD ON TOP OF AND NOT UNDER YOUR BODY. NEVER PLACE PAD BETWEEN YOURSELF AND CHAIR, SOFA, BED OR PILLOW.**
12. **NEVER PULL THIS PAD BY THE SUPPLY CORD. DO NOT USE THE CORD AS A HANDLE, UNPLUG WHEN NOT IN USE.**
13. DO NOT USE OUTDOORS.
14. DO NOT USE PAD WITH LINIMENT, SALVE OR OINTMENT PREPARATIONS THAT CONTAIN HEAT-PRODUCING INGREDIENTS. SKIN BURNS CAN RESULT.
15. CAREFULLY EXAMINE INNER COVER BEFORE EACH USE. DISCARD THE PAD IF INNER COVERING SHOWS ANY SIGN OF DETERIORATION.
16. WHEN NOT IN USE, STORE THE PAD IN THIS BOX, IN A COOL, DRY PLACE.
17. SAVE THESE INSTRUCTIONS.

THIS APPLIANCE HAS A POLARIZED PLUG (ONE BLADE IS WIDER THAN THE OTHER). AS A SAFETY FEATURE, THIS PLUG WILL FIT IN A POLARIZED OUTLET ONLY ONE WAY. IF THE PLUG DOES NOT FIT FULLY IN THE OUTLET, REVERSE THE PLUG. IF IT STILL DOES NOT FIT, CONTACT A QUALIFIED ELECTRICIAN. DO NOT ATTEMPT TO DEFEAT THE SAFETY FEATURE.

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 3

## OPERATING INSTRUCTIONS

ENGLISH

Heat therapy relaxes muscles and relieves joint pain and soreness. By increasing blood flow to the injury area, heat therapy can help accelerate healing. Finally, heat can effectively warm and loosen stiff muscles before exercise. Aquifer™ timed-release moisture technology provides deeper heat penetration than dry heat alone. Moist heat is physician recommended.

If you purchased a dry heat pad, you may either dampen the cover or use a wash cloth to help deliver moist heat to the injured area – see directions below.

Kaz heat therapy products provide relief from back, menstrual, arthritis and muscle pain. Please note that the pad must be placed on the injured area, but not under your body, for safe operation. (see Figure 3A-D)

## IMPORTANT

**Please do not return this product to the store.
Contact Kaz Consumer Relations – we can help you.**

**Call: 1-800-477-0457 weekdays 7:30am – 7:00pm EST**

**Email: consumerrelations@kaz.com**

**Write:**

**Kaz, Incorporated
Consumer Relations Dept.
250 Turnpike Rd.
Southborough, MA 01772 USA**

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 4





A. Heat Settings:
High, Medium, Low and Off
B. Heat Setting Slide Switch
C. Certain Models
D. Power/Auto Shut-off Light

E. Heat Setting Lights
F. Heat Setting Switch
G. Therapy Timer Dial
H. Power Button/Auto Shut-off Light

Dunlap_SoftHeat_OM.qx  5/24/06  7:20 PM  Page 5

  

ENGLISH

## Dry Heat Therapy

1. Insert the pad into the cloth cover. (see Figure 1)
2. Plug the power cord into a 120 volt AC electrical outlet.
3. For Standard and Plus/Deluxe models, set controller to desired setting. For Deluxe with Therapy Timer model, press the flashing power button first, then set controller to desired setting. (See figure 2)
4. Place the pad on the area to be treated – See Figures 3A-D for examples of how to position heating pad.
5. Turn pad off and unplug power cord when finished.

## Moist Heat Therapy

1. Insert the pad into the cloth cover. (see Figure 1, do not insert Aquifer™ sponge yet)
2. Saturate the Aquifer™ sponge with warm water and wring out the excess.
3. Place the sponge on the heating pad inside the cloth cover.
4. Plug the power cord into a 120 volt AC electrical outlet.
5. For Standard and Plus/Deluxe models, set controller to desired setting. For Deluxe with Therapy Timer model, press the flashing power button first, then set controller to desired setting. (See figure 2)
6. Place the pad on the area to be treated with the Aquifer™ sponge side against your body. See Figure 3A-D for examples of how to position heating pad.
7. Turn pad off and unplug power cord when finished.

## Standard and Plus/Deluxe Auto Shut-off

Check figure 2 to determine which controller you have.  For the Standard and Plus/Deluxe models, your heating pad is equipped with a special safety feature designed to shut the heating pad off after 60 minutes of use. When the automatic shut-off feature turns the pad off, a light on the controller flashes slowly to let you know the pad has shut off. To restart the pad, set the controller to off and reselect the desired heat setting.

## Deluxe with Therapy Timer

Check figure 2 to determine which controller you have.  For Deluxe with Therapy Timer model, your heating pad is equipped with a selectable auto shut-off.  Your pad is designed to automatically shut-off after 30 to 120 minutes – the time depends on which of the 4 auto shut-off timer choices you select.  When the auto shut-off feature turns off the pad, the power button will flash.  To restart the pad, simply press the power button and reselect the desired heat setting.

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 6

## CARE AND CLEANING

- Machine wash cloth cover in cool water, using a mild detergent.

- Hang dry or tumble dry on a cool setting.

- Wipe the pad clean with a damp cloth, do not use chemicals.

- **DO NOT IMMERSE OR WET CONTROLLER.**

## COMMONLY ASKED QUESTIONS

**Q: I was using my heating pad and now it isn't producing heat and the controller is flashing.**

**A:** This heating pad is equipped with an automatic shut-off safety feature to shut itself off. Restart Standard and Plus/Deluxe controllers by setting the controller to off and reselecting the desired heat setting. For Deluxe with Therapy Timer model, press the flashing power button first, then set controller to desired setting to restart pad. Please review figure 2 to determine which model you have.

**Q: How fast should my heating pad heat-up?**

**A:** Your heating pad is specially designed for the fastest heat-up allowed by the national recognized independent test laboratory that the electronics industry relies on for safety testing. Your heating pad should reach the high temperature setting in less than 10 minutes.

**Q: My heating pad doesn't feel hot enough?**

**A:** Your heating pad is specially designed for the highest heat allowed by the national recognized independent test laboratory that the electronics industry relies on for safety testing.

**Q: How come I can't lie or sit on my heating pad**

**A:** Lying or sitting on the pad could damage the wires in the pad. Check lay and breath for correct usage. It's also very important to avoid folding or creasing the pad. Additionally, the pad needs to have one side exposed to the open air at all times so it can breath for safe operation. Using the pad any other way could cause damage to the pad or cause severe burns.

**Q: Why is the light on the controller lit when I'm not using my heating pad — I'd prefer it off.**

**A:** The Plus and Deluxe models are equipped with an extra safety feature to help alert you to unplug your heating pad after use.

6

Dunlap_SoftHeat_OM.qx 5/24/06 7:20 PM Page 7

**ENGLISH**

# WARRANTY

This heating pad is warranted against defective material or workmanship from the date of purchase. The length of the warranty is:

| | |
|---|---|
| Deluxe | Lifetime |
| Plus | 5 years |
| Standard | 3 years |

Any defective part will be repaired or replaced at no charge as long as it has not been repaired or tampered with and was used according to these printed instructions. Any charges incurred to ship the product back for replacement are the sole responsibility of the consumer. This warranty gives you specific legal rights as well as other rights, which vary from state to state.

# CONTACT US

If you experience unsatisfactory operation or have any questions or comments, call the Kaz Consumer Relations Department at 800-477-0457 or write to:

Kaz, Incorporated
Consumer Relations Dept.
250 Turnpike Rd.
Southborough, MA 01772 USA

You can also email Kaz at consumerrelations@kaz.com.

Please be sure to include the model number of the unit, as well as a detailed description of how the pad is operating.

**Do not return product to store.**

7

EXHIBIT 2





3



SoftHeat®
Moist or Dry
Soothing therapy for pain relief
heating pad

## Soothing Heat Therapy

Heat therapy relaxes muscles and relieves joint pain and soreness. By increasing blood flow to the injury area, heat therapy can help accelerate healing. Finally, heat can effectively warm and loosen stiff muscles before exercise.

Aquifer™ timed-release moisture technology provides deeper heat penetration than dry heat alone. Moist heat is physician recommended.

3 Year Warranty

SoftHeat

4

SoftHeat
**Moist or Dry**
Soothing therapy for pain relief
heating pad

3 Year
Warranty

SoftHeat

SoftHeat™
Moist or Dry
Soothing therapy for pain relief
heating pad

© 2006 Kaz, Incorporated
250 Turnpike Rd., Southborough,
MA 01772 • USA • www.kaz.com
Made in China
Actual color of cloth cover may vary
from picture on package

c (UL) us

1 28785 60115 2

3 Year
Warranty

SoftHeat™

6



EXHIBIT 3

# EPPSTEINER & FIORICA ATTORNEYS
LLP

| | | |
|---|---|---|
| San Diego | Stuart M. Eppsteiner* | Colorado |
| 12555 High Bluff Drive | Andrew P. Fiorica | 1260 Yellow Pine Avenue |
| Suite 155 | Robert J. Pribish | Boulder, Colorado 80304 |
| San Diego, California 92130 | Brian K. Findley | Tel (877) 480-1500 |
| Tel (858) 350-1500 | Andrew J. Kubik | Fax (858) 350-1501 |
| Fax (858) 350-1501 | Bethsaida Obra-White | |
| | *Also Admitted In Colorado | |
| | www.eppsteiner.com | |

July 30, 2010

## VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Kaz USA, Inc.
c/o Jacob Fraden
6215 Ferris Square, Suite 130
San Diego, CA 92122

Kaz USA, Inc.
c/o CT Corporation System
155 Federal St., Suite 700
Boston, MA 02110

Peterson Belknap Webb & Tyler LLP
c/o John P. Schmitt, Esq.
1133 Avenue of the Americas
New York, NY 10036

Kaz USA, Inc.
250 Turnpike Road
Attn: William Davis
Southborough, MA 01772

Kaz Incorporated
One Vapor Trail
Hudson, NY 12534

Re:     **Notice of Kaz USA Inc.'s and Kaz, Inc.'s Violations of the California Consumer Legal Remedies Act (California Civil Code Section 1750 *et seq.*) Related to Kaz SmartHeat, SoftHeat and Dunlap Heating Pads.**

To Whom It May Concern:

The law firm of Eppsteiner & Fiorica Attorneys, LLP represents Beverly Beck-Ellman, a California resident, who purchased a Kaz Heating Pad (model # HP 215) from a retail pharmacy in San Diego, California in late 2007 for her personal, family, and household use. Ms. Beck-Ellman was burned in 2008 after using her Kaz Heating Pad.

This letter serves as pre-litigation notice and demand for corrective action pursuant to the California Consumer Legal Remedies Act ("CLRA") and its pre-litigation notification requirement. This notification and demand is made on behalf of Ms. Beck-Ellman and those similarly situated to Ms. Beck-Ellman (e.g. other buyers of the Kaz Smartheat, Softheat and Dunlap Heating Pads ("Heating Pads")), collectively referred to hereinafter as the "Class."

As set forth herein, Kaz USA, Inc. and Kaz, Inc. ("Kaz") has violated the CLRA by marketing and selling defective Heating Pads that cause physical injury and property damage. Specifically, the pads reach dangerous temperature levels and burn skin, as well as mattresses and furniture, when used in a foreseeable manner. As such, Kaz has violated California Civil Code Section 1770, subdivisions (a)(5), (a)(7), and (a)(9) by representing that the Heating Pads have: (i) "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which

76973

Kaz USA, Inc.
July 30, 2010
Page 2

---

[they do] not have," and/or (ii) are of "a particular standard, quality, or grade," when they are of another, and by (iii) "[a]dvertising goods or services with intent not to sell them as advertised."

The Heating Pads are all electric heating pads advertised and marketed under the brands SmartHeat, SoftHeat and Dunlap and were purchased directly from Kaz via Kaz's internet website and from retail outlets such as Rite Aid, Target, Wal-Mart, and others, and through the websites of these retailers.

### Kaz's Misrepresentations and Omissions of the Uses, Benefits, Characteristics, Standard and/or Qualities of the Heating Pads, and False Advertising of the Heating Pads

Kaz fails to disclose anywhere at the time of purchase, including on the boxes in which the heating pads are packaged and displayed, the material fact that the Heating Pads can burn users at any setting. This omission is material because reasonable consumers want to know and need to be informed prior to purchase whether a device they are purchasing to relieve pain has a high propensity to cause pain and injury (which the Heating Pads do, and are thus unsafe). This omission is misleading and likely to deceive because consumers are lured into buying the Heating Pads that Kaz represents, on the box of the Heating Pads: "Soothing therapy for pain relief," "Moist heat – deep penetrating pain relief" and "Soft Heat heating pad." Had Kaz disclosed the true facts: that users of its Heating Pads are at high risk of injury and burns, Representative Consumer Beck-Ellman and members of the Class would not have purchased the Heating Pads.

Furthermore, Kaz misrepresents by omission the uses and benefits of the Heating Pads on its packaging. Kaz fails to alert consumers at the point of purchase that the Heating Pads MUST be used in a manner that allows one side of the pad to be exposed to the air. In other words, Kaz never communicates at or prior to the point of purchase, as an example, that the Heating Pads cannot be used for back pain underneath someone sitting on a chair, sofa, in bed or on a pillow – all foreseeable uses of the Heating Pads for people seeking pain relief. This is material information, based on Kaz's opinions that the Heating Pads should not be placed between users and beds, couches, or chairs and which limit the Heating Pads' uses and benefits. Thus Kaz has misrepresented, by omission, the uses, benefits, characteristics and qualities of the Heating Pad.

Kaz misrepresents, at and prior to the time of purchase, the benefits, uses, characteristics, and quality of the SoftHeat models and falsely advertises them by using the term "SoftHeat" on the box in which the product is packaged and in advertisements on the Kaz website, which include photographic images of the "SoftHeat" box. Use of the term "SoftHeat" is misleading and deceptive because the Heating Pads do not deliver soft, gentle, soothing, or safe heat to users' bodies as the term implies; instead, the Heating Pads burn, or create a high risk and probability of burning their users, thus delivering excessive, harsh, painful, surging, and/or unexpected amounts heat.

76973

Kaz USA, Inc.
July 30, 2010
Page 3

Kaz misrepresents and falsely advertises the Heating Pads as providing "soothing therapy for pain relief" on the boxes in which the Heating Pads are packaged and observed prior to and at the time of purchase. This phrase is misleading and deceptive because the Heating Pads do not deliver soothing therapy and are not therapeutic, because they cause burns and/or create a high risk and probability of burning people that use them. Therefore, instead of providing a helpful therapy, they cause their users injury that requires medical attention, care, and treatment.

Kaz also misrepresents the uses, benefits, characteristics, and qualities of the Heating Pads and falsely advertises them through misleading and deceptive images on the SoftHeat Standard model's packaging at the time of purchase. On the front of the packaging is a picture of a woman dressed in sleep attire, laying in a sleeping position, with the Heating Pad spread across the top of her back. Kaz expressly warns, only post-sale in the Operating Instructions, not to use the Heating Pad while sleeping, and to check skin under the Heating Pad "frequently" for burns. Thus, according to Kaz's own instructions and warnings, the picture on the packaging depicts an improper use of the Heating Pad, since the woman is in a sleeping position, and it is almost impossible, and indeed unreasonable, for a consumer to "frequently" check the skin on her back (and under her sleep attire) when the skin is out of her line of sight and while she is in the process of trying to relax and relieve pain, and falling asleep or completely asleep.

Consumers have used heating pads for decades. They are used when people do not feel well, and/or are sick, chilled, or achy. In almost all cases, they are used when people are in a compromised state. Customarily and foreseeably, consumers put heating pads between themselves and a bed, sofa, couch, or chair. With this as a known factual background, Kaz markets the Heating Pads to consumers as safe when used in a customary and forseeable manner. However, Kaz knows that its Heating Pads are not safe when used in the customary and foreseeable manner. The lists of warnings concealed inside the boxes in which the products are sold contradict the representations on the outside of the boxes. The concealment of the information stated in the warnings proves that Kaz knows that consumers customarily and foreseeably put the Heating Pads between themselves and their beds, couches, sofas or chairs, and that when used in this manner are unsafe and highly likely to cause personal injury and property damage. The concealment of this information, at the point of purchase, is a material misrepresentation by omission by Kaz. These misrepresentations of the true nature of the Heating Pads violate the CLRA by advertising the Heating Pads with the intent not to sell them as advertised and misrepresenting the uses, benefits, characteristics, and qualities of the Heating Pads.

## Demand for Corrective Action Pursuant to the CLRA

Demand is hereby made that Kaz agree, within 30 calendar days of receipt of this Notice, to do and complete the following on behalf of Ms. Beck-Ellman and the Class:

76973

Kaz USA, Inc.
July 30, 2010
Page 4

1. **Halt the sales of Heating Pads; and**

2. **Recall all of the Heating Pads sold in the United States; and**

3. **Repair the existing Heating Pads so that they eliminate the risk of burns when used in a manner Kaz warns against, OR replace the Kaz Products with redesigned Kaz Products that eliminate the risk of burns when used in a manner Kaz warns against[1].**

The recall would be subject to our review, as class counsel, of appropriate financial information detailing all sales made during the Class Period. We also demand that Kaz pay all costs, reasonable attorneys' fees and claims administration costs.

Please, within **30 calendar days** of your receipt of this letter, agree to the recall, and repair or replace as described above. I need not remind you that Max Katzman founded Kaz Inc. after witnessing a medical device explode while his son was using it, and desiring to manufacturer a safer device. In keeping with the commitment of your founder to safety, I urge you to now open a dialogue with us to affect a program that removes the safety risk Kaz Heating Pads present to all who own them. If Kaz does not contact me to address the foregoing matters, our client, and through her, those similarly situated, will sue Kaz for, for among other things, violations of the CLRA.

**<u>Preservation of Evidence</u>**

The last point of this letter is to demand that Kaz preserve and maintain all of the following "Writings[2]" pending its production to us in litigation or the resolution of this matter:

a) Writings that are advertisements, brochures, pamphlets, sales and marketing material disseminated in the United States and that are regarding the Heating Pads;

b) Writings regarding testing of the Heating Pads returned to Kaz from purchasers;

c) Writings regarding injury to Heating Pad users;

---

[1] Kaz Products can be made safer using existing technology with only slight cost increase. Protected by California Mediation Privilege, Evid. Code § 1119; we are willing to share our ideas that have been developed by an independent engineering consulting firm.

[2] The term or terms "WRITING" and "WRITINGS" as used herein means writings as defined in California Evidence Code § 250, and includes the original or a copy of handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them. "WRITINGS" also includes all electronic or magnetic files, or mediums that store information, including but not limited to electronic or computer stored files, email, CAD files, spreadsheets, databases, data used in a database, PowerPoint presentations, or other form of computer based visual presentations. "WRITINGS" that exist in electronic, magnetic or computer based formats include as part of those "WRITINGS" any associated metadata, including date and time stamps. Do not remove metadata from the "WRITINGS".

76973

Kaz USA, Inc.
July 30, 2010
Page 5

---

d) Writings regarding property damage caused by Heating Pads;

e) Writings regarding the return of Heating Pads from consumers, retailers, or wholesalers;

f) Writings regarding communications to wholesalers or retailers in the chain or distribution of Heating Pads;

g) Writings that Kaz intended be disseminated to Heating Pad purchasers and that are regarding the Heating Pads;

h) Writings that are complaints or are regarding complaints communicated from any source regarding Heating Pads;

i) Writings that communicate all or some of the following: the names, addresses, and phone numbers of Heating Pad owners;

j) Writings that communicate complaints regarding the performance of Heating Pads;

k) Writings from absent class members regarding breaches of Kaz's express warranty that applied to the Heating Pads;

l) Writings regarding how many Heating Pads Kaz manufactured and sold in the United States in the last ten years;

m) Writings that identify the name, addresses and phone numbers of Kaz-authorized wholesalers and retailers of the Heating Pads;

n) Writings regarding communications between Kaz and the Consumer Product Safety Commission and the Federal Food and Drug Administration.

Yours truly,

EPPSTEINER & FIORICA ATTORNEYS, LLP

Stuart M. Eppsteiner, Esq.

SME/AJK/lsh

76973

UNITED STATES POSTAL SERVICE

‖‖‖‖‖

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Eppsteiner & Fiorica Attorneys, LLP
12555 High Bluff Drive
Suite 155
San Diego, CA 92130

Kaz - 7/30/10 lmr

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

---

UNITED STATES POSTAL SERVICE NY 122

03 AUG 2010 PM 1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Eppsteiner & Fiorica Attorneys, LLP
12555 High Bluff Drive
Suite 155
San Diego, CA 92130

Kaz - 7/30/10 lmr

36

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kaz USA, Inc.
c/o CT Corporation System
155 Federal St., Suite 700
Boston, MA 02110

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X MICHAEL CLOHERTY
☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?     ☐ Yes
If YES, enter delivery address below:     ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered     ☑ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7010 0780 0000 5042 4844

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kaz Incorporated
One Vapor Trail
Hudson, NY 12534

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

AUG 03 2010

D. Is delivery address different from item 1?     ☐ Yes
If YES, enter delivery address below:     ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered     ☑ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7010 0780 0000 5042 4806

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

EXHIBIT 4

1  Stuart M. Eppsteiner, Esq. SBN 098973
   sme@eppsteiner.com
2  Andrew J. Kubik, Esq. SBN 246902
   ajk@eppsteiner.com
3  **EPPSTEINER & FIORICA ATTORNEYS, LLP**
   12555 High Bluff Dr., Suite 155
4  San Diego, CA 92130
   T: 858-350-1500
5  F: 858-350-1501

6

7  Counsel for Plaintiffs and the Class

8

9              **IN THE UNITED STATES DISTRICT COURT**

10              **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  BEVERLY BECK-ELLMAN, JOHN AND              CASE NO.:
    DENISE BIELIS, and JOHN AND SANDY
13  MAHOY, individually and on behalf of all   **CONSUMER LEGAL REMEDIES ACT**
    others similarly situated,                 **VENUE DECLARATION FOR**
                                               **PLAINTIFF BEVERLY BECK-ELLMAN**
14              PLAINTIFFS,
                                               [Demand For Jury Trial]
15      vs.

16  KAZ USA INCORPORATED, and KAZ
    INCORPORATED,
17
                DEFENDANTS.
18

19

20  I, Beverly Beck-Ellman, declare as follows:

21      1.  I am a named plaintiff in this litigation.

22      2.  I have personal knowledge of the matters set forth below except to those matters stated

23  herein which are based on information and belief, which matters I believe to be true.

24      3.  If called as a witness I could and would competently testify to the matters included herein.

25      4.  I am informed and believe that venue is proper in this Court under Civil Code § 1780(d)

26  based on the fact that the transaction, my purchase of the Kaz Heating Pad that is the subject of this

27  litigation, occurred in this county.

28

                                    1
                        **CLRA Venue Declaration**
    132418

1        I declare under penalty of perjury under the laws of the state of California that the

2    foregoing is true and correct and that this declaration was executed on September 16, 2010 in

3    San Diego, California.

4

5                               By:

6                                  Beverly Beck-Ellman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLRA Venue Declaration
2

# CIVIL COVER SHEET

%JS 44 (Rev. 12/07)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BEVERLY BECK-ELLMAN, JOHN AND DENISE BIELIS, and JOHN MAHOY AND SANDY MAHOY, et al.

**DEFENDANTS**

KAZ USA INCORPORATED, and KAZ INCORPORATED,

**(b)** County of Residence of First Listed Plaintiff  San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Southborough, MA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Eppsteiner & Fiorica Attorneys, LLP - (858) 350-1500
12555 High Bluff Dr., Ste 155, San Diego, CA 92130

Attorneys (If Known)

'10CV2134 H    POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❏ 1 U.S. Government Plaintiff
- ❏ 3 Federal Question (U.S. Government Not a Party)
- ❏ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Med. Malpractice | ❏ 625 Drug Related Seizure | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | Liability | ❏ 365 Personal Injury - | of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| & Enforcement of Judgment | Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent | Corrupt Organizations |
| ❏ 152 Recovery of Defaulted | Liability | Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❏ 490 Cable/Sat TV |
| (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment | Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | Property Damage | Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract | Product Liability | ☒ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | | & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment | Sentence | ❏ 791 Empl. Ret. Inc. | or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** | Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land | Accommodations | ❏ 530 General | | 26 USC 7609 | Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 900Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - | | to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | Alien Detainee | | ❏ 950 Constitutionality of |
| | Other | | ❏ 465 Other Immigration | | State Statutes |
| | ❏ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from another district (specify)
- ❏ 6 Multidistrict Litigation
- ❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332(d)(2)

Brief description of cause:
Unfair business practices, false advertising, and beach of warranties related to heating pads.

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  TBD by Jury

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
10/12/2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Stuart M. Eppsteiner

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE