1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   BEVERLY BECK-ELLMAN, JOHN           CASE NO. 3:10-CV-02134-H
     AND DENISE BIELIS, and JOHN AND     (DHB)
12   SANDY MAHOY, individually and on
     behalf of all others similarly situated,   **ORDER GRANTING IN PART**
13                                        **AND DENYING IN PART**
                              Plaintiffs,  **PLAINTIFFS' MOTION FOR**
14        vs.                             **CLASS CERTIFICATION**
15   KAZ USA, Inc., and KAZ, Inc.
16                            Defendants.
17
18        On July 20, 2012, Plaintiffs Beverly Beck-Ellman and Sandy Mahoy ("Plaintiffs") filed

19   a motion for class certification.  (Doc. Nos. 42, 43.)  On August 21, 2012, Defendants Kaz

20   USA, Inc. and Kaz, Inc. (collectively "Kaz" or "Defendants") filed an opposition to Plaintiffs'

21   motion for class certification.  (Doc. No. 56.)  On September 14, 2012, Plaintiffs filed a reply.

22   (Doc. Nos. 63, 64.)  The Court held a hearing on the motion on October 4, 2012.  Stuart

23   Eppsteiner and Andrew Kubik appeared on behalf of Plaintiffs.  Paul Wayne and Soojin Kang

24   appeared on behalf of Defendants.  For the following reasons, the Court grants in part and

25   denies in part Plaintiffs' motion for class certification.

26   ///

27   ///

28

1

**Background**

2     This is a consumer class action lawsuit brought on behalf of people who have purchased

3 Kaz heating pads after relying on allegedly deceptive and misleading labeling and

4 advertisements.  (Doc. No. 1 ("Compl.") at ¶¶ 1-16; Doc. No. 42 ("Pls.' Br.") at 1, 2.)[1]

5 Specifically, Plaintiffs allege that the heating pads contain several defects known to

6 Defendants which both limit their utility and create physical danger for consumers, and that

7 the heating pads are "packaged, displayed, marketed and sold" in boxes omitting information

8 concerning those defects.  (Compl. at ¶¶ 7-15; Pls.' Br. at 2.)  The parties estimate that

9 Defendants sold approximately five million heating pads in the United States from 2002-2010,

10 including over two-and-a-half million units in Pennsylvania and California.  (Pls.' Br. at 2.)

11 California Plaintiff Beverly Beck-Ellman alleges that she purchased a Kaz Softheat HP215

12 heating pad in late 2007, which caused Ms. Beck-Ellman injury on or about January 25, 2008.

13 (Compl. at ¶ 17; Pls.' Br. at 5.)  Pennsylvania Plaintiffs John Mahoy and Sandy Mahoy allege

14 that they purchased a Kaz SoftHeat HP215 heating pad on or about January 30, 2010, which

15 injured Mr. Mahoy and broke itself in the process.  (Compl. at ¶ 19.)[2]

16     Based on the alleged misrepresentations, Plaintiff Beck-Ellman alleges seven causes

17 of action for herself and on behalf of the California class:  Violation of California's Unfair

18 Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; violation of California's

19 False Advertising Law, ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; violation of

20 California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770 et seq.; breach

21 of implied warranty under the California Song-Beverly Act; unlawful limitation and breach

22 of warranty under the Federal Magnuson-Moss Warranty Act; and unjust enrichment. (Compl.

23

---

24     [1] The Complaint defines "heating pad" for the purposes of this litigation as including
all of "Kaz electric heating pads" marketed under the brand names SmartHeat, SoftHeat, Kaz,
25 and Dunlap, as well as "the equivalent heating pads that Kaz identified by different brands,
models, and model numbers."  (Compl. ¶¶ 2, 25.)  The Court will refer to these products
26 collectively as "heating pads" or "Kaz heating pads."

27     [2] Plaintiff John Mahoy died on November 23, 2011. (Pls.' Br. at 1 n. 1.)  Plaintiff
Sandy Mahoy will represent the interests of herself and John Mahoy in this matter. (Mahoy
28 Decl. ¶¶ 3-4, 16-17; Pls.' Br. at 1 n. 1.)

1  ¶¶ 63-187.)

2      Plaintiff Sandy Mahoy alleges five causes of action for herself and the Pennsylvania

3  Class:  Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

4  ("UTPCPL"), Pa. Const. St. §§ 201-1 et seq.; breach of implied warranty under Pennsylvania

5  law, 13 Pa. Cons. Stat. §§ 2313-2314; unlawful limitation and breach of warranty under the

6  Federal Magnuson-Moss Warranty Act; and unjust enrichment.  (Compl. ¶¶ 63-187.)

7      Plaintiffs seek to certify two separate classes based on the consumer protection, implied

8  warranty, and unjust enrichment causes of action under California, Pennsylvania, and federal

9  law.  The proposed classes consist of the following:

10      [1] California Class: All residents of California who purchased heating pads in
        Calfornia for primarily personal, family, or household purposes from October 13, 2006,
11      through the date of class notice[; and]

12      [2] Pennsylvania Class: All residents of Pennsylvania who purchased heating pads in
        Pennsylvania for primarily personal, family, or household purposes from October 13,
13      2004, through the date of class notice.

14  (Pls.' Br. at 11.)[34]

15                          **Discussion**

16  **I.      Class Certification Standards**

17      "The class action is 'an exception to the usual rule that litigation is conducted by and

18  on behalf of the individual named parties only.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.

19  2541, 2550 (2011) (citing Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)).  To qualify for

20  the exception to individual litigation, the party seeking class certification must provide facts

21  sufficient to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and (b).  Zinser

22  v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001); Doninger v. Pac. Nw.

23  Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977).   Rule 23(a) requires Plaintiffs to

24

25      [3] The parties jointly requested the dismissal of Michigan Plaintiffs John and Denise
        Bielis.  (Doc. No. 26.)  On September 9, 2011, the Court dismissed those plaintiffs without
26      prejudice.  (Doc. No. 27.)  As a result, Plaintiffs are not currently seeking certification of a
        Michigan class or for the causes of action arising under Michigan law.
27
        [4]The proposed classes exclude anyone seeking damages for personal injury or property
28      damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter.

10cv2134

1  demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2)

2  there are questions of law or fact common to the class; (3) the claims or defenses of the

3  representative parties are typical of the claims or defenses of the class; and (4) the

4  representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ.

5  P. 23(a).  Rule 23(b)(3) requires the court to find that the questions of law or fact common to

6  class members predominate over any questions affecting only individual members, and that a

7  class action is superior to other available methods for fairly and efficiently adjudicating the

8  controversy.  Fed. R. Civ. P. 23(b)(3).

9          The Court considers "the capacity of a classwide proceeding to generate common

10  answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class

11  are what have the potential to impede the generation of common answers."  Wal-Mart Stores,

12  Inc., 131 S. Ct. at 2551.  The district court must conduct a rigorous analysis to determine

13  whether the prerequisites of Rule 23 have been met.  Gen. Tel. Co. v. Falcon, 457 U.S. 147,

14  161 (1982).  It is a well-recognized precept that "the class determination generally involves

15  considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause

16  of action."  Wal-Mart Stores, Inc., 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160).  "The

17  district court is required to examine the merits of the underlying claim in this context [class

18  certification], only inasmuch as it must determine whether common questions exist; not to

19  determine whether class members could actually prevail on the merits of their claims."  Ellis

20  v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted).  Rather, the

21  Court's review of the merits should be limited to those aspects relevant to making the

22  certification decision on an informed basis.  See Fed. R. Civ. P. 23 advisory committee notes.

23  The Court must consider the merits if they overlap with the Rule 23 requirements.  Ellis, 657

24  F.3d at 981 (citing Wal-Mart Stores, Inc., 131 S. Ct. at 2551-52; Hanon v. Dataproducts Corp.,

25  976 F.2d 497, 509 (9th Cir. 1992)).  If a court is not fully satisfied that the requirements of

26  Rules 23(a) and (b) have been met, certification should be refused.  Falcon, 457 U.S. at 161.

27  ///

28  ///

1  **II. California Class**

2      **A. Requirements of Rule 23(a)**

3          **i. Numerosity**

4         Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all

5  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean

6  impossibility," rather the inquiry focuses on the difficulty or inconvenience of joining all

7  members of class.  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-914 (9th Cir.

8  1964).  In determining whether numerosity is satisfied, the Court may consider reasonable

9  inferences drawn from the facts before it.  Gay v. Waiters' & Dairy Lunchmen's Union, 549

10  F.2d 1330, 1332 n.5 (9th Cir. 1977).

11         Here, the parties estimate that Defendants sold approximately five million heating pads

12  in the United States from 2002-2010, including over two-and-a-half million units in California

13  and Pennsylvania.  (Doc. No. 43-4 at 44-47, Monroe Dep. Vol. II at 25:7-27:19; Doc. No.

14  42-1, Kubik Decl. Ex. 4 at 33-44; Pls.' Br. at 12.)  Defendants do not dispute the numerosity

15  of the proposed class.  Accordingly, the Court concludes that Plaintiff Beck-Ellman has

16  satisfied this requirement.

17          **ii. Commonality**

18         "Commonality requires the plaintiff to demonstrate that the class members 'have

19  suffered the same injury,'" which "does not mean merely that they have all suffered a violation

20  of the same provision of law."  Wal–Mart Stores, Inc., 131 S. Ct. at 2551.  The "claims must

21  depend on a common contention" and "[t]hat common contention ... must be of such a nature

22  that it is capable of classwide resolution—which means that determination of its truth or falsity

23  will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.

24  "Commonality is satisfied by "the existence of shared legal issues with divergent factual

25  predicates" or a "common core of salient facts coupled with disparate legal remedies within

26  the class."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998).  All questions

27  of fact and law need not be common to satisfy the rule.  Id.  Rather, in deciding whether

28  plaintiffs share a common question with the prospective class, the named Plaintiff must share

at least one question of fact or law with the prospective class.  Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (citing Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).

Defendants contend that the differences in heating pads prevent the bulk of issues from being common.  Defendants assert that Plaintiff Beck-Ellman's claims would only be common to others who purchased the same heating pads.  However, commonality under Rule 23(a)(2) only requires there be some common issues of fact and law.  Keilholtz v. Lennox, 268 F.R.D. 330, 337 (N.D. Cal. 2010).  Plaintiff Beck-Ellman need only show that the claims of the class "depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc., 131 S.Ct. at 2551.

Plaintiff Beck-Ellman's claims arise from a common contention regarding Defendants' allegedly deceptive advertisements for substantially uniform products.  Plaintiff Beck-Ellman points out that the heating pads are functionally very similar, with the primary differences being their size, shape, number of heat settings, and whether they are washable.  (McDuffie Dep. at 21:18-23; Brayton Dep. at 101:14-102:7.)  Plaintiff Beck-Ellman also shows that all models of heating pads contain the same material omissions.  (See McDuffie Dep. at 56:14-57:22; 63:18-64:6; 152:6-155:10.) The similarities in packaging and marketing are sufficient to create common issues among the class.  An omission common to all Kaz heating pads is likewise common to the claims of the potential class members.

Moreover, "should it develop that class members were provided such a variety of information that a single determination as to materiality is not possible, the trial court has the flexibility to order creation of subclasses or to decertify the class altogether. At this point, however," the omissions on Kaz heating pads packages is an issue common to the class members.  Massachusetts Mutual Life Ins. Co. v. Superior Court, 119 Cal. Rptr. 2d 190, 198 & n.5 (Cal. Ct. App. 2002); accord Krueger v. Wyleth, Inc., No. 03-2496, 2011 WL 8971449, at *6-7 (S.D. Cal. March 30, 2011).  Plaintiff Beck-Ellman has therefore satisfied Rule

23(a)(2)'s commonality requirement with regards to the California class.  See Hanlon, 150 F.3d at 1019-22; In re Ferrero Litigation, 278 F.R.D. 552, 558 (S.D. Cal. 2011) (finding commonality where claims were based on "common advertising campaign").

Defendants further argue that commonality, as well as typicality, superiority, predominance, and adequacy are defeated by the existence of property damage and personal injury claims.  However, Plaintiff Beck-Ellman does not seek class certification for nor does she allege causes of action for property damage and personal injury.  (Compl. at ¶¶ 63-187; Doc. No. 63 ("Pls.' Reply") at 1-2.)  "The Ninth Circuit disfavors this type of mingling of issues, and requires that courts accept plaintiffs' theory of relief as it is stated."  Keegan v. American Honda Motor Co., Inc., No. 10–09508, 2012 WL 2250040, at *19 (C.D. Cal. June 12, 2012)  (citing United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL–CIO v. ConocoPhillips Co., 593 F.3d 802, 808 (9th Cir. 2010)).  As a result, the Court dismisses Defendants' arguments concerning property damage and personal injury for the purposes of commonality, typicality, and predominance.

### iii. Typicality

Rule 23(a)(3) requires the representative party to have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." Rodriguez, 591 F.3d at 1124 (citations omitted).  The typicality requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.  "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).

In this case, Plaintiff Beck-Ellman alleges marketing problems including point-of-purchase loss. (Compl. ¶¶ 34-44.)  Significantly, the proposed class does not include claims for personal injury. "Plaintiff[] and class members [] were all exposed to the same alleged

1    misrepresentations [and omissions] on the packages...." Johns v. Bayer Corp., 280 F.R.D. 551,

2    557 (S.D. Cal. 2012).  Plaintiff Beck-Ellman and class members share the same interests in

3    determining whether Kaz heating pads were deceptively advertised.  Plaintiff Beck-Ellman is

4    therefore typical of the class.  See Id.

5         Defendants argue that typicality is defeated because the class includes claims on

6    multiple different heating pads purchased in different venues.  Defendants assert that Plaintiff

7    Beck-Ellman's claims are only typical of class members who purchased the same model

8    heating pads in the same fashion, namely at a brick-and-mortar store rather than online or in

9    response to a television advertisement.  (Doc. No. 56 ("Defs.' Opp.") at 22-23.)  The Court

10   disagrees.  Plaintiff Beck-Ellman establishes that the heating pads contain similar omissions.

11   Plaintiff Beck-Ellman demonstrates that the heating pads subject to this litigation are

12   sufficiently similar for the purposes of this litigation, specifically with regards to their

13   functionality, packaging, and advertisement. (See McDuffie Dep. at 56:14-57:22; 63:18-64:6;

14   152:6-155:10.)  Plaintiff Beck-Ellman seeks to show defects and omissions common to Kaz

15   heating pads and thus common to members of the putative class.  Regardless of whether they

16   are "substantially identical," the named plaintiff's "claims are reasonably co-extensive with

17   those of the absent class members."  Hanlon, 150 F.3d at 1020.

18        Defendants further argue that Plaintiff Beck-Ellman's claim is atypical because her

19   claims are subject to unique defenses.  Namely, Defendants argue that her CLRA, unjust

20   enrichment, and implied warranty claims are time-barred.  (Defs.' Opp. at 22.)  However,

21   "[g]iven a sufficient nucleus of common questions, the presence of the individual issue of

22   compliance with the statute of limitations" need not bar class certification.  Williams v.

23   Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975). The statute of limitations is a merits

24   determination often not suitable for resolution at the class certification stage.  See Johns, 280

25   F.R.D. at 580 (citing Massachusetts Mutual Life Ins. Co., 119 Cal. Rptr. at 199.)  The Court

26   therefore concludes that Plaintiff Beck-Ellman's claims satisfy the typicality requirement under

27   Rule 23(a) with regards to the California class.

28   ///

#### iv. Adequacy of Representation

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (citing Hanlon, 150 F.3d at 1020).

Plaintiff Beck-Ellman meets the two-prong test in Staton. Id. Plaintiff Beck-Ellman and the proposed class share the same claims and interest in obtaining relief, and she is vigorously pursing relief on behalf of the proposed class.

Defendants argue that Plaintiff Beck-Ellman is an inadequate class representative because she is not bringing claims for personal injury or property damage. Defendants' argument is unavailing. "Defendant[s] cannot claim that Plaintiff is inadequate because [she] declines to assert a theory that could unravel the putative class." Kennedy v. Jackson Nat. Life Ins. Co., No. 07-0371, 2010 WL 2524360, at *5 (N.D. Cal. June 23, 2010).

Moreover, any qualifying class member seeking recovery for personal injury or property damage caused by Kaz heating pads need only opt out of the putative class and bring a separate action. Compare Krueger v. Wyeth, Inc., No. 03-CV-2496, 2008 WL 481956, at *2-3 (S.D. Cal. Feb. 19, 2008) (denying class certification without prejudice due to class members' potential personal injury claims) with Kreuger v. Wyeth, Inc., 03-CV-2496, 2011 WL 8971449, at *1 (S.D. Cal. Mar. 30, 2011) (granting class certification by excluding those who "seek personal injury damages resulting" from the subject matter of the litigation). Courts routinely certify diminished value/overpayment claims under the same causes of action advanced by Plaintiff Beck-Ellman where the underlying product also causes injury or property damage. See, e.g., Keegan, 2012 WL 2250040 at *1 (certifying diminished value theories where non-disclosure of alleged defect could "lead to car accidents, personal injury, or death"); Montanez v. Gerber Childrenswear, LLC, No. CV-09-7420, 2011 WL 6757875 (C.D. Cal. Dec 15, 2011) (some class members suffered skin irritation and likely medical expenses); Keilholtz

v. Lennox Hearth Products, Inc., 268 F.R.D 330, 343 (N.D. Cal. 2010); Aspinall v. Phillip Morris Companies, Inc., 442 Mass. 381, 393 (2004) (upholding commonality of economic claims where false advertising class included smokers with personal injuries). The named Plaintiff Beck-Ellman is therefore not an inadequate representative merely because potential class members might also have individual causes of action for personal injury or property damage.

Defendants further argue that Plaintiff Beck-Ellman is inadequate as class representative because her CLRA, unjust enrichment, and implied warranty claims are time-barred. However, "[g]iven a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations" need not bar class certification. Williams, 529 F.2d at 1388. The statute of limitations is a merits determination often not suitable for resolution at the class certification stage, and Defendants are free to submit motions for summary judgment. See Johns, 280 F.R.D. at 580 (citing Massachusetts Mutual Life Ins. Co., 119 Cal. Rptr. at 199).

In sum, Plaintiff Beck-Ellman would adequately represent the putative class. Plaintiff Beck-Ellman's retained counsel has significant experience in prosecuting consumer fraud and warranty class actions. (Doc. No. 43-3, Eppsteiner Decl. at ¶¶ 2-33.) Accordingly, the Court appoints Beverly Beck-Ellman as class representative of the California Class, and appoints Eppsteiner & Fiorica Attorneys, LLP, as counsel for the California class.

## B.   Requirements of Rule 23(b)(3)

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2) or (3). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotations omitted). Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); Hanlon,

150 F.3d at 1022.  In evaluating predominance and superiority, the Court must consider: (1) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (2) the interest of individuals within the class in controlling their own litigation; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D); Amchem, 521 U.S. at 615-16.

### i. Predominance

The predominance analysis under Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2).  The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  Hanlon, 150 F.3d at 1022.  In contrast to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  Id.  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication.  Id.  To satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement. The predominance inquiry under Rule 23(b) is more rigorous, Amchem, 521 U.S. at 624, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Id. at 623.

### a. Consumer Protection

Plaintiff Beck-Ellman's consumer protection claims satisfy the predominance requirement of Rule 23(b)(3). The core of Plaintiff Beck-Ellman's claims rests on Defendants' alleged deceptive conduct in marketing the heating pads.  (Pls.' Br. 13-14.)  None of the heating pads' packaging contains the warnings regarding risk of injury or use limitations that Plaintiff Beck-Ellman claims render the products unsuitable for their designated purpose, despite any variations in the packaging of the heating pads.  (See McDuffie Dep. at 56:14-57:22; 63:18-64:6; 152:6-155:10.)

Defendants argue that Plaintiff Beck-Ellman's claims are not suitable for class treatment because the issue of the individual reliance of each class member will predominate.

1   Defendants' argument fails under California law.  California consumer protection laws take

2   an objective approach to the reasonable consumer, not the particular consumer.  Williams v.

3   Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008)  The Ninth Circuit recently affirmed

4   the general California rule "'that relief under the UCL is available without individualized proof

5   of deception, reliance and injury.'"  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th

6   Cir. 2011) (quoting In re Tobacco II, 207 P.3d 20, 35 (Cal. 2009)); accord Keegan, 2012 WL

7   2250040, at *21.  Similarly, "because Plaintiff's other claims under the FAL and CLRA rely

8   on the same objective test, that is, whether 'members of the public are likely to be deceived,'

9   these other claims also do not require individual analysis of class members' injury." Bruno v.

10  Quten Research Inst., LLC, 280 F.R.D. 524, 532 (C.D. Cal. 2011), reconsideration denied, 280

11  F.R.D. 540 (C.D. Cal. 2012); see also Stearns, 655 at 1022 ("If the trial court finds that

12  material misrepresentations have been made to the entire class, an inference of reliance [under

13  the CLRA] arises as to the class."); Johns, 280 F.R.D. at 557-58 & n. 4.  Plaintiff Beck-Ellman

14  may therefore "prove with generalized evidence that Defendants' conduct was 'likely to

15  deceive' purchasers," rather than proving the reliance of each class member individually.

16  Keilholtz, 268 F.R.D. at 342-43.  The issue of individualized reliance therefore is no

17  impediment to finding predominance for the California claims.  Further, Defendants are free

18  to submit a motion for summary judgment on many of the issues in the case.

19       Plaintiff Beck-Ellman has made a showing of materiality for the purposes of class

20  certification.  The "ultimate question of whether the undisclosed information [is] material [is]

21  a common question of fact suitable for treatment in a class action."  Keilholtz, 268 F.R.D. at

22  343.  Though Defendants call into question Plaintiff Beck-Ellman's evidence tending to show

23  materiality, the ultimate determination is to be made by the trier of fact.  Stearns, 655 at 1022.

24  For the purposes of class certification, it is sufficient that the alleged material omission was

25  part of a common advertising scheme to which the entire class was exposed.  See Hanlon, 150

26  F.3d at 1019-22; In re Ferrero Litigation, 278 F.R.D. at 560; Johns, 280 F.R.D. at 557-58 &

27  n. 4; Holiday Universal, 249 F.R.D. at 193.  Therefore the Court finds that common issues

28  exist and predominate over individual issues in this matter, satisfying the predominance

1    requirement of Rule 23(b)(3) for the California Class.

2                    **b. Breach of Implied Warranty and Unjust Enrichment**

3        Common issues also exist and predominate on Plaintiff Beck-Ellman's claims for unjust

4    enrichment and breach of implied warranty of merchantability.  Plaintiff Beck-Ellman's claims

5    are based on common contentions of deceptive conduct by Defendants in marketing their

6    products.  Specifically, this case concerns whether Defendants' products were defective and,

7    if so, whether Defendants' failure to report such defects and/or limited usage on the products'

8    packaging constituted a material omission.  Determinations of whether such defects exist and,

9    as a result, whether warranties were breached, are common issues appropriate for class

10   treatment.  See Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1173-74

11   (9th Cir. 2010); see also, e.g.,  Keegan, 2012 WL 2250040 at *27-28 (certifying implied

12   warranty claims).

13       Likewise, unjust enrichment claims are appropriate for class certification as they require

14   common proof of the defendant's conduct and raise the same legal issues for all class

15   members.  See, e.g., Keilholtz, 2012 WL 668067, at *10, 12 (certifying class for unjust

16   enrichment claim);  Cartwright v. Viking Industries, Inc., No. 2:07-CV-02159, 2009 WL

17   2982887, at *12-13 (E.D. Cal. Sep. 14, 2009) (finding predominance of common issues

18   because "the crux of plaintiff's claims is that defendant unjustly retained the benefits of its sale

19   of window products to consumers after it failed to disclose material facts about the defective

20   nature of those products").

21       Moreover, Defendants' contention that the Song-Beverly Act requires consumers to

22   give notice to warrantors regarding a product defect prior to bringing suit is incorrect.  Mexia

23   v. Rinker Boat Co., Inc., 95 Cal. Rptr. 3d 285, 292-93 (Cal. Ct. App. 2009)  Such requirement

24   is therefore not a bar to this action.  The Court concludes that Plaintiff Beck-Ellman's unjust

25   enrichment and breach of implied warranty of merchantability claims raise common factual

26   and legal issues that predominate over individual issues and therefore satisfy Rule 23(b)(3) for

27   the California class.

28   ///

1

2

3

4

5

6

7

8

9

10

11

#### c. Damages

The individual nature of damages does not overcome the predominance of common issues regarding liability. "The amount of damages is invariably an individual question and does not defeat class action treatment." <u>Blackie v. Barrack</u>, 524 F.2d 891 (9th Cir. 1975); <u>accord</u> <u>Martinez v. Welk Group, Inc.</u>, No. 09-CV-2883, 2012 WL 2888536, at *2 (S.D. Cal. July 13, 2012); <u>Dilts v. Penske Logistics</u>, LLC, 267 F.R.D. 625, 639-40 (S.D. Cal. 2010). Defendants have sales data from which damages and/or restitution maybe determined. (<u>See</u> Kubik Decl. Ex. 4 at 33-34.) Moreover, Plaintiff Beck-Ellman seeks no remedy that would require an award of damages unique to any particular class member or subclass of class members. As a result, the Court determines that the potential recovery is no impediment to the requirements of commonality or predominance.

12

#### d. Statute of Limitations

13

14

15

16

17

18

19

20

21

22

Defendants further argue that the statute of limitations prevents a finding of commonality and predominance. Defendants contend that the CLRA, unjust enrichment, and implied warranty claims of some class members, such as Plaintiff Beck-Ellman, are time-barred. (Defs.' Opp. at 17-18.) But, "[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations" need not bar class certification. <u>Williams</u>, 529 F.2d at 1388. The statute of limitations is a merits determination often not suitable for resolution at the class certification stage, and Defendants are free to submit motions for summary judgment. <u>See</u> <u>Johns</u>, 280 F.R.D. at 580 (citing <u>Massachusetts Mutual Life Ins. Co.</u>, 119 Cal. Rptr. at 199).

23

24

25

26

Plaintiff Beck-Ellman sufficiently demonstrates that common questions present a significant portion of the case and can be resolved for all members of the California class in a single adjudication. <u>Hanlon</u>, 150 F.3d at 1019-22. Accordingly, Plaintiff Beck-Ellman satisfies the predominance requirement as to the proposed class.

27

///

28

///

1

**ii. Superiority**

2        Rule 23(b)(3) requires the Court to find "a class action is superior to other available

3   methods for fairly and efficiently adjudicating the controversy."  Considerations pertinent to

4   this finding include:

5        (A) the class members' interests in individually controlling the prosecution or defense
             of separate actions;
6        (B) the extent and nature of any litigation concerning the controversy already begun by
             or against class members;
7        (C) the desirability or undesirability of concentrating the litigation of the claims in the
             particular forum; and
8        (D) the likely difficulties in managing a class action.

9   Fed. R. Civ. P. 23(b)(3)(A)-(D).   The superiority requirement tests whether "classwide

10  litigation of common issues will reduce litigation costs and promote greater efficiency."

11  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  "If each class member

12  has to litigate numerous and substantial separate issues to establish his or her right to recover

13  individually a class action is not superior."  Zinser, 253 F.3d at 1192.

14       Plaintiff Beck-Ellman asserts she was misled by Defendant's common advertising

15  campaign of Kaz heating pads.  Where a case involves multiple claims for relatively small

16  individual sums, some plaintiffs may not be able to proceed as individuals because of the

17  disparity between their litigation costs and what they hope to recover.  Local Joint Exec. Bd.

18  of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1163 (9th Cir. 2001).

19  Here, it would not be economically feasible to obtain relief for each class member given the

20  small size of each class member's claim.  See Deposit. Guar. Nat'l Bank v. Roper, 445 U.S.

21  326, 339 (1980).

22       Moreover, Plaintiff Beck-Ellman does not seek class certification for causes of action

23  for personal injury or property damage resulting from the purchase and use of Kaz heating

24  pads. (Compl. at ¶¶ 63-187; Pls.' Reply at 1.)  Any qualifying class member seeking recovery

25  for personal injury or property damage caused by Kaz heating pads need only opt out of the

26  putative class and bring a separate action.  Compare Krueger, 2008 WL 481956, at *2-3

27  (denying class certification without prejudice due to class members' potential personal injury

28  claims) with Kreuger., 2011 WL 8971449, at *1 (granting class certification by excluding

1    those who "seek personal injury damages resulting" from the subject matter of the litigation).

2    Therefore the amount of each plaintiff's claim will be both small and common to the class.

3    Accordingly, the Court finds that class action is clearly superior to ensure a fair and efficient

4    adjudication of the present action.

5    **III. Pennsylvania Class**

6        Plaintiffs also seek to certify a class of Pennsylvania plaintiffs based on violations of

7    the UTPCPL, Pennsylvania's consumer protection statute, as well as claims for breach of

8    implied warranty and unjust enrichment.  Defendants oppose certification on the ground that

9    individual issues predominate on these claims.  Under Pennsylvania law, "a private plaintiff

10   pursuing a claim under [the Consumer Protection Law] must prove justifiable reliance."  Hunt

11   v. U.S. Tobacco Co., et. al., 538 F.3d 217, 221-22 (3d Cir. 2008); see also Schwartz v. Rockey,

12   932 A.2d 885, 897 n.16 (Pa. 2007) (stating that "the justifiable reliance criterion derives from

13   the causation requirement"); Toy v. Metro. Life Ins. Co., 928 A.2d 186, 202 (Pa. 2007) ("[A]

14   plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance.");

15   Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) ("To bring a private

16   cause of action under the [Consumer Protection Law], a plaintiff must show that he justifiably

17   relied on the defendant's wrongful conduct or representation and that he suffered harm as a

18   result of that reliance.").  Moreover, "[t]he Supreme Court of Pennsylvania has consistently

19   interpreted the Consumer Protection Law's private-plaintiff standing provision's causation

20   requirement to demand a showing of justifiable reliance, not simply a causal connection

21   between the misrepresentation and the harm.  Hunt, 538 F.3d at 222 (citing Weinberg v. Sun

22   Co., 777 A.2d 442, 445-46 (Pa. 2001)).  In the absence of a presumption of causation and

23   reliance, i.e. from a showing of materiality, each plaintiff would therefore have to prove

24   individual reliance.  See id. at 227 ("We reject Hunt's suggestion that he enjoys a presumption

25   of reliance, as this suggestion is inconsistent with Pennsylvania case law.")

26        Plaintiffs cite a few Pennsylvania trial court cases indicating a presumption of reliance

27   may sometimes be justified.  See, e.g., Solarz v. Daimlerchrysler Corp., 2003 WL 23190038

28   (Pa. Com. Pl. Oct. 30, 2003); Zwiercan v. Gen Motors Corp., 2003 WL 1848571 (Pa. Com.

Pl. Mar. 18, 2003).   However, like the Third Circuit in <u>Hunt</u>, this Court concludes that justifiable reliance requires individualized proof and is not subject to a presumption under Pennsylvania law.  <u>See</u> <u>Hunt</u>, 538 F.3d at 227.  The Pennsylvania causes of action thus do not involve a "common contention . . . of such a nature that it is capable of classwide resolution." <u>Wal–Mart Stores, Inc.</u>, 131 S. Ct. at 2551.

Plaintiffs therefore fail to satisfy the commonality and predominance requirements of Rules 23(a) and 23(b)(3) with regards to the Pennsylvania class.  Accordingly, the Court declines class certification for the Pennsylvania class.

**Conclusion**

For the reasons above, the Court grants in part and denies in part Plaintiffs' motion for class certification.  The Court grants Plaintiffs' motion for class certification as to the California class for the consumer protection, implied warranty, and unjust enrichment claims. The Court concludes that Plaintiff Beck-Ellman has met the burden of satisfying the requirements of Federal Rule of Civil Procedure 23, and certifies the following class:

California class: All residents of California who purchased Kaz-manufactured electric heating pads bearing the words "Kaz" and/or "SoftHeat" and/or "Smart/Heat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family, or household purposes from October 13, 2006, through the date of class notice.  The Court excludes from the class anyone seeking damages for personal injury or property damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter.

///
///
///
///
///
///
///

10cv2134

1    The Court appoints Plaintiff Beverly Beck-Ellman as class representative for the
2    California class.  The Court appoints Eppsteiner & Fiorica Attorneys, LLP, as counsel for the
3    California class.

4    The Court denies Plaintiffs' motion for class certification as it pertains to the proposed
5    Pennsylvania class.

6    **IT IS SO ORDERED.**

7    DATED: October 4, 2012

8

9    MARILYN L. HUFF, District Judge
     UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

10cv2134