STUART M. EPPSTEINER (SBN 098973)
sme@eppsteiner.com
ANDREW J. KUBIK (SBN 246902)
ajk@eppsteiner.com
ZELEKHA AMIRZADA (SBN 250419)
za@eppsteiner.com
**EPPSTEINER & FIORICA ATTORNEYS, LLP**
12555 High Bluff Dr., Ste. 155
San Diego, CA  92130
Tel. (858) 350-1500
Fax (858) 350-1501

PAUL V. WAYNE, ESQ (SBN 101482)
pwayne@tharpe-howell.com
SOOJIN KANG, ESQ (SBN 219738)
skang@tharpe-howell.com
**THARPE & HOWELL, LLP**
15250 Ventura Boulevard, Ninth Floor
Sherman Oaks, California 91403
Tel. (818) 205-9955
Fax (818) 205-9944

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY BECK-ELLMAN, JOHN AND DENISE BIELIS, and JOHN AND SANDY MAHOY, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>KAZ USA, INC, and KAZ, INC.,<br><br>DEFENDANTS. | CASE NO.:  10cv2134 H (DHB)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR AN ORDER:**<br>    **(1) GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT;**<br>    **(2) GRANTING PRELIMINARY APPROVAL OF CY PRES RECIPIENTS;**<br>    **(3) APPROVING CLASS NOTICE;**<br>    **(4) APPROVING CLASS NOTICE PLAN;**<br>    **(5) APPROVING THE CLAIM FORM;**<br>    **(6) APPOINTING  SETTLEMENT ADMINISTRATOR;**<br>    **(7) SETTING FINAL APPROVAL HEARING;**<br>    **(8) GRANTING JOINT REQUEST FOR MODIFICATION OF CERTIFIED CLASS DEFINITION; AND** |

1

**(9) DIRECTING DEFENDANTS TO
PRODUCE CERTAIN CUSTOMER
NAMES AND CONTACT
INFORMATION FOR PURPOSES
OF MAILED NOTICE TO CLASS
MEMBERS**

Date:  January 7, 2013
Time: 10:30 a.m.
Place: Courtroom 13

Judge: The Honorable Marilyn L. Huff
Action Filed: October 13, 2010

Plaintiff Beverly Beck-Ellman, on behalf of herself and the certified Class, jointly with Defendants Kaz USA, Inc. and Kaz, Inc. ("Defendant(s)") (collectively, the "Parties"), respectfully move this Court for an order (i) granting preliminary approval of the proposed class action Settlement Agreement dated December 21, 2012; (ii) granting preliminary approval of cy pres recipients; (iii) approving the Class Notice as to both form and manner; (iv) approving the Notice Plan; (v) approving the Claim Form; (vi) approving the interim appointment of the Settlement Administrator; and (vii) setting the date for a fairness hearing at which the Court will consider final approval of the settlement and requests for Class Counsel's fees, cost and expense reimbursement, and approval of the Class Representative's incentive award.   In addition, the Parties request that the Court issue an order (1) modifying the certified Class as set forth in Section IV and (2) directing Defendants to produce the identifying and contact information of certain of its Heating Pad customers to the Settlement Administrator (and only the names of such customers to Class Counsel in accordance with the Settlement Agreement) for purposes of direct mailed notice of this Settlement to such persons as set forth in Section VI.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On October 13, 2010, Plaintiffs Beverly Beck-Ellman, Sandy and John Mahoy, and John and Denise Bielis filed their Complaint for various claims on behalf of consumers of heating pads sold or distributed by Defendants. Dkt. No. 1.   Plaintiff Beck-Ellman, for herself and those similarly situated, brought claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law, ("FAL") *id.* §§ 17500, *et seq.*, and

2

Consumer Legal Remedies Act, ("CLRA") Cal. Civ. Code §§ 1750, *et seq.*, and asserted claims for breach of express and implied warranties. Dkt. No. 1. Plaintiffs John and Sandy Mahoy, for themselves and those similarly situated, brought claims for express and implied warranty pursuant to 13 Pa. Cons. Stat. §§ 2313 and 2314, respectively and for unfair, deceptive and unlawful trade practices under 73 Pa. Const. St. §201-1, *et. seq. Id.* Plaintiffs John and Denise Bielis, for themselves and those similarly situated, brought claims under the Michigan Consumer Protection Act, M.C.L.A. § 445.901 *et seq.* and for breach of express and implied warranty under M.C.L.A. §§ 440.2313 and 440.2314, respectively. All Plaintiffs brought claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq*, 15 U.S.C.A. 3201, *et. seq.*, and claims for unjust enrichment. *Id.* On September 9, 2011, Plaintiffs John and Denise Bielis' claims were voluntarily dismissed without prejudice. Dkt. No. 28.

This case was thoroughly litigated and hard-fought. Class Counsel conducted extensive discovery by serving six sets of Requests for Production of Documents, two sets of Interrogatories, fifteen subpoenas on third parties, and conducted twelve depositions. Class Counsel retained and paid for the work of qualified experts regarding heating pads, advertising, warnings, and damage/restitution. Class Counsel read and evaluated thousands of documents and a large volume of information.

Kaz served seven sets of interrogatories, seven sets of Requests for Production of Documents, and took Plaintiff Beck-Ellman's deposition and the deposition of Plaintiff's expert, Professor Ralph Barnett.

In conducting its rigorous discovery and investigative process, Class Counsel incurred more than $350,000 in expenses, costs and fees. Class Counsel has spent more than 3,440 hours over more than 2 years investigating and litigating this case.

On July 20, 2012, Plaintiffs moved for Class Certification (Dkt. Nos. 42, 43), which Kaz strongly opposed (Dkt. No. 56). Following oral argument on October 4, 2012, this Court denied certification of a Pennsylvania class but granted Plaintiff Beverly Beck-Ellman's motion for class certification of her FAL, CLRA, UCL, Song-Beverly Act, Magnuson-Moss Consumer Warranty

Act, and unjust enrichment claims, certifying a class of "[a]ll residents of California who purchased Kaz-manufactured electric heating pads bearing the words "Kaz" and/or "SoftHeat" and/or "SmartHeat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family or household purposes from October 13, 2006, through the date of class notice." Dkt. No. 70. "The Court exclude[d] from the class anyone seeking damages for personal injury or property damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter." *Id.* It is on behalf of this California Class that a settlement has been reached with regard to the heating pads manufactured and/or distributed by Kaz ("Heating Pads").[1]

The settlement that the Parties ask the Court to approve is the product of extensive negotiations that occurred with the assistance of Judge Leo Papas, (Ret.) and Magistrate Judge David H. Bartick. The Parties participated in three full-day mediation sessions with Judge Papas on June 27, 2012, August 16, 2012, and October 26, 2012. After these three all-day mediation sessions, the Parties had not reached a settlement but had moved closer on settlement terms and continued to negotiate through counsel. The Parties subsequently participated in two settlement conferences with Magistrate Judge Bartick on November 6 and 9, 2012. Dkt. Nos. 74-76. Finally, the Parties conducted a teleconference with Judge Bartick on November 16, 2012, during which they confirmed a settlement had been reached. Dkt. No. 78. On or about November 30, 2012, the Parties executed a Settlement Term Sheet. Since then, the Parties have fully documented the settlement in an executed Settlement Agreement. The settlement memorialized in the Parties' Settlement Agreement (hereinafter, referred to as the "Agreement" or the "Settlement"), provides significant injunctive and monetary benefits to the Class and is fair, reasonable, and in the best interests of the Class. (Settlement Agreement, Eppsteiner Decl. Exh. A.) Based thereon and as further explained below, the Parties move the Court for an order that preliminarily approves the Settlement.

---

[1] As discussed in more detail in Section IV below, the settlement is based on a class definition that includes heating pads distributed by Kaz. As such, the parties jointly request modification of the certified class definition to include heating pads that were not only manufactured by Kaz but those distributed by Kaz.

4

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## II.   SUMMARY OF SETTLEMENT

### a.  Monetary Relief

Under the terms of the Settlement, Defendants will pay a guaranteed minimum of $1,450,000 and a maximum of $2,700,000 to be distributed to Class members who submit valid and timely claims. *Id.* ¶ 8.3. If an insufficient number of valid and timely Class member claims are submitted and paid to exhaust the minimum amount of $1,450,000, then the remaining funds shall be, as explained below and subject to this Court's approval, distributed among four cy pres recipients: Consumers Union ("CU"), AARP Foundation ("AARP"), the Better Business Bureau Center ("BBB"), and the Consumer Federation of California ("CFC"). *Id.* ¶¶ 9.3,  9.6

Class members may each submit one claim. Each Class member who submits a timely and valid claim is expected to be paid between $10 and $20.  *Id.* ¶ 9.3..  If fewer than 145,000 timely and valid claims are received, then each Class member claimant shall be paid up to $20. *Id.* ¶ 9.3(i) .  If fewer than 72,500 timely and valid claims are received, then the difference between the total amount to be paid to Class member claimants and $1,450,000, shall be paid by Kaz to the approved cy pres recipient(s).  *Id.*   If between 145,000 to 270,000 timely and valid claims are received, then each claimant will receive $10. *Id.* ¶ 9.3(ii).  If more than 270,000 timely and valid claims are received, then each claimant's share of the Settlement payments will be decreased pro rata so that the total amount paid to claimants does not exceed $2,700,000. *Id.*

The costs of giving notice to Class members and to administer this Settlement shall be paid by Defendants and are in addition to the amounts designated to be paid to Class members; that is, the cost to give notice and administer the Settlement does not reduce the Class member benefits and payments described above.

The Parties propose that the cy pres recipients receive their distributions as follows: The Consumers Union, the Better Business Bureau and AARP Foundation will each receive 27% of the cy pres distribution.  The Consumer Federation of California will receive the other 19%. The maximum amount given to CFC will be $125,000.  If 19% is more than $125,000, the Consumers

1   Union, Better Business Bureau and AARP Foundation will receive the difference in equal

2   amounts.

3        "Appropriate cy pres recipients are … organizations dedicated to protecting consumers

4   from, or redressing injuries caused by, false advertising. *Dennis v. Kellogg Co.,* 11-55674, 2012

5   WL 3800230 (9th Cir. Sept. 4, 2012).  Each cy pres recipient has provided a declaration that

6   describes the organizations' work, which demonstrates its dedication to protecting consumers from

7   injuries caused by false advertising.  (See the Declarations of Richard Holober for CFC, Jo Ann

8   Jenkins for AARP Foundation, Susan P Kearney for BBB and Elisa Odabashian for CU In Support

9   of Motion for Preliminary Approval.)

10        From the information contained in the declarations from the cy pres recipients the Court

11   should comfortably find that each of the four cy pres recipients satisfies the *Dennis* standard, and

12   preliminarily approve them as contingent cy pres recipients in the instance that the minimum

13   settlement payment is not exhausted after paying all valid and timely Class member claims.

14        **b.  Injunctive Relief**

15        The gravamen of Plaintiffs' UCL, CLRA and FAL claims is that Kaz's Heating Pad

16   packaging was deceptive and misleading, by visual and written communications.  Therefore,

17   although there has been no finding and Kaz denies that its packaging was in anyway deceptive or

18   misleading, an important part of the proposed Settlement, from Plaintiffs' perspective, is the

19   mandatory injunction to which Kaz has agreed in order to resolve this matter through settlement.

20   Plaintiffs believe this mandatory injunction, a change in the visual and written communications on

21   Kaz Heating Pad packaging, will greatly increase the likelihood that future potential consumers of

22   Kaz Heating Pads will know, before they make their purchase, what Plaintiffs believe to be the risk

23   of injury, limitations of use and who can use the product; that an informed consumer is empowered

24   to make intelligent purchase decisions; and that the added disclosures provide great value to the

25   certified Class and to all California residents and buyers of Kaz Heating Pads nationwide.

26        First, Kaz packaging will not feature models whose eyes are closed and who are in a prone

27   or reclining position.  Plaintiffs contended the subject depiction could mislead consumers into

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

193040

thinking they could sleep while using a Heating Pad. The elimination of this depiction should assist in preventing what Plaintiffs believe to be consumers' mistaken understanding of ways they can safely use a Heating Pad.

Second, any packaging description of a Heating Pad with an automatic shut-off feature will be qualified by words that describe it as being time based, thereby eliminating any potential deception or misunderstanding that Kaz Heating Pads' automatic shut-off is heat or temperature based. Kaz Heating Pads with an automatic shut-off feature will be described as "60 minute auto-off" or its equivalent or if the time length is different or variable, the description will make equally clear that the "Auto shut off" feature of Kaz heating pads is a time, not temperature based function.

Third, Kaz will include the following warning on the side panel of the heating pad box:

> WARNING:  During use, do not sit on or against, or lie on, sleep with, fold or crush the pad.  Not for use with infants.  Do not use with ointments or salves.   Check skin frequently.    ADDITIONAL   IMPORTANT SAFETY WARNINGS INSIDE BOX.

Plaintiffs believe this newly added warning provides critically important information to purchasers before they purchase a Kaz Heating Pad; that in addition to the warnings and directions, this language informs purchasers there is additional important information inside the Heating Pad box and advises consumers to read those instructions.  This is so because Plaintiffs contend that most Heating Pad consumers, given the many decades consumers have been using heating pads, rarely read the detailed instructions and warnings found inside the Heating Pads' packaging and do not know the risk of injury from use or that there are use and user restrictions.

While Kaz denies all of Plaintiffs' allegations, including the allegation about the effectiveness of the instructions and warnings inside the packaging and on the Heating Pads themselves, Kaz has agreed to make the foregoing changes to its packaging as part of the resolution of this action.

    **c.**    **Costs Of Notice And Administration, Attorneys' Fees, And Incentive Award**

Defendants have also agreed to pay the costs of providing notice to the Class and administering the consideration and payment of claims. Kaz has agreed to pay up to $500,000 for the combination of these services. (Settlement Agreement ¶ 8.3.1.) Defendants will retain any residual amount if the cost of notice and administration is less than $500,000. *Id.*

Subject to approval by the Court, and separate and apart from the sums Kaz has agreed to pay to Class Members, and for giving notice to the Class Members and administration of the Settlement, Kaz also has agreed not to oppose or object to an incentive award of up to $20,000 for Plaintiff Beck-Ellman. *Id.* ¶ 8.5. Also subject to the Court's consideration and approval, Kaz has agreed to not oppose or object to an application to the Court by Class Counsel for an award of attorneys' fees of not more than $1,500,000 and for reimbursement of litigation costs and expenses of up to $350,000. *Id.* ¶ 8.4.

### d. Proposed Notice Plan

The Parties have developed a notice plan with the assistance of Kurtzman Carson Consultants, ("KCC") (the "Notice Plan"), a firm that specializes in developing class action notice plans.

<u>Publication Notice</u>. The Publication Notice is designed to provide potential Class members with information about the Settlement and their rights, in easy-to-comprehend language. (KCC Settlement Notice Plan, Exh. 1 to Declaration of Gina M. Intrepido-Bowden In Support of Motion for Preliminary Approval of Class Settlement.) The Publication Notice contains a general description of the lawsuit, the Settlement relief, how a Claim can be filed, general description of Class members' legal rights, the Class members' right to opt-out of the lawsuit and Settlement, their right to, if they do not opt-out, object to a term or condition of the Settlement, their right to retain their own counsel and their right to address the Court at the Final Fairness Hearing. (Settlement Agreement Exh. 2-b. The Publication Notice directs consumers to the Settlement Website, provides a toll-free number, information on how to obtain a Claim Form, and the Claim submission deadline. *Id.* The proposed Notice Plan has been specially developed to cause Class members to see the Publication Notice or see an advertisement that directs them to the Settlement

Website.  KCC identified that the Class members belong to a demographic group known as "Pain Relief Users."  The Heating Pads are considered a Pain Relief product.  The publications that KCC's Notice Plan proposes to use are publications and websites whose viewers and readers include a high percentage of Pain Relief product users. The Publication Notice will be published in the California editions of Better Homes & Gardens, Parade, People, Reader's Digest and USA Weekend; 16 Spanish language newspapers; and as an internet banner notice on the 24/7 Network, which allows access to over 4,000 premium websites, including MSNBC, Monster, Match.com and the Weather Channel.  (Intrepido-Bowden Decl. ¶¶25-30.)   As described in the KCC Notice Plan and Declaration of Gina Intrepido – Bowden, these publications were selected to increase the likelihood that the Publication Notice will be seen by Class members.  KCC's proposed Notice Plan will result in the Publication Notice being seen by at least 70% of the Class members. (Intrepido-Bowden Decl. ¶ 33.)

Mailed Notice.  If the Court so orders, pursuant to Section VI below, the Settlement Administrator will send by first class mail, postage pre-paid, a copy of the Class Notice and Claim Form approved by the Court to (i) each individual who purchased a Heating Pad through Kaz.com using a shipping address in California between October 13, 2006 and the date of entry of the Preliminary Approval Order and (ii) individuals who based on call center records (and MedWatch reports if disclosure is permitted by the FDA and applicable law) appear to have purchased a Heating Pad in California between October 13, 2006 and the date of entry of the Preliminary Approval Order.  (Settlement Agreement,  ¶ 6.1.

Website Notice. The Settlement Administrator will establish a Settlement Website for the purposes of disseminating the Class Notice, the Claim Form, allowing for electronic submission of Claim Forms, the Settlement Agreement, information relating to filing a Claim, opting out of the Settlement, objecting to the Settlement, deadlines relating to the Settlement, pleadings, and other information relevant to Class members. *Id.* ¶ 6.2.1. The Settlement Administrator will have the Settlement Website functioning and the internet advertising underway no later than the date on

1  which it mails notice to the known addresses of Class members. The Settlement Website will have

2  an electronic Claim Form, in Spanish and English, available for printing and mailed submission or

3  on-line submission. The Settlement Website will have Spanish iterations of its Homepage,

4  Important Dates & Deadlines page, and FAQ page; as well as a downloadable Spanish language

5  Settlement Notice. *Id.*.

6      <u>Content of Notices</u>. The Class Notices contain detailed information about the

7  lawsuit, the Settlement Agreement, the release of liability Class members will provide Kaz, and

8  how to opt-out, object and exercise other rights under the Settlement. The Class Notice directs

9  individuals to the Settlement Website for purposes of obtaining an electronic Claim Form, and

10  provides instructions for contacting Class Counsel and the Settlement Administrator in order to

11  communicate about the Settlement or obtain a paper Claim Form or the Class Notice in Spanish.

12  The Class Notice advises that objections to the Settlement shall only be considered at the Fairness

13  Hearing and provides the date and place of the Fairness Hearing.  (Settlement Agreement ¶ 6.3.)

14  The Settlement Administrator will cause the Class Notice, in the form approved by the Court, to be

15  published to Class members within 75 days of entry of the order preliminarily approving this

16  Settlement. *Id.* ¶ 6.2.

17  **III.    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY**

18  **APPROVAL**

19      **a.  Standards for Preliminary Approval**

20      The approval of a proposed class action settlement is a matter within the broad discretion

21  of the trial court. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).  In

22  making this determination, the Court should evaluate the fairness of the Settlement in its entirety.

23  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a

24  whole, rather than the individual component parts, that must be examined for overall fairness . . .

25  [t]he settlement must stand or fall in its entirety.").  Public policy "strong[ly] . . . favors

26  settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA*

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

193040

1  *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. GE*, 361 F.3d 566,

2  576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

3        Court approval of class settlements is "a two-step process—preliminary approval, followed

4  by final approval of the settlement after notice to the class . . . ." *In re M.L. Stern Overtime Litig.*,

5  2009 U.S. Dist. LEXIS 31650, at *8 (S.D. Cal. Apr. 13, 2009). At the preliminary approval stage,

6  the Court makes only a preliminary determination of the fairness, reasonableness and adequacy of

7  the Settlement so that notice of the Settlement may be given to the Class and a fairness hearing

8  may be scheduled to make a final determination regarding the fairness of the Settlement. *See* Alba

9  Conte & Herbert Newberg, 4 *Newberg on Class Actions* § 11.25 (4th ed. 2002) [hereafter *Newberg*

10 *on Class Actions*]; *Manual for Complex Litigation* § 21.632 (4th ed. 2005). The Court's review is

11 "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

12 of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

13 taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d

14 at 625; *accord Hanlon*, 150 F.3d at 1027.

15     In contemplating the preliminary approval of a proposed settlement, "[t]he

16 recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight*

17 *v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009).

18 Additionally, a party's motion for preliminary approval does not demand a final analysis of the

19 settlement's merits—instead, a more detailed assessment is reserved for the final approval after

20 class notice has been sent and class members have had the opportunity to object to or opt-out of

21 the Settlement. *See Moore's Federal Practice* § 23.165[3] (3d ed. 2005).

22            **b. The Settlement is Fair, Reasonable and Adequate**

23       In determining whether a settlement is "fair, reasonable, and adequate," a court considers a

24 number of factors, including: (1) the strength of the plaintiff's case and the risk, complexity,

25 expense, and likely duration of further litigation; (2) the risk of maintaining class action status

26 throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and

27 the stage of the proceedings; and (5) the experience and views of counsel. *In re M.L. Stern*

28

*Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at *8.  In addition, the settlement may not be a product of collusion among the negotiating parties.  *Id.*  Furthermore, the factors for preliminary approval are less extensive than the factors for final approval.  *See, e.g., Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *8-10 (N.D. Cal. Mar. 28, 2007).  Therefore, in considering whether the Settlement falls within the range of what could be found to be fair, reasonable, and adequate, the Court should conduct only a preliminary review of these factors.

> i.  *Complexity, Expense, and Risks of the Class Litigation*

Plaintiffs' claims involve complex legal issues and the costs and risks associated with continuing to litigate this action would require extensive resources and time by both the Court and the Parties.  "[A]voiding a trial and inevitable appeals in this complex . . . suit strongly weigh in support of approval of the settlement, rather than prolonged and uncertain litigation." *Rodriguez v. West Publ. Corp.*, 2007 U.S. Dist. LEXIS 74767, at *27-28 (C.D. Cal. Sept. 10, 2007).  Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

A number of obstacles remain in this litigation before any relief could be obtained absent settlement: the possibility that Defendants would seek decertification of the Class; a potential adverse decision by the Court or jury on liability or damages; the difficulty and uncertainty of the Court accepting Plaintiffs' evidence to support their restitution claim; and the near certain post-judgment appeals of any decision by the Court or jury in Plaintiffs' favor.

Trial is set for January 8, 2013.  Although the Class was certified, Plaintiff had not proven her UCL, CLRA FAL or warranty claims, and Kaz had developed a hearty defense.  Accordingly, success at trial was far from certain for either side.  Additionally, since Plaintiffs were pursuing restitution or diminished value of the Heating Pads, which had original purchase prices between $13 and $40, the range of recovery was difficult to reliably predict.  Given the foregoing, the Class was at risk of not prevailing on its certified claims and Kaz was at risk for a substantial restitution or diminished value award.

193040

Therefore, the complexities of this case and the duration and scope of potential future litigation, including the cost and expense to Parties and the Court, strongly weigh in favor of preliminary approval of the Settlement.

*ii.   Amount of Recovery*

To assess the reasonableness of a proposed settlement seeking monetary relief and the agreed upon amount of recovery, the "inquiry into fairness should contrast settlement rewards with likely rewards if case goes to trial" and consider that "costs of further litigation and risks of proof difficulties militate in favor of settlement approval." *In re Chicken Antitrust Litig.*, 669 F.2d 228, 239-40 (5th Cir. 1982); *see also City of Detroit v. Ginnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the proposed recovery does not, in and of itself, mean the settlement is grossly inadequate and should be disapproved. . . . The most important factor is the strength of the case for Plaintiffs on the merits, balanced against the amount offered in settlement.").

Under the proposed Settlement, Class Members would be paid approximately between $10 and $20 for their claim.  Class Counsel believe that the most frequent purchase price for the subject heating pads is within the range of payments the Settlement is expect to make to Class members.  The Defendants have agreed to a guaranteed minimum Settlement payment of $1,450,000 and up to a maximum of $2,700,000 to Class members depending on the number of valid claims received. As detailed above, if fewer than 72,500 timely and valid claims are received, then the difference between the total amount to be paid to claimants and $1,450,000 shall be paid to cy pres recipients, subject to this Court's approval.

Considering the risks, resources needed, and delays inherent in continuing to litigate this Action, the Parties believe that the proposed Settlement provides a substantial recovery and is in the best interests of the Class Members.

*iii.   Stage of the Proceedings and Extent of Discovery*

Here, the Settlement was reached after extensive settlement negotiations with the assistance of a retired Judge of the Court, Judge Leo Papas (ret.) (who is well-recognized for his skill and

1  ability in assisting parties reach settlements) and a Magistrate Judge of the Court.  The Parties

2  participated in three full-day mediation sessions with Judge Papas.  Although the Parties' positions

3  moved closer with Judge Papas' assistance, settlement was not achieved after three sessions with

4  him.  Thereafter, the Parties continued to negotiate terms of a settlement on their own and

5  conducted two settlement conferences and a status conference with Magistrate Judge Bartick.  At

6  the status conference, the Parties were finally able to report that the final few unresolved issues had

7  been worked through and the Parties had reached a settlement after months of effort.

8      In addition, the Parties have engaged in substantial discovery in this action.  As set forth in

9  Section I, the Parties have litigated vigorously and spent much time and effort on this matter.  The

10  Parties fought over certification, with the Court certifying one of only two sought after classes.

11  This procedural and factual case history demonstrates that hard work and persistence was brought

12  to bear for the Class to achieve a favorable settlement that provides meaningful monetary and

13  injunctive relief.

14                          *iv.  Opinions and Experience of Class Counsel*

15      In contemplating the preliminary approval of a proposed settlement, "[t]he

16  recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight*,

17  2009 U.S. Dist. LEXIS 11149, at *11 (*citing Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.

18  Cal. 1979)). Indeed, "[p]arties represented by competent counsel are better positioned than courts

19  to produce a settlement that fairly reflects each party's expected outcome in litigation." *Stevens v.*

20  *Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119, at *25-26 (C.D. Cal. Feb. 25, 2008) (*citing In re*

21  *Pacific Enters. Sec. Litig.*, 47 F.3d at 378).  Thus, "the Court should not without good cause

22  substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622. Here, "[i]n addition to being

23  familiar with the present dispute, Plaintiff's counsel has considerable expertise in . . . consumer

24  and class action litigation." *Knight*, 2009 U.S. Dist. LEXIS 11149, at *11.  There "is nothing to

25  counter the presumption that counsel's recommendation is reasonable." *Id.*

26      Class Counsel has considerable experience in class litigation, has practiced law for 32 years

27  and has negotiated eight class action settlements and resolved hundreds of complex multi-party

28

1   lawsuits. Eppsteiner Decl. ¶ 3. Class Counsel is experienced in class action litigation, complex

2   litigation and recommends the Settlement to the Court and the Class. *Id.*

3                    *v.   The Settlement Was Reached at Arm's Length After Investigation*

4                         *and Discovery.*

5        "A presumption of correctness is said to attach to a class settlement reached in arm's-length

6   negotiations between experienced capable counsel after meaningful discovery." *In re Heritage*

7   *Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005).  Moreover, if the

8   terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re*

9   *GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

10       Here, the Parties vigorously litigated the action for more than two years. As described in

11  detail above, Class Counsel conducted an extensive investigation into Plaintiffs' claims and

12  Defendant's affirmative defenses.   (*See* Section I, "Factual and Procedural History," for a

13  description of this extensive work.) By the time the Parties began to negotiate the Settlement,

14  Class Counsel had an in-depth understanding of the factual and legal strengths and weaknesses of

15  Plaintiffs' claims, and were able to engage in informed negotiations with Defendants. As the

16  instant settlement achieves the principal goals of the litigation—cessation of the challenged

17  conduct, Defendants' agreement to refrain from similar conduct with respect to its packaging,

18  payment that approximates the amount many Class members paid for their heating pads, and the

19  use of unclaimed funds by organizations whose purposes include educating consumers of their

20  rights regarding false or misleading advertising—the Class has achieved the goals of the litigation

21  and the Court should accept that the Settlement was the result of arm's-length negotiations and

22  devoid of fraud or collusion. *See Newberg on Class Actions* § 11.28, at 11-59 (Counsel is "not

23  expected to prove the negative proposition of a non-collusive agreement.").

24                         *vi.   Notice to Class Members*

25       Where class members will subsequently receive notice and have an opportunity to be heard

26  on the settlement, a court "need not review the settlement in detail at this juncture; instead

27  preliminary approval is appropriate so long as the proposed settlement falls 'within the realm of

28

1  possible judicial approval.'"  *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at

2  *9-10.

3       The Settlement Notice Program is expected to provide notice to a substantial portion of the

4  Class and provide Class members with the opportunity to object to, or opt-out of, the Settlement.

5  While the Parties are able to identify less than 1000 Class members because the Heating Pads are

6  primarily sold to the general public by third party retailers – and subpoenas served on the third

7  party retailers did not result in the production of Class member contact information – it is expected

8  that the Notice Plan will provide notice to over 70% of the Class.  The appropriateness of the

9  Notice Plan is described in more detail in Section V below.

10       In sum, consideration of the above factors strongly supports the Court's preliminary

11  approval of the Settlement.

12  **IV.    THE PARTIES REQUEST TWO MINOR MODIFICATION TO THE**

13  **COURT'S ORDER CERTIFYING THE CLASS, TO SUPPORT THE**

14  **PROPOSED SETTLEMENT**

15       Federal Rule of Civil Procedure 23(e) requires court approval for "any settlement,

16  voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."  The

17  Class here was certified by the Court in its October 5, 2012 Order, which also appointed Plaintiff

18  Beck-Ellman as Class Representative and Plaintiffs' Counsel as Class Counsel.  Dkt. No. 71.

19       Under Rule 23(c)(1)(C), the Court can amend its Certification Order "before final

20  judgment" in the action. Here, the parties request two minor modifications to its Certification

21  Order so that the Settlement Agreement is consistent with the Court's Certification Order.

22  Specifically, the Parties request that the Court amend the Certification Order as  red-lined below:

23       "All residents of California who purchased Kaz-manufactured **and/or**

24       **distributed** electric heating pads bearing the words "Kaz" and/or

25       "SoftHeat" and/or "SmartHeat" and/or "Dunlap" and/or the number 1-

26       800-477-0457 on the packaging or heating pads themselves for primarily

27       personal, family or household purposes from October 13, 2006, through

28

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

193040

1    the date ~~of class notice~~ **the Court orders preliminary settlement**

2    **approval**. The Court excludes from the class anyone seeking damages for

3    personal injury or property damage caused by Kaz heating pads, as well as

4    anyone with a conflict of interest in this matter." (Deletions shown by

5    strike-out and additions bolded and underlined.)

6        The purpose of the requested modification is to ensure that the Class definition

7  encompasses all Heating Pads at issue, including not just any that may have been manufactured by

8  Defendants, but any that were distributed by them as well, and to include all certified Class

9  members in the proposed Settlement and provide a date certain for the end of the class period so

10  that notice of the proposed Settlement will clearly inform recipients whether they are or are not in

11  the Class so that they can decide whether to opt out, object, or submit a claim.

12        As the requested modification of the class definition does not affect the Certification Order

13  as to the typicality of Class Representative's claims or the adequacy of representation by the Class

14  Representative and Class Counsel, the Parties do not request modification as to their appointments

15  as such.

16  **V.**      **THE PROPOSED FORM AND METHOD OF CLASS NOTICE ARE**

17          **APPROPRIATE AND SATISFY THE REQUIREMENTS OF RULE 23**

18        Notice of a class action settlement must be "the best notice practicable under the

19  circumstances, including individual notice to all members who can be identified through

20  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain "information that a

21  reasonable person would consider to be material in making an informed, intelligent decision of

22  whether to opt out or remain a member of the class and be bound by the final judgment." *In re*

23  *Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). The threshold

24  requirement regarding class notice is whether the means proposed for distribution are reasonably

25  calculated to apprise the class of the pendency of the action, the proposed settlement, and the right

26  to opt out or object to the settlement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974);

27  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

28

193040

The proposed Class Notice, Publication Notice, and Settlement Website are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances. This case primarily involves retail purchases from third party stores to consumers; as a result, Defendants do not have contact information for the majority of Class members. The Settlement Website will contain the product name, and to further assist absent Class Members, will also contain photographs of the controller, Heating Pad box and a close up of the Heating Pad, increasing the likelihood that Class members will learn that they are entitled to benefits provided by this Settlement. The Publication Notice will be printed in Better Homes & Gardens, Parade, People, Reader's Digest, and USA Weekend and 16 Spanish language newspapers. The Notice Plan includes 15 million online internet banner ads; 5 million placed through the 24/7 Real Media Network, and 10 million on Facebook. The internet banner ads will appear on some mixture of the following websites: Walmart, Verizon, MSNBC, evite, White Pages, People, USA Today, Citysearch, everydayHealth, Oprah, Monster, TIME, HGTV, Oxygen, food network, Fox News Channel, trulia, match.com, The Weather Channel and iVillage. KCC selected these publications based on an analysis of these publications' Pain Relief User demographics, and its own experience with the effectiveness of other notice plans. *See Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute.").

Notice is written in easy and clear language, and provides all needed information, including:(1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained.

193040

If, after prima facie review of the relief offered and the proposed notice, a court concludes that fairness and adequacy exists, it should order that notice be sent to the class. *Manual for Complex Lit.*, § 21.632 at 321. A notice program must be adequate, but the mechanics of the program are left to the discretion of the court, subject only to the broad "reasonableness" standard imposed by due process. In the Ninth Circuit, a notice of settlement satisfactorily meets due process if the notice "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, L.L.C.*, 361 F.3d at 575 (citing *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025. Here, the Parties' proposed Notice Plan, described above, fulfills all requirements of due process and targets the demographic most likely to have purchased Kaz Heating Pads during the Class Period, to most efficiently reach Class members.

## VI. THE PARTIES REQUEST THE COURT CONSIDER ORDERING DISCLOSURE OF CERTAIN KAZ CUSTOMER LISTS TO THE SETTLEMENT ADMINISTRATOR, WHICH THE PARTIES ADVOCATE IN SUPPORT OF MAILED NOTICE

The Court specifically defined the certified Class to exclude "anyone seeking damages for personal injury or property damage caused by Kaz heating pads." (Dkt. No. 71.) The Settlement Agreement contemplates that mailed notice shall be made to individuals known to Kaz to have purchased a Heating Pad between October 13, 2006 and the date of entry of the Preliminary Approval Order.[2] (Settlement Agreement at ¶ 6.1.) However, Kaz has no way of knowing which of these individuals on its customer list may not be Class members by virtue of their seeking personal injury or property damage resulting from use of a Heating Pad. The parties recognize that production of Kaz's Heating Pad customer list will disclose to Plaintiffs, their counsel, and the Settlement Administrator the names and contact information for such non-Class member persons, who may have a privacy interest in such information. *In re Insurance Installment Fee Cases*, , ___

---

[2] Specifically, the Settlement Agreement provides that if the Court so orders, Kaz will provide a list of (i) all individuals who purchased a Heating Pad through Kaz.com using a shipping address in California between October 13, 2006 and the date of entry of the Preliminary Approval Order and (ii) individuals who based on call center records (and MedWatch reports if disclosure is permitted by the FDA and applicable law)) appear to have purchased a Heating Pad in California between October 13, 2006 and the date of entry of the Preliminary Approval Order.

1   Cal.App.4th __ (December 13, 2012).   Importantly, however, non-production of the list would

2   prevent Notice being mailed to all customers on the list, even those who are Class members.

3   Consequently, the Parties have agreed to raise the issue with the Court and seek an order from the

4   Court directing Kaz to produce its customer list for purposes of providing mailed notice of this

5   Settlement.

6           Contact information regarding the identity of potential class members is generally

7   discoverable.  *Pioneer Elec. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 373 (2007).  Identities,

8   addresses, and telephone numbers are generally considered non-sensitive information where there

9   is no revelation of personal or business secrets, intimate activities, or similar private information.

10  *Crab Addison, Inc. v. Superior Court*, 169 Cal. App. 4th 958, 969 (2008).  However, the right to

11  discovery of such contact information is not absolute, and the California Constitution protects an

12  individual's "*reasonable* expectation of privacy against a *serious* invasion."  *Id.* at 370 (emphasis

13  in original).  Only if this threshold requirement is met upon an on assertion of privacy rights does

14  the Court need to balance the privacy interest against competing interests.  *Id.* at 371.  Such

15  competing interests include an individual's right to know of a class action where plaintiffs are

16  seeking relief for violations of law that the individual and the plaintiffs possibly share.  *Crab*

17  *Addison, Inc.*, 169 Cal. App. 4th at 967.

18          As an initial matter, the Parties do not believe that release of the name and address of Kaz

19  customers who are purchasers of Heating Pads but who may be excluded from the Class because

20  they might be seeking damages for personal injury or property damage constitutes a serious

21  invasion of their privacy interests.  A "serious" invasion is one that constitutes an "egregious

22  breach of social norms."  *Pioneer*, 40 Cal. 4th at 371.  Contact information, while personal, is not

23  particularly sensitive and its disclosure does not necessarily "constitute an egregious breach of the

24  social norms underlying the privacy right."  *Crab Addison, Inc.*, 169 Cal. App. 4th at 967.  Where

25  "there is no serious invasion of privacy no balance of opposing interests is required."  *Id.*  Here,

26  the Parties do not believe that a balancing of interests is necessary because disclosure of the names

27  and addresses at issue is not sufficiently serious under the present circumstances.

28

193040

Even if the Court determines that a balancing of interests is required, the Parties believe that disclosure of the contact information at issue is appropriate because any privacy right is outweighed by the individual's right to be informed of this class action. These individuals are similarly situated to Plaintiffs and therefore may reasonably be expected to want their information disclosed so as to be alerted to the claims at issue and their rights under the Settlement. *See Crab Addison, Inc.*, 169 Cal. App. 4th at 967.

Ultimately, non-production of the customer list will preclude mailed notice to individuals on the list who are indeed Class members. That is, the Parties believe that, on balance, protecting non-sensitive information of a few – if any – persons who may not be Class members would prevent direct mailed notice to the far greater number of those on the list who are part of the Class, and potentially deny the benefits of the Settlement to this latter group.

Accordingly, the Parties agree here that it is prudent for the Court to consider this matter and issue an order directing Defendants to produce the names and addresses of its known customers of Heating Pads to the Settlement Administrator (and only their names to Class Counsel, in accordance with the Settlement Agreement) for purposes of providing direct mailed notice to the Class. The parties seek this order because any expectation of privacy – heightened or otherwise – that an individual may have does not extend to situations where a party is required by law, including court order, to disclose the contact information, including in the course of litigation. *Id.* at 973.

## VII.   THE PROPOSED TIMELINE SHOULD BE ADOPTED

| EVENT | DATE |
|---|---|
| Class Notice Disseminated | **Within 75 days of the entry of the Preliminary Approval Order (Projected last date of publication notice – March 19, 2013)** [see Agreement at 6.1, 6.2, 6.2.1] |
| Last Day to Submit or Postmark Written Opt Out | **April 18, 2013** [See Agreement at 2.18, 7.1] |
| Last Day to Submit or Postmark Claim Form | **June 17, 2013** [See Agreement at 2.6 re Claims Period] |
| Last Day to file Motion for Fees, Costs, | **May 1, 2013** [Most settlement agreements/orders state |

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

193040

| | |
|---|---|
| and Incentive Award | this must occur 35-45 days before final approval hearing] |
| Last Day for Objections or to file Notice of Intention to Appear at Final Approval Hearing | **May 1, 2013** [See Agreement at 5.2, 7.1] |
| Response to Objections due | **May 24, 2013** [See Agreement at 7.3 – Response to Objections no later than 7 days before Final approval hearing] |
| Final Approval Hearing | **May 31, 2013** |

## VIII.  CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court issue an Order: (i) granting preliminary approval of the proposed class action Settlement Agreement dated December 21, 2012; (ii) granting preliminary approval of cy pres recipients; (iii) approving the Class Notice as to both form and manner; (iv) approving the Notice Plan; (v) the Claim Form; (vi) the interim appointment of the Claims Administrator; and (vii) setting the dates for a fairness hearing at which the Court will consider final approval and requests for Class Counsel's fees, cost and expense reimbursement and approval of the Class Representative's incentive award.

In addition, the Parties request that the Court issue an order (1) modifying the certified Class as set forth in Section IV and (2) directing Defendants to produce the identifying and contact information of certain of its Heating Pad customers to the Settlement Administrator (and only the names of such customers to Class Counsel in accordance with the Settlement Agreement) for purposes of direct mailed notice of this Settlement to such persons.

DATED:  December 24, 2012          EPPSTEINER & FIORICA ATTORNEYS, LLP


By:_____/s/ Stuart M. Eppsteiner_____
           Stuart M. Eppsteiner
           Andrew J. Kubik
           Attorneys for Plaintiffs

DATED:  December 24, 2012          THARPE & HOWELL, LLP


By:_____/s/ Soojin Kang_____
           Paul V. Wayne
           Soojin Kang
           Attorneys for Defendants