1  STUART M. EPPSTEINER (SBN 098973)
   sme@eppsteiner.com
2  ANDREW J. KUBIK (SBN 246902)
   ajk@eppsteiner.com
3  ZELEKHA AMIRZADA (SBN 250419)
   za@eppsteiner.com
4  **EPPSTEINER & FIORICA ATTORNEYS, LLP**
   12555 High Bluff Dr., Ste. 155
5  San Diego, CA  92130
   Tel. (858) 350-1500
6  Fax (858) 350-1501

7

8

9          **IN THE UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | BEVERLY BECK-ELLMAN, JOHN AND DENISE BIELIS, and JOHN AND SANDY MAHOY, individually and on behalf of all others similarly situated,

CASE NO.:  10cv2134 H (DHB)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

13

14

              PLAINTIFFS,

15

16          vs.

17 KAZ USA, INC, and KAZ, INC.,

              DEFENDANTS.

Date:  June 10, 2013
18 Time:  10:30 a.m.
   Place:  Courtroom 15A

19

20 Judge: Hon. Marilyn Huff
   Action Filed: October 13, 2010

21

22

23

24

25

26

27

28

0
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

194041

# **TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ……………..…………………………………….. 1

**FACTUAL BACKGROUND** …………………………………………. 3

I.    HISTORY OF LITIGATION…………………………………….. 3

    a.   The Parties and Complaint…………………………………….. 3

    b.   Plaintiffs' Engage Kaz and Third Parties in Substantial
        Discovery ……………………………..……………………… 4

    c.   Plaintiffs Obtain Class Certification ………………………… 5

    d.   The Parties' Negotiations Regarding Settlement ………………… 6

    e.   Motion for Preliminary Approval ……………………………… 7

II.   THE TERMS OF THE SETTLEMENT ………………………… 8

    a.  Injunctive Relief ……………..………………………........ 8

    b.  Cash Refunds ……………………………………….…………… 9

    c.  Attorney's Fees, Expenses and Incentive Award ………………… 11

III.  THE COURT-APPROVED NOTICE PROGRAM ………………… 11

IV.   NOTICE TO THE ATTORNEYS GENERAL ………….…………… 15

**REASONS THE SETTLEMENT WARRANTS FINAL APPROVAL**

I.    STANDARD FOR GRANTING FINAL APPROVAL ……….……… 15

II.   THE COURT SHOULD GRANT THE SETTLEMENT
    FINAL APPROVAL ……………………………………….…….. 17

    a.  The Strength of Plaintiffs' Case ………………………………… 17

    b.  The Risk, Expense, Complexity, and Likely Duration of Further
       Litigation Favor Final Approval …………………………….. 18

    c.  The Risk of Maintaining Class Action Status Through Trial
       Favors Final Approval …………………………………… 19

d.  The Amount Offered in Settlement Favors Final Approval ......... 20

e.  The Stage of the Pleadings and Extent of Discovery Favor Final Approval ................................................................. 21

f.  The View of Experienced Counsel Favors Final Approval ........... 22

g.  The Class' Reaction to the Proposed Settlement Favors Final Approval ................................................................. 23

h.  The Presence of a Governmental Participant ......................... 24

i.  Other Factors ................................................................. 24

III.   THE BALANCED FACTORS WEIGH IN FAVOR OF FINAL APPROVAL ................................................................. 25

**CONCLUSION** ................................................................. 25

# Table of Authorities

## Cases

*Allen v. Holiday Universal*
    249 F.R.D. 166 (E.D. Pa. 2008) ..............................................   18

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610, 622 (N.D. Cal. 1979) ..............................   22

*Churchill Vill., LLC. v. Gen. Elec.*
    361 F.3d 566, 575 (9th Cir. 2004) ......................................   16

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268, 1276 (9th Cir. 1992) ..................................   16

*Cotton v. Hinton*
    559 F.2d 1326, 1330 (5th Cir. 1977) ..................................   20

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
    C 06-3903 TEH, 2008 WL 4667090, *4
    (N.D. Cal. Oct. 22, 2008) ..................................................   16

*Dennis v. Kellogg Co.*
    697 F.3d 858, 866-67 (9th Cir. 2012) ...............................   10, 11

*Hanlon v. Chrysler Corp.*
    150 F.3d at 1029.............................................................   16, 18

*In re Chicken Antitrust Litig. Am. Poultry*
    669 F.2d 228, 240 (5th Cir. 1982) ......................................   20, 24

*In re Ferrero Litigation*
    278 F.R.D. 552 (S.D. Cal. 2011) ........................................   18

*In re Heritage Bond Litig.*
    02-ML-1475 DT, 2005 WL 1594403, *2
    (C.D. Cal. June 10, 2005) .................................................   17

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
    No. 1:09-cv-7670, 2011 WL 5599129, at *5
    (N.D. Ill. Nov. 16, 2011) ...................................................   24

*In re Omnivision Techs.*
    559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2007) ..................   23, 24

*In re Pac. Enters. Secs. Litig.*
    47 F.3d 373, 378 (9th Cir. 1995) ......................................   16, 22

*In re Portal Software, Inc. Sec. Litig.*
    C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......   18

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*In re Warner Comm's Sec. Litig.*
   618 F. Supp. 735, 745 (S.D.N.Y. 1985) ................................... 21

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*
   396 F.3d 922, 933 (8th Cir. 2005). ..................................... 19

*Johns v. Bayer Corp.*
   280 F.R.D. 551 (S.D. Cal. 2012) ....................................... 18

*Kaufman v. Am. Express Travel Related Svcs., Inc.*
   283 F.R.D. 404, 407
   (N.D. Ill. 2012) ...................................…................. 24

*Knight v. Red Door Salons, Inc.*
   08-01520 SC, 2009 WL 248367, *4
   (N.D. Cal. Feb. 2, 2009) ............................................ 22, 23

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234, 1238 (9th Cir. 1998) ................................... 16, 17

*Martin v. AmeriPride Servs., Inc.,*
   08CV440-MMA JMA, 2011 WL 2313604, *7
   (S.D. Cal. June 9, 2011) ............................................. 24

*Milstein v. Huck*
   600 F.Supp. 254, 267 (E.D.N.Y. 1984) ................................. 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523, 528 (C.D. Cal. 2004) ................................. 17, 19, 21

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615, 625 (9th Cir. 1982) ...................... 15, 16, 17, 19, 20, 25

*Rodriguez v. W. Pub. Corp.*
   CV05-3222 R (MCX), 2007 WL 2827379
   (C.D. Cal. Sept. 10, 2007) ........................................... 18

*Rodriguez v. W. Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ......................................... 18, 22

*Sterns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ........................................ 18

*Touhey v. United States*
   EDCV 08-01418-VAP, 2011 WL 3179036
   (C.D. Cal. July 25, 2011) ............................................ 24

*Young v. Polo Retail, LLC*
   C 02 4546 VRW, 2007 WL 951821, *4
   (N.D. Cal. Mar. 28, 2007) ............................................ 21, 22, 24

iv
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## Statutes, Rules, Regulations, and Treatises

15 U.S.C.A. 3201……………………………………………….....      1

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301…………………………      1, 2

13 Pa. Cons. Stat. § 231………………………………………………..      1

73 Pa. Const. St. § 201-1 …………………………………………………      1

Unfair Competition Law ("UCL"),
    Cal. Bus. & Prof. Code §§ 17200 et seq. …………………………      1, 2

Consumers Legal Remedies Act ("CLRA"),
    Cal. Civ. Code §§ 1750 et seq. …………………………………      1, 2

False Advertising Law, ("FAL"),
    Cal. Bus. & Prof. Code §§ 17500 et seq……………………………      1, 2

M.C.L.A § 440.2313 …………………………………………………      1

Michigan Consumer Protection Act ("MCPA"), §§ 445.901 et seq. ……….      1

Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq. …..      2

5 W. Moore, MOORE'S FEDERAL PRACTICE, § 23.85[2][e]
    (Matthew Bender 3d ed.) ………………………………………..      21

Plaintiff Beverly Beck-Ellman, on behalf of herself and the certified Class respectfully submits this Memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

## INTRODUCTION

On October 13, 2010, Plaintiffs Beverly Beck-Ellman, Sandy and John Mahoy, and John and Denise Bielis filed their Complaint alleging false advertising claims on behalf of a California class, a Michigan class, and a Pennsylvania class. (Dkt. No. 5.)   Plaintiff Beck-Ellman brought claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law, ("FAL") *id.* §§ 17500, *et seq*., and Consumers Legal Remedies Act, ("CLRA") Cal. Civ. Code §§ 1750, *et seq*., and claims for breach of express and implied warranty. (Dkt. No. 1.) Plaintiffs John and Denise Bielis, and John and Sandy Mahoy brought claims for express warranty pursuant to M.C.L.A §440.2313 and 13 Pa. Cons. Stat. § 2313. *Id.* Plaintiffs John and Denise Bielis brought claims under the Michigan Consumer Protection Act ("MCPA"), §445.901, *et. seq.  Id.* Plaintiffs John and Sandy Mahoy brought claims for unfair, deceptive and unlawful trade practices under 73 Pa. Const. St. §201-1, *et. seq.*  All Plaintiffs brought claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.,* 15 U.S.C.A. 3201*, et seq.,* and claims for unjust enrichment. *Id.*[1] Plaintiffs alleged that Kaz made misrepresentations and omissions on its Kaz Heating Pad packaging regarding the safe and proper use of the Heating Pads, thereby subjecting consumers to risk of burns and property damage. *Id.* at ¶¶8-10.

After filing the Complaint, Class Counsel dove headfirst into conducting extensive discovery in this case, including by serving six sets of requests for production of documents, two sets of interrogatories, fourteen subpoenas on third-parties, and conducting twelve depositions, in addition to retaining qualified experts

---

[1] On September 9, 2011, Plaintiffs John and Denise Bielis' claims were voluntarily dismissed without prejudice. (Dkt. No. 28.)

for the purpose of supporting their claims (including the lack of warnings and misleading nature of the advertising of the heating pads at issue in this case) and their damages.

On October 4, 2012, this Court certified Plaintiff Beverly Beck-Ellman's claims for violations of the FAL, CLRA, UCL, Song-Beverly Act, Magnuson-Moss Consumer Warranty Act, and unjust enrichment, certifying a class of "[a]ll residents of California who purchased Kaz-manufactured electric heating pads bearing the words "Kaz" and/or "SoftHeat" and/or "Smart/Heat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family, or household purposes from October 13, 2006, through the date of class notice". (Dkt. No. 71.)[2]  The Court excluded "from the class anyone seeking damages for personal injury or property damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter." *Id.* Immediately after certification, Plaintiffs' California Class and Kaz began settlement discussions. After several settlement conferences and mediations, the parties finally agreed upon the material terms of the Settlement on November 30, 2012. On December 24, 2012, the parties filed a joint motion seeking preliminary approval of the proposed Settlement (Dkt. Nos. 83-84), which the Court granted on January 7, 2013.  The Court's Order directed that notice be given to the Class and set deadlines for Plaintiffs to file this instant Motion for Final Approval of Class Settlement, and their previously-filed Motion for Approval of Attorneys' Fees, Costs and Incentive Award (*see* Dkt. No. 86).

///

///

///

///

---

[2] This Court also denied certification of a Pennsylvania class as to Plaintiff Mahoy's consumer protection, implied warranty, and unjust enrichment claims. *Id.*

194041

# FACTUAL BACKGROUND

## I.    HISTORY OF LITIGATION

### a.  The Parties and Complaint

The named Plaintiff is the Class Representative, and her counsel is Class Counsel for the certified Class. Certification Order (Dkt. No. 71) at 10. Plaintiff Beck-Ellman purchased a Kaz heating pad in late 2007. (Dkt. No. 1 at ¶17.) Plaintiff alleges that on January 25, 2008, Ms. Beck-Ellman's heating pad burned her left hip and left a permanent scar. *Id*. Ms. Beck-Ellman received medical treatment for her burns. *Id*.[3] Plaintiff Beck-Ellman alleges that Kaz misrepresented and/or omitted material information regarding the safe uses of Kaz Heating Pads at the point of purchase (on the Kaz Heating Pad packaging). To this end, Plaintiffs contend that Kaz omits from its Heating Pad packaging the material fact that the Heating Pads cannot be used while sleeping and cannot be used when placed between a person and a supporting object, such as a bed, sofa, couch or chair. (Dkt. No. 1 at ¶¶34-36.)  Plaintiff alleges that had Kaz disclosed these facts on the product packaging regarding the limited uses of the Heating Pads and the possibility to cause burns or injury if used in those manners, members of the Class would not have purchased the Heating Pads. *Id*.

Specifically, Plaintiffs allege that, during the Class period, Kaz's Heating Pad packaging contained misleading images of models using the heating pads in unsafe

---

[3] The complaint describes burns incidences caused by Kaz heating pads, for dismissed Plaintiffs' John and Denise Beilis ("On or about January 11, 2010, while using the a Kaz SmartHeat HP 710 Heating Pad to treat lower back pain, Denise Bielis was burned by the Heating Pad through her clothing. The Heating Pad burned Ms. Bielis; which in turn caused blistering and permanent scarring to the skin on her lower back")(Dkt. No. 1 at ¶18) and John and Sandy Mahoy ("On or about January 30, 2010 the Mahoys purchased a Kaz SoftHeat HP215 Heating Pad from Walmart in Delmont, Pennsylvania. Several weeks later, while using the Heating Pad to help relieve pain in his lower back, the Heating Pad burned the skin on Mr. Mahoy's lower back")(Dkt. No. 1 at ¶19).

3

manners including: models placing the heating pad between themselves and another object (unsafe use), and models using the heating pad with their eyes closed, suggesting that heating pads can be used while sleeping (unsafe use). *Id.*   Plaintiff further alleges that Kaz omits, in advance of a consumer purchase, that the only safe use of the Heating Pad is where one side of the Heating Pad is exposed to nothing but air. *Id.* at ¶36.  On November 16, 2010, Kaz filed its Answer. (Dkt. No. 5.)

### b. Plaintiffs' Engage Kaz and Third Parties in Substantial Discovery

Discovery began in this case on March 8, 2011 when the Parties filed the Report of Rule 26(f) Planning Meeting. (Dkt. No. 11.) After this point, the parties engaged in extensive and meaningful discovery efforts. Class Counsel served six (6) sets of requests for production of documents and two (2) sets of interrogatories. Eppsteiner Dec. ¶2.  Kaz provided responses to these requests and Class Counsel reviewed the thousands of pages of documents Kaz produced.  Eppsteiner Dec. ¶3. Kaz also served seven (7) sets of requests for production of documents, to which Plaintiffs responded by producing responsive documents. Eppsteiner Dec. ¶3. Kaz served seven (7) sets of interrogatories to which Plaintiffs also responded. Eppsteiner Dec. ¶3.

Plaintiffs' Counsel issued Freedom of Information Act (FOIA) requests to both the U.S. Food and Drug Administration (FDA) and the Consumer Product Safety Commission (CPSC) regarding Kaz heating pads, injuries caused by Kaz heating pads, and issued advisories concerning safety concerns related to electric heating pads. Eppsteiner Dec. ¶4.

Plaintiffs served fourteen (14) subpoenas on third parties including serving: (a) Kaz's two designated experts, (b) Kaz Heating Pad retailers for the purposes of obtaining precise class member information to effectuate and disseminate individualized class notice, (c) other heating pad manufacturers for the purposes of understanding any warning labeling on its product packaging, and (d) Underwriters

Laboratories, Inc. (UL), regarding its UL 130 standard/certification of electric heating pads. Eppsteiner Dec. ¶¶5-7.   Kaz subpoenaed Sharp Rees Stealy for medical records of Beverly Beck-Ellman. Eppsteiner Dec. ¶8.

Plaintiffs conducted twelve (12) depositions in this case. Plaintiffs deposed nine (9) witnesses Kaz designated as its Rule 30(b) representatives regarding a wide-ranging area of topics including complaints and service, computer systems and databases, design, testing, sales and marketing of Kaz Heating Pads.  Eppsteiner Dec. ¶9.   On June 12, 2012, Class Counsel traveled to San Jose, California to depose Underwriters Laboratories Inc.'s PMK, Joel Hawk. Eppsteiner Dec. ¶10. Kaz deposed Class Representative, Beverly Beck-Ellman. Eppsteiner Dec. ¶11.

In addition to discovery detailed above, Class Counsel engaged in expert discovery as a means to support its request for class certification. Class Counsel retained and paid for the work of qualified experts regarding heating pads, advertising, warnings, and damages/restitution. Eppsteiner Dec. ¶12.   Plaintiffs designated experts Prof. Ralph Barnett and Dean Fueroghne on May 25, 2012. Eppsteiner Dec. ¶13.   Kaz also designated its experts, Steven Young and Mark Loose on May 25, 2012. Eppsteiner Dec. ¶14. Class Counsel deposed Kaz's experts Steven Young on July 17, 2012 and Mark Loose on July 12, 2012. *Id.*

Class Counsel reviewed over 20,000 documents in this case. Eppsteiner Dec. ¶15.   Plaintiffs carefully reviewed and evaluated documents produced by Kaz and Underwriters Laboratories, Inc. in addition to information obtained through the FDA and CPSC. *Id.*   Plaintiffs also reviewed Kaz's expert productions and those documents produced at or subsequent to the Rule 30(b)(6) depositions. *Id.* Through this effort, Class Counsel was able to identify and utilize key information from this discovery that strongly supported Plaintiffs' claims in this case.

### c. Plaintiffs Obtain Class Certification

On July 20, 2012, Plaintiffs moved for class certification (Dkt. No. 43), which Kaz opposed (Dkt. No. 56).  In its opposition papers, Kaz also filed an Objection to

and Request to Exclude the Reports of Plaintiffs' Expert's Ralph Barnett and Dean Fueroghne, in addition to five (5) evidentiary objections and its response to Plaintiffs' Trial Plan. *Id.* Plaintiffs filed their reply (Dkt. No. 63). Plaintiffs' reply papers included: (a) the declaration of Class Counsel, and reply declarations of Plaintiffs' experts Ralph Barnett and Dean Fueroghne, (b) Plaintiffs' responses to Kaz's objections to the reports of Plaintiffs' experts, (c) Plaintiffs' evidentiary objections and request to exclude the Expert Report of Kent Van Liere and the expert report of Steven Young, (d) Plaintiffs' responses to the Kaz's evidentiary objections to deposition testimony and the declaration of Beverly Beck-Ellman, (e) Plaintiffs' evidentiary objections to the declarations of Mark Simon, Jennifer Peterson and William Davis, (f) Plaintiffs' request for judicial notice, and (g) Plaintiffs' reply regarding the Trial Plan. *Id.*

This Court held a telephonic status conference on September 28, 2012, wherein the Court denied Kaz's request to file a sur-reply to Plaintiffs' reply papers regarding its Motion for Class Certification. (Dkt.  No. 68.)  On October 4, 2012, this Court held a Telephonic Motion Hearing wherein the Court granted in part and denied in part Plaintiffs' Motion for Class Certification. (Dkt.  Nos. 69, 71.) In its Order, this Court granted Plaintiffs' Motion for Class Certification "as to the California class for the consumer protection, implied warranty, and unjust enrichment claims," appointed Class Counsel as counsel for the California class, and appointed Ms. Beverly Beck Ellman as Class Representative. (Dkt. No. 71.) This Court denied class certification for the Pennsylvania class. *Id.*

### d. The Parties' Negotiations Regarding Settlement

The parties began settlement discussions in June 2012.  The parties participated in three full-day mediation sessions with Hon. Judge Leo Papas (Ret.) on June 27, 2012, August 16, 2012, and again on October 26, 2012, after this Court's Order granting class certification.  Eppsteiner Dec. ¶16.  After these three all-day mediation sessions, the parties had not reached a settlement but their

1  positions had moved closer to each other. Counsel, directly and through Judge
2  Papas, continued to negotiate after the third mediation session. The parties
3  subsequently participated in two settlement conferences with Hon. Magistrate Judge
4  Bartick on November 6, 2012 and November 9, 2012. (Dkt. Nos. 74-76.)

5  Finally, the parties conducted a teleconference with Judge Bartick on
6  November 16, 2012, during which they confirmed a settlement had been reached.
7  (Dkt No. 78). On or about November 30, 2012, the Parties executed a Settlement
8  Term Sheet which contained most of the material terms of the settlement agreement,
9  including the monetary and injunctive relief for the class. Eppsteiner Dec. ¶17. On
10 December 21, 2012, after a painstakingly long last hour effort to negotiate the very
11 last minor details of the agreement, the parties fully documented the settlement in an
12 executed Settlement Agreement. (Dkt. No. 83-2 at Ex. A.) The settlement
13 memorialized in the parties' Settlement Agreement, provides significant injunctive
14 and monetary benefits to the Class and is fair, reasonable, and in the best interests of
15 the Class.

16 **e. Motion for Preliminary Approval**

17 On December 24, 2012, the parties filed a joint motion for preliminary
18 approval of a class settlement. (Dkt. No. 83.) The Court held a hearing on the motion
19 on January 7, 2013. (Dkt. No. 85.) On January 7, 2013, the Court granted the
20 motion, directing that the Class be notified of the Settlement, setting a date for Final
21 Approval Hearing, and setting a schedule for Plaintiffs to file motions for fees, costs
22 and incentive awards and final approval. (Dkt. No. 86.) Further, the Court granted
23 the parties' joint request to slightly modify the certified class definition. (*Id.* at 13.)
24 The revised Class definition is as follows:

25       All residents of California who purchased Kaz-manufactured
26       and/or distributed electric heating pads bearing the words "Kaz"
27       and/or "SoftHeat" and/or "Smart/Heat" and/or "Dunlap" and/or the
28       number 1-800-477-0457 on the packaging or heating pads

1  themselves for primarily personal, family, or household purposes
2  from October 13, 2006, through the date the Court orders
3  preliminary settlement approval.   The Court excludes from the
4  class anyone seeking damages for personal injury or property
5  damage caused by Kaz heating pads, as well as anyone with a
6  conflict of interest in this matter.

7  *Id.*

8  As for the Settlement Agreement, the Court held it "is the result of lengthy,
9  arm's-length negotiations", contains "no evidence… of collusion between the
10 parties", "represents a substantial recovery for the class, and a well-crafted
11 compromise of the divergent positions of the parties in relation to penalties." *Id.* at
12 9:21-22, 9:28-10:3.   Finally, the Court approved the parties' proposed Notice
13 Program and Settlement Administrator. *Id*. at 13:28-14:4.

14 **II.    THE TERMS OF THE SETTLEMENT**
15       **a.  Injunctive Relief**

16 The Settlement provides the Class and public with substantial injunctive relief
17 by requiring substantive changes to Kaz Heating Pad packaging which effectively
18 warn users about unsafe uses of the Heating Pad prior to purchase.   The Settlement
19 requires that Kaz cease using models on Kaz Heating Pad packaging who apply the
20 Heating Pad in an unsafe manner, requires that Kaz place warnings regarding unsafe
21 uses on the packaging and requires describing the "Auto Shutoff" feature as time-
22 based.

23 Images on Kaz Heating Pad Packaging: Heating Pad packaging will not
24 feature models whose eyes are closed and in a prone or reclining position. (Dkt. No.
25 83-2 at Ex. A, ¶8.2(i).)

26 Warnings on Kaz Heating Pad packaging: The following warning shall appear
27 on the side panel of the Heating Pad box in legible print:

28

"WARNING: During use, do not sit on or against, or lie on, sleep with, fold or crush the pad. Not for use with infants. Do not use with ointments or salves. Check skin frequently. ADDITIONAL IMPORTANT SAFETY WARNINGS INSIDE BOX."

*Id.* ¶8.2(ii).

Auto Shutoff Feature: Heating Pad packaging describing an "Auto Shut Off" feature will describe it as "60 minute auto-off" or its equivalent or if the time length is different or variable the description will make equally clear that it is a time-based function. *Id.* ¶8.2(iii).

The injunctive remedy described above will be implemented on a "going-forward" basis. *Id.* ¶8.1. Further, there is no sunset on this injunctive relief. *See generally*, *Id.* ¶8.2.

### b. Cash Refunds

Kaz agrees to pay a guaranteed minimum of $1,450,000 and a maximum of $2,700,000 to be distributed to Settlement Class members based on the number of valid timely claims submitted (with any balance of the guaranteed minimum to be paid by Defendants to *cy pres* recipient(s)). *Id.* ¶8.3. To this end, each member of the Settlement Class may submit one Claim Form and as to each Class member who submits an accepted Claim Form, the Settlement Administrator will pay to that Class member an estimated sum of between approximately $10 and $20 for a Heating Pad purchased during the Class Period. *Id.* at ¶9.3. All Participating Claimants shall receive a pro rata share of the Settlement depending on the number of valid claims received. *Id.*

If fewer than 145,000 timely and valid claims are received, then each Participating Claimant's share of the Settlement Fund will be increased pro rata up to $20 per Participating Claimant until the total of claims reaches $1,450,000. *Id.* at ¶9.3.(i). If fewer than 72,500 timely and valid claims are received, then the difference between the total amount to be paid to Participating Claimants and

1  $1,450,000 shall be paid by Defendants to one or more *cy pres* recipients, approved
2  by the Court, when Participating Claimant payments are made. *Id.*

3    If between 145,000 and 270,000 timely and valid claims are received, then
4  each Participating Claimant will receive $10. *Id.* ¶ 9.3(ii).

5    If more than 270,000 timely and valid claims are received, then each
6  Participating Claimant's share of the Settlement Fund will be decreased pro rata so
7  that the total amount to be paid to Participating Claimants does not exceed
8  $2,700,000. *Id.*

9    Here, after careful consideration, the parties have agreed that any *cy pres*
10 distribution should be made to the following institutions and in the following
11 manner: the Consumers Union ("CU"), the Better Business Bureau ("BBB") and
12 AARP Foundation ("AARP") will each receive 27% of the cy pres distribution. *Id.*
13 ¶¶ 9.6, 9.8. The Consumer Federation of California ("CFC") will receive the other
14 19%. *Id.* The maximum amount given to CFC will be $125,000. *Id.* If 19% is more
15 than $125,000, the Consumers Union, Better Business Bureau and AARP
16 Foundation will receive the difference in equal amounts. *Id.* The Court granted
17 preliminary approval of the proposed *cy pres* distributions. (Dkt. No. 86 at 13.)

18   As stated in this Court's Order preliminarily approving the parties' Settlement
19 Agreement, "[c]y pres distributions must account for the nature of the plaintiffs'
20 lawsuit, the objectives of the underlying statutes, and the interests of the silent class
21 members, including their geographic diversity." *Nachsin v. AOL, LLC*, 663 F.3d
22 1034, 1036 (9th Cir. 2011). "Appropriate cy pres recipients [in UCL and CLRA
23 actions] are . . . organizations dedicated to protecting consumers from, or redressing
24 injuries caused by, false advertising." *Dennis v. Kellogg Co.*, 697 F.3d 858, 866-67
25 (9th Cir. 2012).

26   Thus, CU, AARP, BBB, and CFC are all appropriate organizations to receive
27 *cy pres* distributions in the settlement of this action. Each *cy pres* recipient has
28 provided a declaration in conjunction with the parties' Joint Motion for Preliminary

10

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

194041

1   Approval of Class Settlement that describes its organization's work and definitively
2   demonstrates its dedication to protecting consumers from injuries caused by false
3   advertising. (*See* Doc. Nos. 83-3, 83-4, 83-5, 83-8.)

4   From the information contained in the declarations from the *cy pres*
5   recipients, the parties request this Court find that each of the four *cy pres* recipients
6   satisfies the *Dennis* standard, and approve them as contingent *cy pres* recipients in
7   the instance that the minimum settlement payment is not exhausted after paying all
8   valid and timely Class member claims. *Dennis,* 697 F.3d at 866; *Lane v. Facebook,*
9   *Inc.,* 696 F.3d 811, 821 (9th Cir. 2012)( "The *cy pres* remedy the settling parties here
10  have devised bears a direct and substantial nexus to the interests of absent class
11  members and thus properly provides for the 'next best distribution' to the class").

12  ### c. Attorney's Fees, Expenses and Incentive Award

13  The Settlement provides that Kaz will not object or oppose an application for
14  a Class Counsel Fee award in an amount not to exceed $1,500,000.00. (Dkt. No. 83-
15  2, Ex. A ¶8.4.)   Kaz agrees to pay up to this amount, subject to the Court's
16  determination.   The attorney fee and cost reimbursement is in addition to and
17  separate from, the injunctive and monetary relief obtained for the Class. *See*
18  *generally*, Settlement Agreement (Dkt. No.  83-2, Ex. A). Finally, subject to the
19  Court's approval, in recognition of Plaintiff's time and effort expended on behalf of
20  the Class, the Settlement Agreement provides that Plaintiffs may seek an incentive
21  award for Class Representative Beverly Beck-Ellman (*Id.* ¶8.5) and Class Counsel
22  may seek its litigation costs. *Id.* ¶8.4.

23  To date, Class Counsel have not been paid for their time or reimbursed for
24  their expenses incurred in this litigation. Plaintiffs' application for fees, costs, and
25  incentive award is the subject of a separate motion. Dkt. No. 87.

26  ### III.   THE COURT-APPROVED NOTICE PROGRAM

27  The Court approved the parties' proposed Notice Plan as meeting the
28  applicable legal requirements. (Dkt. No. 86 at Section C.) The Notice Plan has now

1  been fully implemented in accordance with the Court's Preliminary Approval Order.

2  *See* Robin Dec. ¶3. As this Court noted, this case primarily involves retail purchases

3  from third party stores to consumers and "as a result, Defendants have the contact

4  information of very few Class members." Dkt. No. 86 at 12:2-4. Therefore, as per

5  the Court's Order, notice was effectuated through publication in targeted periodicals,

6  online, and via a dedicated website.[4]

7      The Notice Plan was also based on the Class Administrator's research, to

8  determine the most effective way to reach potential Class members. (Dkt. No. 83-7.)

9  The Class Notice was designed to provide potential Class members with information

10  regarding the litigation and Settlement, and to inform them of their rights. The notice

11  contains information about the nature of the lawsuit, Class members' legal rights, the

12  Settlement's relief and benefits, the Settlement's release, how to file a claim, and

13  how to opt-out, object and exercise other rights under the Settlement. (*See* Dkt. No.

14  83-2 at Ex. A ("Settlement Agreement") at Exhs. 2A, 2B ("Class Notice").) The

15  Class Notice also directed Class members to a website dedicated to the Settlement,

16  www.electricheatingpadsettlement.com, which the Class members could use to

17  obtain a copy of the detailed Class Notice, Claim Form and other case documents

18  such as the full Settlement Agreement, the Order Preliminarily Approving the

19  Settlement and Plaintiffs' Motion for Approval of Attorney's Fees, Costs and

20  Incentive Award[5]. In addition, Class members could complete and submit their

21  claim directly via the Settlement Website.

22

---

23  [4] In their Joint Motion for Preliminary Approval of Class Settlement, the parties
   requested disclosure of Kaz's heating pad customer list for the purpose of

24  effectuating individual class notice (in addition to publication notice). (Dkt. No. 83-1
   at 19-21.) This Court determined that the Publication Notice and Settlement Website

25  were sufficient to alert the Class of the Settlement and found that disclosure of Kaz
   heating pad customer lists was not necessary at that time. (Dkt. No. 86 at fn. 2.)

26

27  [5] KCC placed this motion on the Settlement Website on April 16, 2013, the same day
   Plaintiffs filed their Motion for Approval of Attorney's Fees, Costs and Incentive

28  Award with the Court. Robin Dec. ¶11; Dkt. No. 87.

The Court previously found that the Class Notice plan was sufficient. To this end, the Court specifically held,

> the proposed method for notice to the Class members is comprehensive and reasonable. The proposed Class Notice, Publication Notice, and Settlement Website are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances.

(Preliminary Approval Order, Dkt. No. 86 at 11-12.) Consistent with the Court's direction, the Claims Administrator effected notice consistent with the Notice Plan.

The Class Notice appeared in numerous print sources, as follows:

| DATE | PUBLICATION | PAGE | CIRCULATION |
|---|---|---|---|
| April 2013 issue | *Better Homes & Gardens* | page 159 | CA circulation 656,100 |
| February 24, 2013 issue | *Parade* | page 16 | CA circulation 3,306,965 |
| March 3, 2013 issue | *Parade* | page 13 | CA circulation 3,306,965 |
| February 25, 2013 issue | *People* | page 86 | CA circulation 400,000 |
| April 2013 issue | *Reader's Digest* | page 181 | CA circulation 487,942 |
| February 24, 2013 Issue | *USA Weekend* | page 8 | CA circulation 3,371,211 |

*Id.* ¶3.

The Class Notice appeared in numerous California Hispanic newspapers, as follows:

| DATE | PUBLICATION | PAGE | CIRCULATION |
|---|---|---|---|
| February 14, 2013 issue | Los Angeles *Eastern Group* | page A7 | circulation 106,500 |
| February 16, 2013 issue | San Diego *Enlace* | page 7 | circulation 112,982 |
| February 15, 2013 issue | San Diego *El Latino* | page 11 | circulation 60,000 |
| February 17, 2013 issue | San Francisco/Oakland/San Jose *El Mensajero* | page 9 | circulation 103,800 |
| February 15, 2013 issue | San Jose *El Observador* | page 13 | circulation 34,500 |
| February 15, 2013 issue | Bakersfield *El Popular* | page A3 | circulation 22,040 |
| February 16, 2013 issue | Monterey/Salinas/Santa Cruz *El Sol de Salinas* | page 6 | circulation 30,000 |
| February 15, 2013 issue | Santa Ana *Excelsior* | page 5 | circulation 57,549 |
| February 15, 2013 issue | Los Angeles *Hoy LA* | page 5 | circulation 143,881 |
| February 15, 2013 issue | Los Angeles *La Opinion* | page 5A | circulation 79,616 |
| February 15, 2013 issue | Imperial Valley/Coachella *La Prensa Hispana* | page A2 | circulation 45,900 |
| February 13, 2013 issue | *Vida en Valle Fresno* | page A3 | circulation 43,728 |
| February 13, 2013 issue | *Vida en Valle Merced* | page A10 | circulation 16,061 |

194041

| 1<br>2 | February 13, 2013 issue | *Vida en Valle Modesto* | page A3 | circulation 44,376 |
|---|---|---|---|---|
| 3<br>4 | February 13, 2013 issue | *Vida en Valle Sacramento* | page A3 | circulation 34,688 |
| 5<br>6 | February 13, 2013 issue | *Vida en Valle Stockton* | page A3 | circulation 20,525 |

*Id.*

Class notice was also published online as follows:

| DATE | PUBLICATION | IMPRESSIONS |
|---|---|---|
| February 11, 2013 through March 11, 2013 | *24/7 Real Media Network* | 14,003,331 impressions delivered |

*Id.*

## IV.   NOTICE TO THE ATTORNEYS GENERAL

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Kaz provided notice of the Settlement to the United States Attorney General and the Attorney General of California on January 3, 2013. (Dkt. Nos. 87-5, ¶¶54-56, Exhs. 1-3.) The notice packet sent to the Attorneys General included complete copies of the Class Action Complaint, Preliminary Approval Motion and supporting documents, the Order Granting Class Certification, and notice of the January 7, 2013 Fairness Hearing. *Id.*  To date, the Attorneys General have not requested further information or indicated intent to object. Eppsteiner Dec. ¶18.  The 90-day window between Attorney General Notice and when a final approval order may be entered has already expired.

## REASONS THE SETTLEMENT WARRANTS FINAL APPROVAL

## I.   STANDARD FOR GRANTING FINAL APPROVAL

The Court may approve a class action settlement upon "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Officers for Justice v.*

194041

1  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In assessing the fairness,

2  adequacy, and reasonableness of a settlement, courts balance:

3    (1) the strength of the plaintiffs' case; (2) the risk, expense,

4    complexity, and likely duration of further litigation; (3) the risk

5    of maintaining class action status throughout the trial; (4) the

6    amount offered in settlement; (5) the extent of discovery

7    completed and the stage of the proceedings; (6) the experience

8    and views of counsel; (7) the presence of a governmental

9    participant; and (8) the reaction of the class members to the

10   proposed settlement.

11 *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*

12 *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "The relative degree of

13 importance to be attached to any particular factor will depend upon and be dictated

14 by the nature of the claims advanced, the types of relief sought, and the unique facts

15 and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d

16 at 625.

17    There is a strong judicial policy in favor of the pretrial settlement of class

18 actions. *See Churchill Vill.*, 361 F.3d at 576; *In re Pac. Enter. Sec. Litig.*, 47 F.3d

19 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276

20 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir.

21 1998) ("[S]trong judicial policy [ ] favors settlements, particularly where complex

22 class action litigation is concerned." (quoting *Officers for Justice*, 688 F.2d at 626)).

23 Thus, while approval of the settlement is committed to the sound discretion of the

24 court, *Class Plaintiffs*, 955 F.2d at 1276, "the court must also be mindful of the

25 Ninth Circuit's policy favoring settlement . . . ." *Curtis-Bauer v. Morgan Stanley &*

26 *Co., Inc.*, C 06-3903 TEH, 2008 WL 4667090, *4 (N.D. Cal. Oct. 22, 2008)

27 (citation omitted).

28

194041

1  A district court's review of a proposed settlement is "limited to the extent
2  necessary to reach a reasoned judgment that the agreement is not the product of
3  fraud or overreaching by, or collusion between, the negotiating parties, and that the
4  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."
5  *Officers for Justice*, 688 F.2d at 625. A "presumption of fairness arises where: (1)
6  counsel is experienced in similar litigation; (2) settlement was reached through
7  arm's length negotiations; [and] (3) investigation and discovery are sufficient to
8  allow counsel and the court to act intelligently." *In re Heritage Bond Litig.*, 02-ML-
9  1475 DT, 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005); *Linney v. Cellular*
10  *Alaska P'ship*, C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) *aff'd*,
11  151 F.3d 1234 (9th Cir. 1998); "Settlements that follow sufficient discovery and
12  genuine arms-length negotiation are presumed fair." *Nat'l Rural Telecomms. Coop.*
13  *v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

## II.    THE COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL

16  The Settlement is fair, reasonable and adequate and thus satisfies the standard
17  for final approval. After considerable discovery, including production and review of
18  thousands of documents, the production of expert reports and the depositions of a
19  dozen witnesses and experts, the parties reached the Settlement through protracted
20  and vigorous arms-length negotiations. Counsel for both parties are experienced in
21  litigation of consumer class actions and have zealously and competently litigated the
22  issues in this case. The Settlement was not motivated by any fraud or collusion.
23  Finally, all relevant factors favor settlement of this action and demonstrate that the
24  proposed settlement is fair, reasonable, and adequate.

### a.  The Strength of Plaintiffs' Case

26  Although Plaintiffs believe their claims are meritorious, they acknowledge
27  they faced substantial obstacles to proving Kaz's liability at trial. For example, the
28  parties dispute whether Kaz's claims were deceptive, an issue central to Plaintiffs'

case. Resolution of this question would be the subject of competing expert testimony, requiring analysis by medical and consumer marketing experts, for example through the use of surveys. Thus, Plaintiffs' ability to prove the elements of their causes of action and to prove Kaz's liability at trial is unclear.  The Court itself highlighted this burden in the class certification Order:

> Though Defendants call into question Plaintiff Beck-Ellman's evidence tending to show materiality, *the ultimate determination is to be made by the trier of fact*. <u>Stearns</u>, 655 at 1022. For the purposes of class certification, it is sufficient that the alleged material omission was part of a common advertising scheme to which the entire class was exposed. <u>See Hanlon</u>, 150 F.3d at 1019-22; <u>In re Ferrero Litigation</u>, 278 F.R.D. at 560; <u>Johns</u>, 280 F.R.D. at 557-58 & n. 4; <u>Holiday Universal</u>, 249 F.R.D. at 193.

(Dkt. No. 71 at 12:22-27 (emphasis added).)

Accordingly, this factor weighs in favor of final approval. *In re Portal Software, Inc. Sec. Litig.,* C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)("[T]he strength of plaintiffs' case, somewhat favors settlement because plaintiffs' remaining claims are tenuous. Plaintiffs assert that establishing liability and damages at trial would be difficult because of the uncertainties associated with proving its claims, which are 'exacerbated by the unpredictability of a lengthy and complex jury trial.'" (record citation omitted)).

## b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval

Plaintiffs' claims involve numerous complex legal issues, and the costs and risks associated with litigating this action would require extensive resources and Court time. "[A]voiding a trial and inevitable appeals in this complex . . . suit strongly weigh in support of approval of the Settlement, rather than prolonged and uncertain litigation." *Rodriguez v. W. Pub. Corp.*, CV05-3222 R (MCX), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) aff'd in part, rev'd in part sub nom. *Rodriguez v.*

1  *W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). Indeed, "unless the settlement is
2  clearly inadequate, its acceptance and approval are preferable to lengthy and
3  expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v.*
4  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

5  Here, while Kaz's challenges to class certification were largely unsuccessful,
6  a number of potential obstacles remained before any relief could be obtained absent
7  settlement: a summary judgment motion in Kaz's favor, a decision by the jury or the
8  Court for Kaz on liability and/or damages, and post-judgment appeals. Moreover, as
9  discussed above, a complex case such as this would require costly expert testimony
10  from both sides to prove the individual causes of action and defenses on both sides
11  at trial. Absent settlement, litigation would likely continue for years before Class
12  members would see any recovery, which would not be guaranteed.

13  By contrast, the Settlement provides a real and immediate benefit to Class
14  members who purchased Kaz Heating Pads in packaging bearing allegedly deceptive
15  and misleading claims, as well as the general public, without the challenges and
16  risks of trial. Courts have acknowledged that settlements of class actions are favored
17  when they provide an immediate benefit to the class without the risk and expense
18  involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees*
19  *Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Accordingly, this factor weighs in favor of
20  final approval. *See Officers for Justice*, 688 F.2d at 626; *Milstein v. Huck*, 600
21  F.Supp. 254, 267 (E.D.N.Y. 1984) ("The expense and possible duration of the
22  litigation are major factors to be considered in evaluating the reasonableness of this
23  settlement").

24  ### c. The Risk of Maintaining Class Action Status Through Trial
25  ### Favors Final Approval

26  While Plaintiffs obtained a certified class, there is no guarantee certification
27  would survive through trial. By contrast, in settling the action, Kaz effectively
28  accedes to certification and "there is much less risk of anyone who may have

actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2007). Accordingly, this factor weighs in favor of final approval. *Id.*

### d. The Amount Offered in Settlement Favors Final Approval

"[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "The fact that a proposed settlement may only amount to a fraction of the proposed recovery does not, in and of itself, mean the settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974).

Instead, to assess the reasonableness of a proposed settlement seeking monetary relief, the "inquiry into fairness should contrast settlement rewards with likely rewards if case goes to trial" and consider that "costs of further litigation and risks of proof difficulties militate in favor of settlement approval." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).

Here, the guaranteed minimum of $1,450,000 monetary fund   (and a maximum of $2,700,000) for Class members offered in the Settlement (with any balance of the guaranteed minimum to be paid by Defendants to *cy pres* recipients approved by the Court) is a component of the Settlement, and not even the main one, which are the extensive advertising modifications. Nevertheless, the monetary range of  $1,450,000 to $2,700,000 is a substantial figure under the circumstances. The retail price of Kaz Heating Pads during the class period was typically around $10 to $20 per pad. Class members, however, may obtain up to $20 in reimbursements. (Dkt No. 83-2 at Exh. A ¶9.3.) The Settlement Fund will likely cover all claims

made and a *cy pres* contribution to Consumers Union, the Better Business Bureau and AARP Foundation and the Consumer Federation of California in the manner described in the Settlement Agreement. *Id.* ¶¶9.3, 9.6, 9.8.

At bottom, the amount of compensation each class member will receive represents a compromise of disputed claims reached following extensive arms-length negotiations, but it is not insubstantial, especially considering the risks, resources needed, and delays inherent in continuing to litigate the action. Accordingly, this factor weighs in favor of final approval.

### e. The Stage of the Pleadings and Extent of Discovery Favor Final Approval

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting 5 W. Moore, MOORE'S FEDERAL PRACTICE, § 23.85[2][e] (Matthew Bender 3d ed.))). The greater the amount of discovery taken and the more advanced the stage of the pleadings, the more likely it is the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, C 02 4546 VRW, 2007 WL 951821, *4 (N.D. Cal. Mar. 28, 2007) (quoting *In re Warner Comm's Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)).

At the time settlement was reached, Plaintiffs had served six (6) sets of requests for the production of documents, two (2) sets of interrogatories, fourteen (14) third-party subpoenas, and conducted twelve (12) depositions. Class Counsel reviewed thousands of documents. Kaz served seven (7) document requests and seven (7) sets of interrogatories, too, to which Plaintiffs responded. Kaz also served a subpoena and deposed Class Representative Beverly Beck-Ellman. Most importantly, by the time the parties reached settlement, the Class had been certified. And the parties had obtained the input of Hon. Judge Papas (Ret.) and Hon. Judge

21

194041

Bartick on the relative strengths and weaknesses of their cases at the six (6) settlement conferences. "As a result, the true value of the class' claims was well known." *Young*, 2007 WL 951821 at *4. Accordingly, this factor weighs in favor of final approval.

### f.  The View of Experienced Counsel Favors Final Approval

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367, *4 (N.D. Cal. Feb. 2, 2009) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Indeed, "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Secs. Litig.*, 47 F.3d at 378). Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622.

The injunctive relief afforded by the Settlement has great value.  In order to quantify and explain this important aspect of the settlement Class Counsel hired Professor Anthony Cox, a highly qualified Professor of marketing and economics, to evaluate the monetary worth of the injunction agreed to by Kaz. (Dkt. No. 87-3.) Using the analytical method of "Decomposition", Professor Cox approximated the amount by which the medical treatment costs and quality of life costs associated with heating pad burns will be reduced because of the upcoming addition of warning language on Kaz Heating Pad packaging. (Dkt. No. 87-3 at ¶¶7-9.) Professor Cox completed this evaluation and determined that the approximate value of the injunction in this case is $10,726,000.00. *Id.*  Additionally, the Settlement provides for refunds to Class members from a $1,450,000 fund (which can expand to $2,700,000 fund depending upon the number of claims submitted), $500,000 to effect notice and process claims, the payment of attorney fees and costs of up to

$1.85 million and an incentive award to the Class Representative of up to $20,000. Plaintiff's counsel believes the combination of monetary and injunctive relief provides substantial value to Class members. (Dkt. No. 87-5 ¶¶2-5.)   There "is nothing to counter the presumption that counsel's recommendation is reasonable." *Knight*, 2009 WL 248367 at *4.

Moreover, "[i]n addition to being familiar with the present dispute, Plaintiffs' counsel has considerable expertise in . . . consumer and class action litigation," *Id.* The Court has, on two separate occasions, found that Class Counsel is well qualified to represent the interests of the purported class and to manage this litigation. (*See* Dkt. No. 71 at 10; *see also* Dkt. No. 86 at 11.) Accordingly, this factor weighs in favor of final approval. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1043.

### g. The Class' Reaction to the Proposed Settlement Favors Final Approval

The Class has reacted positively to the Settlement. The notice, disseminated in the California state edition of five leading consumer magazines spread out over the course of three months and on a variety of websites geographically targeted to California, was implemented to effectively reach the Class. (Dkt. No. 83-7, ¶3, 16-20.)   Coverage was further enhanced by sixteen separate notice placements in leading Spanish-language newspapers distributed throughout the state of California. *Id.* Notice by publication therefore was extensive and conducted at a cost of approximately $280,000 to ensure that reasonable and adequate notice was given to a class of unknown size where there was no reasonable manner in which to identify or individually notice the vast majority of Class members.  Further, the Settlement Website has been visited over 27,800 times and approximately 500 calls have been received on a case-dedicated toll-free telephone number.   Robin Dec. ¶¶ 4, 6. Where a court has no choice but to accept notice by publication, which was necessary here, it is this very type of comprehensive and extensive notice plan that satisfies courts that the parties have made sufficient compromise and effort to

effectuate the best notice under the circumstances. *Kaufman v. Am. Express Travel Related Svcs., Inc.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012); *see also In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 1:09-cv-7670, 2011 WL 5599129, at \*5 (N.D. Ill. Nov. 16, 2011) (publication in *Parade*, internet advertising providing 18 million impressions, and key word search advertisements for settlement fund of $1.575 million).

Due to these notice efforts, over two thousand five hundred claims have been submitted. Robin Dec. ¶10.  To date, no Class members have objected or requested exclusion. Eppsteiner Dec. ¶19. Although the deadline for objections are is not until May 1, 2013, "[t]he absence of any objector" thus far "strongly supports the fairness, reasonableness, and adequacy of the settlement." *Martin v. AmeriPride Servs., Inc.*, 08CV440-MMA JMA, 2011 WL 2313604, \*7 (S.D. Cal. June 9, 2011); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 ("By any standard, the lack of objection of the Class members favors approval of the Settlement."); *Touhey v. United States*, EDCV 08-01418-VAP, 2011 WL 3179036 (C.D. Cal. July 25, 2011) (same).  This weighs in favor of final approval.

### h. The Presence of a Governmental Participant

No government entity participated in the Settlement. As noted above, however, the United States and California Attorneys General were notified of the terms of the Settlement and have not indicated an intention to object. This provides assurance that consumer protection authorities believe the California Settlement is fair. Consequently, this factor favors final approval.

### i. Other Factors

Some courts have considered the process by which settlement was reached and the involvement of the named plaintiffs in the process in considering whether a proposed settlement is fair and reasonable. *See Young*, 2007 WL 951821 at \*4-5. Here, settlement discussions were not only protracted over several months, intensive, and arms' length, they were also overseen by Hon. Judge Papas (Ret.) and

24

Hon. Judge Bartick during six (6) separate settlement conferences. Ms. Beck-Ellman attended a settlement conference with Kaz and Hon. Judge Papas on October 26, 2012 and on November 6, 2012 before Hon. Judge Bartick, and was an active participant, including in the final decision to accept the terms embodied in the Settlement Agreement. Eppsteiner Dec. ¶20.  Both factors weigh in favor of final approval.

### III.   THE BALANCED FACTORS WEIGH IN FAVOR OF FINAL APPROVAL

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Here, all relevant factors weigh in favor of final approval of the Settlement, especially when considered *in toto*.

### CONCLUSION

Plaintiffs' Motion for Final Approval should, respectfully, be granted.

DATED: May 1, 2013          EPPSTEINER & FIORICA ATTORNEYS, LLP

By: _____
            Stuart M. Eppsteiner
            Andrew J. Kubik
            Zelekha Amirzada
            Attorneys for Plaintiffs