# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY BECK-ELLMAN, JOHN AND DENISE BIELIS, and JOHN AND SANDY MAHOY, individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>vs.<br><br>KAZ USA, INC.; and KAZ, INC.,<br><br>Defendants. | CASE NO. 3:10-CV-02134-H-DHB<br><br>**ORDER:**<br><br>**(1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT [Doc. No. 88];**<br><br>**(2) APPROVING PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD [Doc. No. 87]** |

On December 24, 2012, Plaintiff Beverly Beck-Ellman ("Plaintiff"), on behalf of herself and the certified class (together "Plaintiffs"), filed a motion for final approval of a class settlement with Defendants Kaz USA, Inc. and Kaz, Inc. (together "Kaz" or "Defendants") and a motion for approval of attorneys' fees, costs, and incentive award. (Doc. Nos. 87, 88.) Defendants do not oppose the motions. The Court held a hearing on the motion on June 10, 2013. Stuart Eppsteiner, Andrew Kubik and Zelekha Amirzada appeared on behalf of Plaintiffs. Soojin Kang appeared on behalf of Defendants. For the reasons set forth below, the Court grants the parties' motion.

**Background**

**A.     Factual and Procedural History**

On October 13, 2010, Plaintiffs Beverly Beck-Ellman, Sandy and John Mahoy, and John and Denise Bielis filed their complaint for various claims on behalf of consumers of heating pads sold or distributed by Defendants. (Doc. No. 1 ("Compl.")) California Plaintiff Beck-Ellman, for herself and those similarly situated, brought claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., False Advertising Law ("FAL"), id. §§ 17500, et seq., and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., and asserted claims for breach of express and implied warranties. (Compl.) Pennsylvania Plaintiffs John and Sandy Mahoy, for themselves and those similarly situated, brought claims for express and implied warranty pursuant to 13 Pa. Cons. Stat. §§ 2313 and 2314, respectively and for unfair, deceptive and unlawful trade practices under 73 Pa. Const. St. § 201-1, et seq. (Compl.) Michigan Plaintiffs John and Denise Bielis, for themselves and those similarly situated, brought claims under the Michigan Consumer Protection Act, M.C.L.A. § 445.901 et seq. and for breach of express and implied warranty under M.C.L.A. §§ 440.2313 and 440.2314, respectively. (Id.) All plaintiffs brought claims under the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., 15 U.S.C.A. 3201, et seq., and claims for unjust enrichment. (Id.) On September 9, 2011, Michigan Plaintiffs John and Denise Bielis were voluntarily dismissed without prejudice. (Doc. No. 28.)

The case was thoroughly litigated. On July 20, 2012, Plaintiffs moved for class certification. (Doc. Nos. 42, 43.) Defendants opposed certification. (Doc. No. 56.) Following briefing and oral argument held on October 4, 2012, the Court granted Plaintiff Beck-Ellman's motion for class certification of her FAL, CLRA, UCL, Song-Beverly Act, Magnusson-Moss Consumer Warranty Act, and unjust enrichment claims, certifying a class of "[a]ll residents of California who purchased Kaz-manufactured electric heating pads bearing the words 'Kaz' and/or 'SoftHeat' and/or 'Smart/Heat'

and/or 'Dunlap' and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family, or household purposes from October 13, 2006, through the date of class notice." (Doc. No. 70.)

The parties participated in mediation sessions with a mediator and a magistrate judge and entered into a settlement. (Doc. Nos. 74-76, 78; Doc. No. 83-1 at 4.) On December 24, 2013, the parties filed a joint motion for preliminary approval of the class settlement. (See Doc. No. 83; Doc. No. 83-2, Decl. of S. Eppsteiner Ex. A, Settlement Agreement.) On January 7, 2013, the Court granted preliminary approval of the proposed settlement. (Doc. No. 86.)

**B.   The Settlement**

    **1.   Monetary Relief**

The proposed Settlement Agreement provides as follows: Defendants will pay a guaranteed minimum of $1,450,000 and a maximum of $2,700,000 to be distributed to class members who submit valid and timely claims. (Doc. No. 83-2, Decl. of S. Eppsteiner Ex. A ("Settlement Agreement") ¶ 8.3) If an insufficient number of valid and timely claims are submitted and paid to exhaust the minimum amount of $1,450,000, then the remaining funds, subject to the Court's approval, will be distributed among four cy pres recipients: Consumers Union ("CU"), AARP Foundation ("AARP"), the Better Business Bureau Center ("BBB"), and the Consumer Federation of California ("CFC"). (Id. ¶¶ 9.3, 9.6.)

Class members, individuals who purchased Kaz heating pads between October 13, 2006 and the date of the Court's order granting preliminary approval (the "class period"), may submit one claim. Class members have the right to object to and/or opt out of the settlement if they submit timely, written requests. (Id. ¶¶ 7.1, 7.2.) Each class member who submits a timely and valid claim is expected to be paid between $10 and $20. (Id. ¶ 9.3.) If fewer than 145,000 timely and valid claims are received, then each class member claimant will be paid up to $20. (Id. ¶ 9.3(i).) If fewer than 72,500 timely and valid claims are received, then the difference between the total amount to

be paid to class member claimants and $1,450,000, will be paid by Kaz to the approved cy pres recipient(s). (Id.) If between 145,000 to 270,000 timely and valid claims are received, then each claimant will receive $10. (Id. ¶ 9.3(ii).) If more than 270,000 timely and valid claims are received, then each claimant's share of the Settlement payments will be decreased pro rata so that the total amount paid to claimants does not exceed $2,700,000. (Id.) The cost of giving notice to class members and to administer this Settlement is to be paid by Defendants and is in addition to the amounts designated to be paid to class members. (Id. ¶ 8.3.1.)

The parties propose that the cy pres recipients receive their distributions as follows: The Consumers Union ("CU"), the Better Business Bureau ("BBB") and AARP Foundation will each receive 27% of the cy pres distribution. (Id. ¶¶ 9.6, 9.8.) The Consumer Federation of California ("CFC") will receive the other 19%. (Id.) The maximum amount given to CFC will be $125,000. (Id.) If 19% is more than $125,000, the Consumers Union, Better Business Bureau and AARP Foundation will receive the difference in equal amounts. (Id.)

**2.     Injunctive Relief**

The Settlement Agreement also provides for injunctive relief relating to Plaintiffs' claims. (Settlement Agreement ¶¶ 3.4, 8.2.) First, Kaz packaging will not feature models whose eyes are closed and who are in a prone or reclining position. (Id. ¶ 8.2(i).) Second, any packaging description of a heating pad with an automatic shut-off feature will be qualified by words that describe it as being time-based rather than heat or temperature-based. (Id. ¶ 8.2(iii).) Kaz heating pads with an automatic shut-off feature will be described as "60 minute auto-off" or its equivalent, or, if the time length is different or variable, the description will make equally clear that the "auto shut-off" feature of Kaz heating pads is a time-, not temperature-based function. (Id.) Third, Kaz will include the following warning on the side panel of the heating pad box:

   WARNING: During use, do not sit on or against, or lie on, sleep with, fold or

crush the pad. Not for use with infants. Do not use with ointments or salves. Check skin frequently. ADDITIONAL IMPORTANT SAFETY WARNINGS INSIDE BOX.

(Id. ¶ 8.2(ii).) Kaz does not concede liability, but agrees to the injunctive relief. (Id. ¶¶ 3.4, 8.2.)

### 3. Costs of Notice and Administration, Attorneys' Fees, and Incentive Award

Defendants also agreed to pay up to $500,000 for the costs of providing notice to the class and administering the consideration and payment of claims. (Settlement Agreement ¶ 8.3.1.) Subject to approval by the Court, and separate and apart from the sums Kaz agreed to pay to class members and for administration of the Settlement, Kaz also has agreed not to oppose or object to an incentive award of up to $20,000 for Plaintiff Beck-Ellman. (Id. ¶ 8.5.) Also subject to the Court's consideration and approval, Kaz has agreed to not oppose or object to an application to the Court by class counsel for an award of attorneys' fees of not more than $1,500,000 and for reimbursement of litigation costs and expenses of up to $350,000. (Id. ¶ 8.4.)

### 4. Notice Plan

The parties developed a Notice Plan with the assistance of Kurtzman Carson Consultants Class Action Services, LLC ("KCC" or "Settlement Administrator"), a firm that specializes in developing class action notice plans. (Doc. No. 83-7, Declaration of Gina M. Intrepido-Bowden ("Intrepido-Bowden Decl."), Ex. 1 ("Notice Plan.")) The Notice Plan includes a Publication Notice, a Website Notice, and a potential Mailed Notice.[1] (Notice Plan, Attach. B.) The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order. (Doc. No. 88-3, Decl. of E. Robin ¶¶ 3-4.)

The Publication Notice was designed to provide potential class members with information about the Settlement and their rights, in easy-to-comprehend language.

---

[1] The Court preliminarily approved the Notice Plan based on the Publication Notice and Website Notice, but determined that directed, mailed notice was not warranted. (Doc. No. 86.)

1  (Id.)  The Publication Notice contained a general description of the lawsuit, the
2  Settlement relief, how a Claim can be filed, a general description of class members'
3  legal rights, the class members' right to opt-out of the lawsuit and Settlement, their
4  right to, if they do not opt-out, object to a term or condition of the Settlement, their
5  right to retain their own counsel and their right to address the Court at the fairness
6  hearing. (Settlement Agreement Ex. 2B.) The Publication Notice directed consumers
7  to the Settlement Website, provided a toll-free number, information on how to obtain
8  a Claim Form, and the Claim submission deadline. (Id.) The Notice Plan was specially
9  developed to cause class members to see the Publication Notice or see an advertisement
10 that directed them to the Settlement Website.  KCC identified that the class members
11 belong to a demographic group known as "Pain Relief Users." (Intrepido-Bowden
12 Decl. ¶ 17.) The Heating Pads are considered a Pain Relief product. The publications
13 that KCC's Notice Plan used are publications and websites whose viewers and readers
14 include a high percentage of Pain Relief product users. (Id. ¶¶ 17-18.) The Publication
15 Notice was published in the California editions of Better Homes & Gardens, Parade,
16 People, Reader's Digest and USA Weekend; numerous Spanish language newspapers;
17 and as an internet banner notice on the 24/7 Network, which allows access to over
18 4,000 premium websites, including MSNBC, Monster, Match.com and the Weather
19 Channel. (Doc. No. 88-2, Decl. of E. Robin ¶ 3.) As described in the KCC Notice Plan
20 and Declaration of Gina Intrepido-Bowden, these publications were selected to increase
21 the likelihood that the Publication Notice will be seen by class members. (Id. ¶¶ 18-
22 20.)  KCC projected that the proposed Notice Plan would result in the Publication
23 Notice being seen by at least 70% of the class members. (Id. ¶ 33.)

24  Finally, the Settlement Administrator established a Settlement Website, at
25 www.electricheatingpadsettlement.com, for the purposes of disseminating the Class
26 Notice, the Claim Form, allowing for electronic submission of Claim Forms, the
27 Settlement Agreement, information relating to filing a Claim, opting out of the
28 Settlement, objecting to the Settlement, deadlines relating to the Settlement, pleadings,

and other information relevant to class members. (Id. ¶ 6.2.1; Doc. No. 88-3, Decl. of E. Robin ¶¶ 4-5.)  The Settlement Website has an electronic Claim Form, in Spanish and English, available for printing and mailed submission or on-line submission. (Doc. No. 88-3, Decl. of E. Robin ¶¶ 4-5.)  The Settlement Website has Spanish iterations of its Homepage, Important Dates & Deadlines page, and FAQ page, as well as a downloadable Spanish language Settlement Notice.  (Id.)

The Class Notices contained detailed information about the lawsuit, the Settlement Agreement, the release of liability class members will provide Kaz, and how to opt-out, object and exercise other rights under the Settlement.  (Settlement Agreement Exs. 2A, 2B.)  The Class Notice directed individuals to the Settlement Website for purposes of obtaining an electronic Claim Form, and provides instructions for contacting class counsel and the Settlement Administrator in order to communicate about the Settlement or obtain a paper Claim Form or the Class Notice in Spanish. (Settlement Agreement ¶ 6.3; Id. Exs. 2A, 2B.)  The Class Notice advised that objections to the Settlement will only be considered at the fairness hearing and provided the date and place of the fairness hearing. (Id. ¶ 6.3.)  Kaz also provided notice to the United States Attorney General and the Attorney General of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. (Doc. Nos. 87-5 ¶¶ 54-56, Exs. 1-3.)

**5.   Release**

If the settlement is approved by the Court, this matter will be dismissed, with prejudice, and Defendants will receive a release of claims as set forth in the Settlement Agreement.  (Settlement Agreement ¶¶ 8.5.1, 11.1, 11.2.)  Specifically, Plaintiff and the class members will release Defendants from any and all claims, actions or causes of action which arise from the allegations in the Complaint or Defendants' marketing and advertising of the heating pads at issue in the Complaint prior to the effective date of the Settlement. (Id. ¶¶ 2.25, 11.1, 11.2.)  The released claims exclude any claims for personal injury or property damage caused by Kaz heating pads.  (Id. ¶ 2.25.)

**C.     Preliminary Approval of the Settlement and Reaction of the Class Members**

On January 7, 2013, following a hearing on the motion, the Court granted preliminary approval of the proposed settlement and ordered the parties to disseminate notice of the settlement to the class members. (Doc. No. 86.) The Court additionally granted the parties' joint request to slightly modify the certified class definition to the following:

> All residents of California who purchased Kaz-manufactured and/or distributed electric heating pads bearing the words "Kaz" and/or "SoftHeat" and/or "Smart/Heat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family, or household purposes from October 13, 2006, through the date the Court orders preliminary settlement approval. The Court excludes from the class anyone seeking damages for personal injury or property damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter.

(Id.) The settlement administrator began effectuating the Notice Plan in February of 2013, causing the Publication Notice to be published in numerous magazines and websites, and causing the Settlement Website to go live on February 8, 2013. (Doc. No. 88-2, Decl. of E. Robin ¶¶ 3-4.) The notice provided class members with an opportunity to file a claim for monetary relief, opt out of the settlement, or object to the settlement.

As of April 24, 2013, 2,549 claims have been submitted. (Id. ¶¶ 10.) The website has been visited over 27,800 times and the administrator has received approximately 500 calls on a case-dedicated toll-free telephone number. (Id. ¶¶ 3-4.) Approximately 310 callers requested Notice Packets, and approximately 16 more requests came in by mail. (Id. ¶¶ 6.) Between February 8, 2013, and April 24, 2013, the Settlement Administrator mailed 326 Notice Packets. (Id.) The Settlement Administrator has received three pieces of undeliverable mail and, to date, no class members have objected or requested exclusion. (Id. ¶¶ 7-8.)

///
///
///

## Discussion

**A.   The Settlement**

Federal Rule of Civil Procedure requires the Court to determine whether a proposed class action settlement is "fair, adequate and reasonable," and not a product of collusion. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). To make this determination, the Court must consider a number of factors, including:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party–in this instance, a private mediator and a magistrate judge. See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

///
///
///
///
///

1. **The Strength of Plaintiff's Case, the Risk, Expense, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial**

The disputed factual and legal issues would be costly and complex to resolve at trial. Plaintiff may have a meritorious claim, but both parties have already expended significant time, effort, and resources supporting their positions, and would continue to do so should the settlement fail to get approval. (Doc. No. 83-1 at 3-4, 12-14.) Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability, as well as the general difficulties and delays of litigation. (Doc. No. 83-1 at 12-14; Doc. No. 83-2, Decl. of S. Eppsteiner ¶ 39.) These considerations led the parties to conclude that a timely settlement would be best for all involved parties. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement."). The Court agrees that the recovery through settlement confers a substantial and immediate benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

2. **The Amount Offered in Settlement**

In the present case, the proposed settlement provides class members with immediate monetary relief for a total of at least $1,450,000 and as much as $2,700,000. Class members may each recover up to $20 in reimbursements, although Kaz Heating Pads sold during the class period for around $10 to $20 per pad. The settlement also includes substantial injunctive relief relating to Plaintiffs' claims, valued by economics professor Anthony Cox to be worth as much as $10,726,000. (Doc. No. 87-3 ¶¶ 7-9.) This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. "[P]arties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the

potential recovery, and the chances of obtaining it, discounted to present value." Rodriguez, 563 F.3d at 965.  Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### 3. The Extent of Discovery Completed and the Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The proposed settlement is the result of lengthy, arm's-length negotiations, including several mediation sessions and settlement conferences over two years of litigation, between counsel on both sides with extensive experience in employment class action litigation. (Doc. No. 83-1 at 4; Doc. No. 83-2, Decl. of S. Eppsteiner ¶¶ 4-30.) The parties have conducted significant discovery and analysis of data, including comprehensive depositions, numerous document production requests and interrogatories, and retainer of qualified experts regarding heating pads, advertising, warnings, and damages/restitution. (Doc. No. 83-1 at 3; Doc. No. 83-2, Decl. of S. Eppsteiner ¶¶ 31-34.) Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval.

### 4. The Experience and Views of Counsel

Plaintiff's counsel has extensive experience acting as class counsel in complex class action cases. (See Doc. No. 87-5, Decl. of S. Eppsteiner ¶¶ 6-21.) Class counsel recommends the settlement as both fair and adequate, a factor that weighs in favor of granting final approval. (Doc. No. 83-2, Decl. of S. Eppsteiner ¶¶ 31-40.)

///
///
///
///

### 5. The Reaction of the Class Members to the Proposed Settlement

Over 2,500 claims have been submitted since dissemination of notice through the settlement publication and website, as of April 24, 2013. (Doc. No. 88-3, Decl. of E. Robin ¶¶ 10.) Notice by publication was extensive and conducted at a cost of approximately $280,000 to ensure that reasonable and adequate notice was given to a class of unknown size where there was no reasonable manner in which to identify or individually notice the majority of class members. The website has been visited over 27,800 times and the administrator has received approximately 500 calls on a case-dedicated toll-free telephone number. (Id. ¶¶ 3-4.)

To date, no class members have objected or requested exclusion. (Id. ¶ 8.) The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition). Accordingly, the reaction of the class members weighs in favor of granting final approval.

### 6. No Evidence of Collusion

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Staton, 327 F.3d at 960. In the present case, there is no evidence of collusion.

The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation.'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Plaintiff Beck-Ellman has protected the interests

1  of the class by engaging in investigation and discovery, attending depositions and
2  settlement conferences, using her public relations experience to aid in crafting the class
3  Notice Plan, and assisting counsel with other aspects of the case. (Doc. No. Decl. of
4  B. Beck-Ellman ¶¶ 2-22; Decl. of S. Eppsteiner ¶ 53.) Further, Plaintiff Beck-Ellman
5  is directly responsible for the monetary benefits conferred on the class by the
6  settlement. Therefore, the $20,000 enhancement award to Plaintiff Beck-Ellman is
7  reasonable..

8        Moreover, the cy pres award does not appear to be the result of collusion. Where
9  a proposed settlement contains a charitable gift, known as a cy pres award, a court must
10 "ensure that the settlement retains some connection to the plaintiff class and the
11 underlying claims." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (finding
12 that the "noble goal" of feeding the indigent has "little or nothing to do with" the
13 concerns embodied in California's consumer protection laws such as the UCL and
14 CLRA). Otherwise, the award may "answer to the whims and self interests of the
15 parties, their counsel, or the court." Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th
16 Cir. 2011). Therefore, "a driving nexus between the plaintiff class and the cy pres
17 beneficiaries" must exist. Nachshin, 663 F.3d at 1038. In this instance, each cy pres
18 recipient has provided a declaration that describes its organization's work, which
19 demonstrates its dedication to protecting consumers from injuries caused by false
20 advertising. (See Doc. Nos. 83-3, 83-4, 83-5, 83-8); see also Dennis, 697 F.3d 858,
21 866-67 ("Appropriate cy pres recipients [in UCL and CLRA actions] are . . .
22 organizations dedicated to protecting consumers from, or redressing injuries caused by,
23 false advertising."). There is no reason to believe the proposed cy pres awards are the
24 result of collusion.

25       Finally, the attorneys' fees are appropriate. Plaintiff's counsel may
26 simultaneously negotiate the merits of the action and their attorneys' fees. Staton, 327
27 F.3d at 971. The attorneys' fees, litigation costs, and administration costs sought by
28 Plaintiff's counsel are reasonable under the circumstances. As a result, the Court

concludes that the settlement in this case is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959. Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.

**B.     Cy Pres Distribution**

Further, the Court approves the parties' choice in cy pres recipients. "Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." Nachsin, 663 F.3d at 1036 (9th Cir. 2011) "Appropriate cy pres recipients [in UCL and CLRA actions] are . . . organizations dedicated to protecting consumers from, or redressing injuries caused by, false advertising." Dennis, 697 F.3d at 866-67. Each cy pres recipient has provided a declaration that describes its organization's work, which demonstrates its dedication to protecting consumers from injuries caused by false advertising. (See Doc. Nos. 83-3, 83-4, 83-5, 83-8.) Accordingly, the CU, AARP, BBB, and CFC are all organizations appropriate to receive cy pres distributions in the settlement of this action.

**C.     Attorneys' Fees and Costs for Class Counsel**

The parties jointly request the Court to order an award of $1,500,000 in attorneys' fees and $312,235.86 in out-of-pocket litigation costs. "Because the attorneys seek fees on their own behalf, which may be contrary to their clients' interests, the district court must 'look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid." Fischel v. Equitable Life Assurance Society of the U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (quoting Florida ex rel. Butterworth v. Exxon Corp., 109 F.3d 602, 608 (9th Cir. 1997)). In common fund cases, a district court has discretion to use either the percentage-of-the-fund or the lodestar method for determining appropriate attorneys' fees. See Hanlon, 150 F.3d at 1029. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Id. In cases where injunctive

relief represents a significant aspect of the class recovery, courts typically use a lodestar calculation. Id. "The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." Id. "The hours expended and the rate should be supported by adequate documentation and other evidence." Id.

The Ninth Circuit has identified a number of relevant factors to determine if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Where there is no evidence of collusion, an agreement between the parties on attorneys' fees is entitled to significant weight, especially where the attorneys' fees are paid separate and apart from the fund provided to class members. See, e.g., In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 1992 U.S. Dist. LEXIS 14337, at *12-13 (C.D. Cal. June 10, 1992).

The Court concludes that class counsel's request for $1,500,000 in attorneys' fees and $312,235.86 in costs is reasonable. The attorney fee award is paid separate and apart from the settlement fund provided to class members, (see Settlement Agreement,) and there is no evidence of collusion between class counsel and the Defendants. The settlement fund is likely sufficient to provide complete restitution for aggrieved class members, and the attorneys' fees and costs are to be paid above and beyond the settlement fund. Thus, the Court accords great weight to the agreement as to the attorney fee award. In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 1992 U.S. Dist. LEXIS 14337, at *12-13.

Additionally, the requested attorney fee award appears reasonable under the lodestar method. The lodestar calculation is typically used in cases in which injunctive relief provides a significant aspect of the class recovery. Hanlon, 150 F.3d at 1029. Class counsel in this case devoted 4,004 total hours over two and a half years to this

litigation, including 3,917 attorney hours and 87 paralegal hours, resulting in a lodestar value of $1,710,560. (Doc. No. 87-5, Decl. of S. Eppsteiner ¶¶ 23-37.) Counsel submitted a declaration showing the amount of hours worked and hourly rate of each attorney, as well as the tasks performed during the litigation process. (Id.); see Winterrowd v. Am. Gen. Annuity Ins., 556 F.3d 815, 827 (9th Cir. 2009) (when awarding attorney fees under California fee-shifting statute, "[t]estimony of an attorney as to the number of hours worked on a particular case is sufficient to support an award of attorney fees"). The hourly rates are in line with billing rates approved in other similar class actions in California. See United Steelworkers of Am. v. Phelps Dodge Cop., 896 F.2d 403, 40 (9th Cir. 1990) (noting courts should look to rate determinations in other cases for appropriate fees); see, e.g., Gallucci v. Boiron, Inc., 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) (approving $650 per hour rate for partner, rates of $300 to $500 per hour for associates, and $195 to $215 per hour for paralegals); Brazil v. Dell Inc., 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) (approving rates of $525 to $875 per hour for partners, $250 to $475 per hour for associates, and $165 to $375 per hour for law clerks and paralegals). The Court concludes that the hours spent and the hourly rates charged by the attorneys appear reasonable in light of the experience of counsel and the complexities of this case. Further, counsel's request for $1,500,000 is actually less than the lodestar, representing only 88% of the calculated value.

Moreover, the award is reasonable under the factors announced in Vizcaino. Class members are provided with monetary and injunctive relief. Second, the risks of litigation were real and substantial. Third, the complexity of the case indicates that the award is reasonable. Fourth, class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it. (Doc. No. 87-1 at 22.) Fifth, the requested attorneys' fees represent a reasonable percentage of the total monetary

value of the settlement.[2]  See Singer v. Becton Dickinson & Co., 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of 33.33% of the common fund for a wage and hour class action settlement "falls within the typical range of 20% to 50% awarded in similar cases"); cf. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944-45 (9th Cir. 2011) (encouraging district courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method).  Finally, class counsel has represented that $1,500,000 is only 88% of Plaintiff's calculated lodestar.  (Doc. No. 87-1 at 7.)

Additionally, class counsel has demonstrated that they incurred expenses in the aggregate amount of $312,235.86 in recoverable costs and costs "reasonably necessary to conduct the litigation."  Cal. Civ. P. Code § 1033.5(c).  Class counsel submitted a declaration setting forth the particulars of the expenses and costs incurred.  (Doc. No. 87-5, Decl. of S. Eppsteiner ¶¶ 48-51.)  Class counsel's request is actually less than the $350,000 Defendants agreed to pay for Plaintiff's costs under the Settlement Agreement.  (Settlement Agreement ¶ 8.4.)  The Court concludes that $312,235.86, to be paid by Defendants separate from the attorneys' fees and the settlement fund for the class, is reasonable to compensate class counsel for expenses incurred.

In sum, the Court concludes that an award of attorneys' fees in the amount of $1,500,000 and litigation costs in the amount of $312,235.86 is reasonable and warranted in this case.  Accordingly, the Court grants Plaintiff's request for attorneys' fees and costs.

///
///
///
///

---

[2] The settlement includes substantial injunctive relief relating to Plaintiffs' claims, valued by economics professor Anthony Cox to be worth as much as $10,726,000. (Doc. No. 87-3 ¶¶ 7-9.)

**D.     Incentive Award for Class Representative**

Finally, the $20,000 incentive award for Plaintiff Beverly Beck-Ellman, representing approximately 0.5-1.0% of the overall settlement amount, also is reasonable.  "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit . . . enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

In the present case, the above factors weigh in favor of approving the enhancement award requested. Plaintiff protected the interests of the class by engaging in investigation and discovery, attending depositions and settlement conferences, using her public relations experience to aid in crafting the class Notice Plan, and assisting counsel with other aspects of the case. (Doc. No. 87-2, Decl. of B. Beck-Ellman ¶¶ 2-22; Doc. No. 87-5, Decl. of S. Eppsteiner ¶ 53.)  The $20,000 incentive award is well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000).  Finally, no class members have objected to Plaintiff Beck-Ellman's intent to seek an incentive award of $20,000. Accordingly, the Court concludes that the incentive award is reasonable and grants Plaintiff's motion for an incentive award.

///
///
///
///
///

# **CONCLUSION**

After due consideration, the Court orders:

1. The Court reaffirms its prior order certifying the Class and appointing Class Counsel and Class Representative (Doc. No. 71).

2. The Court reaffirms the following certified Settlement Class:

> All residents of California who purchased Kaz-manufactured and/or distributed electric heating pads bearing the words "Kaz" and/or "SoftHeat" and/or "Smart/Heat" and/or "Dunlap" and/or the number 1-800-477-0457 on the packaging or heating pads themselves for primarily personal, family, or household purposes from October 13, 2006, through the date the Court orders preliminary settlement approval. The Court excludes from the class anyone seeking damages for personal injury or property damage caused by Kaz heating pads, as well as anyone with a conflict of interest in this matter.

3. The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.

4. The Court finally approves the settlement as set forth in the Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure and all applicable state laws. The Court directs the parties and the Settlement Administrator to perform in accordance with the terms set forth in the Settlement Agreement.

5. The Court concludes the following four proposed cy pres recipients are organizations committed to protecting consumers from false advertising or assisting consumer efforts for redress from false advertising so as to satisfy the Ninth Circuit standard established in Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012): (1) Consumer Federation of California Education Foundation ("CFC Educational Foundation"), (2) AARP Foundation, (3) Consumers Union ("CU"), and (4) Council of Better Business Bureaus, Inc. ("CBBB"). If the events articulated in Section 9.3(i) of the Settlement Agreement are triggered, the Court approves the cy pres recipients receipt of the following distributions: (a) CU, CBBB and AARP Foundation will each receive 27% of the cy pres distribution, and (b) CFC Educational Foundation will receive the other 19%. The maximum amount given to the CFC Educational

Foundation will be $125,000.  If 19% is more than $125,000, the CU, CBBB and AARP Foundation will receive the difference in equal amounts.

6.  The Court grants the request for an award of attorneys' fees and costs and awards Class Counsel attorneys' fees in the amount of $1,500,000 and litigation costs in the amount of $312,235.86, to be paid according to the terms of the Settlement Agreement and any further orders from the Court.

7.  The Court grants the request for an incentive award of $20,000 to Plaintiff Beverly Beck-Ellman for her service on behalf of the Settlement Class.

8.  This Order is not to be construed or used as an admission, concession, or declaration by or against Defendants of any finding of fault, wrongdoing, or liability.

9.  The Court dismisses with prejudice all claims asserted by Representative Plaintiff and the Class members in this Action.

10.  Without affecting the finality of this final Order and judgment in any way, the Court retains jurisdiction over this action for the purposes of supervising the implementation of the Settlement Agreement.

11.  The Court enters Final Judgment in this action.  This document constitutes a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.  The Court directs the Clerk to enter judgment and close this matter.

**IT IS SO ORDERED**.

DATED: June 11, 2013

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT